# EXHIBIT A

ENDORSED
FILED
ALAMEDA COUNTY

DEC 1 4 2018

SUE PESKO

1  Jessica M. Dean, Esq. (CSB No. 260598)
   Benjamin H. Adams, Esq. (CSB No. 272909)
2  **DEAN, OMAR & BRANHAM, LLP**
   302 N. Market Street, Suite 300
3  Dallas, Texas 75202
   Telephone: (214) 722-5990
4  Facsimile:  (214) 722-5991
   jdean@dobllp.com
5  badams@dobllp.com

6  Attorneys for Plaintiffs

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF ALAMEDA**

10

11  THOMAS H. TOY, SR. and AGNES TOY,          Case No.:   R G 1 8 9 3 2 3 5 0

12                 Plaintiffs,                 **COMPLAINT FOR PERSONAL
                                               INJURY AND LOSS OF
13       vs.                                   CONSORTIUM**

14  **HONEYWELL INTERNATIONAL INC.,**          **JURY TRIAL DEMANDED**
    **f/k/a ALLIED-PRODUCTS LIABILITY
15  SIGNAL, INC.,** sued as successor-in-interest to
    BENDIX CORPORATION;                        [COMPLEX ASBESTOS LITIGATION -
16  **AIR & LIQUID SYSTEMS**                   SUBJECT TO THE GENERAL ORDERS
    **CORPORATION,**                           CONTAINED IN FILE NO. C 700000]
17  individually and as successor-in- interest to
    BUFFALO PUMPS, INC.;                         1.  NEGLIGENCE;
18  **ALFA LAVAL INC.;**                         2.  BREACH OF IMPLIED
    **ARMSTRONG INTERNATIONAL, INC.;**               WARRANTY
19  **AURORA PUMP COMPANY;**                     3.  STRICT LIABILITY;
    **BLACKMER PUMP COMPANY;**                   4.  NEGLIGENCE – CLUTCH &
20  **BORGWARNER MORSE TEC LLC,**                    BRAKE ASSEMBLIES,
    as successor-by- merger to BORG-WARNER           MECHANISMS &
21  CORPORATION;                                     COMPONENTS;
    **BW/IP, INC.,**                             5.  STRICT LIABILITY – CLUTCH
22  individually and as successor-in-interest to      & BRAKE ASSEMBLIES,
    BYRON JACKSON PUMPS;                             MECHANISMS &
23  **CARRIER CORPORATION;**                         COMPONENTS;
    **CBS CORPORATION,**                         6.  FRAUD & CONCEALMENT;
24  a Delaware corporation, f/k/a VIACOM, INC.,   7.  CONSPIRACY TO DEFRAUD
    successor-by-merger to CBS CORPORATION, a        AND FAILURE TO WARN
25  Pennsylvania corporation, f/k/a              8.  LOSS OF CONSORTIUM
    WESTINGHOUSE ELECTRIC
26

27

28
                                     1

CORPORATION and also as successor-in-
interest to B. F. STURTEVANT COMPANY;
**CLA-VAL CO.;**
**COPES-VULCAN, INC.;**
**DEZURIK, INC.,**
individually and successor-in-interest to COPES-
VULCAN, INC.;
**CRANE CO.;**
**DANA COMPANIES, LLC;**
**FLOWSERVE US, INC.;**
**FORD MOTOR COMPANY;**
**FRYER-KNOWLES, INC.;**
**GENERAL ELECTRIC COMPANY;**
**GENUINE PARTS COMPANY,**
d/b/a RAYLOC, a/k/a NAPA;
**THE GOODYEAR TIRE & RUBBER**
**COMPANY;**
**GRINNELL LLC,**
d/b/a GRINNELL CORPORATION;
**HENNESSY INDUSTRIES, LLC,**
f/k/a HENNESSY INDUSTRIES, INC.;
**HILL BROTHERS CHEMICAL**
**COMPANY;**
**IMO INDUSTRIES INC.;**
**INGERSOLL-RAND COMPANY;**
**ITT LLC,**
f/k/a ITT CORPORATION, ITT INDUSTRIES
INC., ITT FLUID PRODUCTS CORP.,
HOFFMAN SPECIALTY MFG. CORP., BELL
and GOSSETT COMPANY and ITT
MARLOW;
**M. SLAYEN AND ASSOCIATES, INC.;**
**METALCLAD INSULATION LLC,**
f/k/a METALCLAD INSULATION
CORPORATION, individually and as successor-
in-interest to METALCLAD INSULATION
COMPANY, INC.;
**METROPOLITAN LIFE INSURANCE**
**COMPANY,** a wholly-owned subsidiary of
METLIFE INC.;
**NATIONAL AUTOMOTIVE PARTS**
**ASSOCIATION,** a/k/a NAPA;
**PARKER-HANNIFIN CORPORATION;**
**PNEUMO ABEX, LLC,**
successor-in-interest to ABEX
CORPORATION;

2

1 | **SB DECKING, INC.;**
2 | **SMOTHERS PARTS INTERNATIONAL, INC.,** d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES;
3 | **STANDARD MOTOR PRODUCTS, INC.,** individually and as successor-in-interest to EIS
4 | AUTOMOTIVE;
5 | **THOMAS DEE ENGINEERING CO., INC.;**
    **VELAN VALVE CORP.;**
6 | **VIAD CORP,**
    f/k/a THE DIAL CORPORATION, individually
7 | and as successor to GRISCOM-RUSSELL COMPANY;
8 | **VIKING PUMP, INC.;**
    **WARREN PUMPS LLC;**
9 | **WEIR VALVES & CONTROLS USA, INC.,** individually and as successor-in-interest to
10 | ATWOOD & MORRILL CO., INC.;
11 | **WESTERN AUTO SUPPLY COMPANY,** a wholly-owned subsidiary of ADVANCE
12 | AUTO PARTS INC.;
13 | **THE WILLIAM POWELL COMPANY;** and
    **FIRST DOE through SIX-HUNDRED DOE,** INCLUSIVE.
14 |
15 | Defendants

16 Plaintiffs THOMAS H. TOY, SR. and AGNES TOY complain of defendants, and each

17 of them, and allege:

18 ## GENERAL ALLEGATIONS

19 1.    The true names and capacities, whether individual, corporate, associate,

20 governmental or otherwise, of defendants FIRST DOE through SIX-HUNDREDTH DOE,

21 inclusive, are unknown to plaintiffs at this time, whom plaintiffs therefore sue by such fictitious

22 names. When the true names and capacities of said defendants have been ascertained, plaintiffs

23 will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege,

24 that each defendant designated herein as a DOE is responsible, negligently or in some other

25

26

27

28

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the plaintiffs, as hereinafter alleged.

2.    At all times herein mentioned, each of the defendants, except as otherwise alleged, was the agent, servant, employee and/or joint venture of its co-defendant, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.  Certain defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the plaintiff THOMAS H. TOY, SR.; and such defendants, as co-conspirators, are liable for the acts, or failures to act, of the other conspiring defendants.

3.    At all times herein mentioned, each of the defendants was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos.  Said entities shall hereinafter collectively be called "alternate entities".  Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is

4

asbestos, and other products containing asbestos.  The following defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk  spreading role of each such "alternate entity"; and that each such defendants enjoys the goodwill originally attached to each such "alternate entity".

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| BORGWARNER MORSE TEC LLC | BORG-WARNER CORPORATION |
| CBS CORPORATION, a Delaware corporation | VIACOM, INC.; CBS CORPORATION, a Pennsylvania corporation; WESTINGHOUSE ELECTRIC CORPORATION; and B. F.  STURTEVANT COMPANY |
| DEZURIK, INC. | COPES-VULCAN, INC. |
| GENUINE PARTS COMPANY | RAYLOC; and NAPA |
| GRINNELL LLC | GRINNELL CORPORATION |
| HENNESSY INDUSTRIES, LLC | HENNESSY INDUSTRIES, INC. |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC.; and BENDIX CORPORATION |
| ITT LLC | ITT CORPORATION; ITT INDUSTRIES INC.; ITT FLUID PRODUCTS CORP.; HOFFMAN SPECIALTY MFG. CORP.; BELL AND GOSSETT COMPANY; and ITT MARLOW |

| METALCLAD INSULATION LLC | METALCLAD INSULATION CORPORATION; and METALCLAD INSULATION COMPANY, INC. |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY | METLIFE INC. |
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION | NAPA |
| PNEUMO ABEX, LLC | ABEX CORPORATION |
| SMOTHERS PARTS INTERNATIONAL, INC. | SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES |
| STANDARD MOTOR PRODUCTS, INC. | EIS AUTOMOTIVE |
| VIAD CORP | THE DIAL CORPORATION; and GRISCOM-RUSSELL COMPANY |
| WEIR VALVES & CONTROLS USA, INC. | ATWOOD & MORRILL CO., INC. |
| WESTERN AUTO SUPPLY COMPANY | ADVANCE AUTO PARTS INC. |

4.      Plaintiffs are informed and believe, and allege, that at all times herein mentioned defendants, including the FIRST DOE through SIX-HUNDREDTH DOE, inclusive, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and each of them, were and are authorized to do and are doing business in the State of California, that said defendants have regularly conducted business in the County of Alameda, State of California, and that certain of said defendants presently designate and have at pertinent times designated the County of Alameda as their principal place of doing business within the State of California.

5.      Plaintiffs are informed and believe, and allege that Plaintiff THOMAS H. TOY, SR. was exposed to asbestos during the course of his life in the manner and during the time periods set forth below:

From approximately 1953 to 1962, Plaintiff THOMAS H. TOY, SR. served in the United States Army.  During and throughout these years, Plaintiff was trained as a

6

wheel mechanic and assigned as a mechanic to motor pool repair while stationed in Germany where he worked on all types of vehicles performing maintenance and repairs including brakes and clutches.  Plaintiff also worked on the wire team while stationed in Korea and was the Wire Team Chief when he returned to the U.S.  His team would lay telephone wire and cables for telephone communications.   As a result, Plaintiff was exposed to asbestos and asbestos-containing products.

Plaintiff THOMAS H. TOY, SR. was employed as a civil service employee of the U. S. Government in the State of California from approximately 1962 to 1990. During and throughout these years, Plaintiff worked in the following capacities:

A.    From approximately 1962 to 1974, Plaintiff worked as a marine machinist aboard ships, submarines and air craft carriers performing activities in ship building and/or ship repair at several locations including but not limited to Hunters Point Naval Shipyard and Mare Island Naval Shipyard.  As a result, Plaintiff was exposed to asbestos and asbestos-containing products.

B.    From approximately 1974 to 1980, Plaintiff worked as a maintenance machinist performing activities in building operation, maintenance and repair to HVAC, pumps, valves, condensate in the mechanical room and other equipment at Treasure Island Naval Shipyard. As a result, Plaintiff was exposed to asbestos and asbestos-containing products.

C.    From approximately 1980 to 1990, Plaintiff worked as a planner/estimator performing activities of buying materials for projects and visiting on-site locations including but not limited to: Hamilton Air Force Base, Alameda Naval Air Station and the Naval Hospital in Oak Knoll while working

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

at the Navy Public Works Center in San Francisco. As a result, Plaintiff was exposed to asbestos and asbestos-containing products.

Plaintiff THOMAS H. TOY, SR., during various times throughout his life, worked on building, repairing and remodeling his own homes. Plaintiff worked in non-occupational capacities performing home construction, repairs and remodeling involving asbestos-containing products throughout the 1960s through 1990s. As a result, Plaintiff was exposed to asbestos and asbestos-containing products.

6.    Plaintiffs allege herein that Plaintiff THOMAS H. TOY, SR. developed malignant mesothelioma as a result of exposure to asbestos from defendants' asbestos dust, fibers and/or particles, asbestos-containing products and/or products designed to be used in association with asbestos products ("Defendants' Products"), including: **HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION (as a supplier of asbestos-containing Bendix brakes); **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in-interest to BUFFALO PUMPS, INC. (as a supplier of asbestos-containing Buffalo pumps); **ALFA LAVAL INC.** (as a supplier of asbestos-containing DeLaval purifiers); **ARMSTRONG INTERNATIONAL, INC.** (as a supplier of asbestos-containing Armstrong steam traps and strainers); **AURORA PUMP COMPANY** (as a supplier of asbestos-containing Aurora pumps); **BLACKMER PUMP COMPANY** (as a supplier of asbestos-containing Blackmer pumps); **BORGWARNER MORSE TEC LLC**, as successor-by- merger to BORG-WARNER CORPORATION (as a supplier of asbestos-containing BorgWarner clutches); **BW/IP, INC.**, individually and as successor-in-interest to BYRON JACKSON PUMPS (as a supplier of asbestos-containing Byron Jackson pumps); **CARRIER CORPORATION** (as a supplier of

8

asbestos-containing Carrier air compressors and chillers); **CBS CORPORATION**, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to B. F. STURTEVANT COMPANY (as a supplier of asbestos-containing B. F. Sturtevant forced-draft blowers and turbines, and Westinghouse blowers, emergency generators, ship service generators and turbines); **CLA-VAL CO.** (as a supplier of asbestos-containing CLA-VAL valves); **COPES-VULCAN, INC.** (as a supplier of asbestos-containing Vulcan blowers and valves); **DEZURIK, INC.**, individually and successor-in-interest to COPES-VULCAN, INC. (as a supplier of asbestos-containing Vulcan blowers and valves); **CRANE CO.** (as a supplier of asbestos-containing Crane feed tanks, pumps and valves; Chapman valves; and Cranite gaskets); **DANA COMPANIES, LLC** (as a supplier of asbestos-containing Victor gaskets); **FLOWSERVE US, INC.** (as a supplier of asbestos-containing Edward valves); **FORD MOTOR COMPANY** (as a supplier of asbestos-containing friction products); **FRYER-KNOWLES, INC.** (as a supplier of asbestos-containing decking and flooring products); **GENERAL ELECTRIC COMPANY** (as a supplier of asbestos-containing turbines, ship's service generators and electrical panels); **GENUINE PARTS COMPANY**, d/b/a RAYLOC, a/k/a NAPA (as a supplier of asbestos-containing friction products); **THE GOODYEAR TIRE & RUBBER COMPANY** (as a supplier of asbestos-containing gaskets and packing); **GRINNELL LLC**, d/b/a GRINNELL CORPORATION (as a supplier of asbestos-containing Grinnell boilers, heaters and valves); **HENNESSY INDUSTRIES, LLC**, f/k/a HENNESSY INDUSTRIES, INC. (as a supplier of Ammco Arc grinds and asbestos-containing grinders); **HILL BROTHERS CHEMICAL COMPANY** (as a supplier of asbestos-containing fiber); **IMO INDUSTRIES INC.** (as a supplier of asbestos-containing DeLaval

pumps and turbines, and CH Wheeler air ejectors); **INGERSOLL-RAND COMPANY** (as a supplier of asbestos-containing Ingersoll-Rand compressors and pumps); **ITT LLC**, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW (as a supplier of asbestos-containing Bell and Gossett pumps and valves); **M. SLAYEN AND ASSOCIATES, INC.** (as a contractor of asbestos-containing insulation products); **METALCLAD INSULATION LLC**, f/k/a METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to METALCLAD INSULATION COMPANY, INC. (as a contractor of asbestos-containing insulation products); **METROPOLITAN LIFE INSURANCE COMPANY**, a wholly-owned subsidiary of METLIFE INC. (as a conspiracy defendant); **NATIONAL AUTOMOTIVE PARTS ASSOCIATION**, a/k/a NAPA (as a supplier of asbestos-containing automotive parts); **PARKER-HANNIFIN CORPORATION** (as a supplier of asbestos-containing EIS brakes); **PNEUMO ABEX, LLC**, successor-in-interest to ABEX CORPORATION (as a supplier of asbestos-containing friction products); **SB DECKING, INC.** (as a supplier of asbestos-containing decking products); **SMOTHERS PARTS INTERNATIONAL, INC.**, d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES (as a supplier of asbestos-containing automotive products); **STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE (as a supplier of asbestos-containing EIS brakes); **THOMAS DEE ENGINEERING CO., INC.** (as a contractor for asbestos-containing boilers); **VELAN VALVE CORP.** (as a supplier of asbestos-containing Velan valves and steam traps); **VIAD CORP**, f/k/a THE DIAL CORPORATION, individually and as successor to GRISCOM-RUSSELL COMPANY (as a supplier of asbestos-containing Griscom-Russell distilling plants and fuel oil heaters); **VIKING**

10

PUMP, INC. (as a supplier of asbestos-containing Viking pumps); **WARREN PUMPS LLC** (as a supplier of asbestos-containing Warren pumps); **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC. (as a supplier of asbestos-containing Atwood & Morrill valves); **WESTERN AUTO SUPPLY COMPANY**, a wholly-owned subsidiary of ADVANCE AUTO PARTS INC. (as a supplier of asbestos-containing automotive parts); and **THE WILLIAM POWELL COMPANY** (as a supplier of asbestos-containing Powell valves).

## FIRST CAUSE OF ACTION

### NEGLIGENCE

### [AGAINST ALL PRODUCT DEFENDANTS]

For a First Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and for a cause of action for negligence (personal injuries) and allege:

7.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs herein.

8.     Plaintiffs complaint of defendants **HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to BUFFALO PUMPS, INC.; **ALFA LAVAL INC.; ARMSTRONG INTERNATIONAL, INC.; AURORA PUMP COMPANY; BLACKMER PUMP COMPANY; BORGWARNER MORSE TEC LLC,** as successor-by- merger to BORG-WARNER CORPORATION; **BW/IP, INC.,** individually and as successor-in-interest to BYRON JACKSON PUMPS; **CARRIER CORPORATION; CBS CORPORATION,** a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a

Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to B. F.   STURTEVANT COMPANY; **CLA-VAL CO.**; **COPES-VULCAN, INC.**; **DEZURIK, INC.**, individually and successor-in-interest to COPES-VULCAN, INC.; **CRANE CO.**; **DANA COMPANIES, LLC**; **FLOWSERVE US, INC.**; **FORD MOTOR COMPANY**; **FRYER-KNOWLES, INC.**; **GENERAL ELECTRIC COMPANY**; **GENUINE PARTS COMPANY**, d/b/a RAYLOC, a/k/a NAPA; **THE GOODYEAR TIRE & RUBBER COMPANY**; **GRINNELL LLC**, d/b/a GRINNELL CORPORATION; **HENNESSY INDUSTRIES, LLC**, f/k/a HENNESSY INDUSTRIES, INC.; **HILL BROTHERS CHEMICAL COMPANY**; **IMO INDUSTRIES INC.**; **INGERSOLL-RAND COMPANY**; **ITT LLC**, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW; **M. SLAYEN AND ASSOCIATES, INC.**; **METALCLAD INSULATION LLC**, f/k/a METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to METALCLAD INSULATION COMPANY, INC.; **NATIONAL AUTOMOTIVE PARTS ASSOCIATION**, a/k/a NAPA; **PARKER-HANNIFIN CORPORATION**; **PNEUMO ABEX, LLC**, successor-in-interest to ABEX CORPORATION; **SB DECKING, INC.**; **SMOTHERS PARTS INTERNATIONAL, INC.**, d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES; **STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE; **THOMAS DEE ENGINEERING CO., INC.**; **VELAN VALVE CORP.**; **VIAD CORP**, f/k/a THE DIAL CORPORATION, individually and as successor to GRISCOM-RUSSELL COMPANY; **VIKING PUMP, INC.**; **WARREN PUMPS LLC**; **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.;

**WESTERN AUTO SUPPLY COMPANY**, a wholly-owned subsidiary of ADVANCE AUTO PARTS INC.; **THE WILLIAM POWELL COMPANY**; and FIRST DOE through ONE-HUNDREDTH DOE (where the FIFTH-FIRST DOE through ONE-HUNDREDTH DOE are the officers, directors principals and managers of FIRST DOE through FIFTIETH DOE, inclusive, whom directed and ratified the conduct, acts and omissions of the same) (hereinafter and throughout, collectively, "PRODUCT DEFENDANTS").

9.      Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, that PRODUCT DEFENDANTS, and each of them, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, including PRODUCT DEFENDANTS, and each of them, were and are authorized to do and are doing business in the State of California, that said defendants have regularly conducted business in the County of Alameda, State of California, and that certain of said defendants presently designate and have at pertinent times have designated the County of Alameda as their principal place of doing business within the State of California.

10.      At all times herein mentioned, each of the defendants was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of

which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos.  Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos. The PRODUCT DEFENDANTS, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, including PRODUCT DEFENDANTS, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, including PRODUCT DEFENDANTS, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk  spreading role of each such "alternate entity"; and that each such enjoys the goodwill originally attached to each such "alternate entity".

11.    At all times herein mentioned, defendants DOE 150 through DOE 200 were Officers and Directors of named defendants herein as DOE 1 through DOE 149.

12.    At all times herein mentioned, defendants, including PRODUCT DEFENDANTS, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying,

offering for sale, selling, supplying, inspecting, servicing, installing, contracting for installation, repairing, removing, demolishing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos.

13.   At all times herein mentioned, defendants, including PRODUCT DEFENDANTS, and each of them, singularly and jointly, negligently and unreasonably researched, manufactured, fabricated, designed, tested or failed to test, warned or failed to warn, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, supplied, inspected, serviced, installed, contracted for installation, contracting for fabrication, repaired, removed and/or demolished, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain substance, the generic name of which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff THOMAS H. TOY, SR. herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substances unsafe and dangerous for use by "exposed persons".

14.   Defendants, and each of them, knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been associated with terminal and incurable diseases which have caused and continue to cause death. Defendants, including PRODUCT DEFENDANTS, and each of them, had a non-delegable and continuing post-sale duty to exercise due care in the pursuance of the activities set forth above, yet defendants, including PRODUCT DEFNDANTS, and each of them, breached said duty of due care.

15.     Plaintiff THOMAS H. TOY, SR. in a manner that was reasonably foreseeable to defendants, including PRODUCT DEFENDANTS, used, handled, disturbed, or was a bystander to the use, handling and disturbance of, or was otherwise exposed to, asbestos and asbestos-containing products for which defendants, including PRODUCT DEFENDANTS, were, are and remain liable and legally responsible., including, but not limited to, through PRODUCT DEFENDANTS' design, manufacture, use, supply, distribution, specification, sale or other use of the same.

16.     Plaintiff THOMAS H. TOY, SR. was exposed to asbestos during the course of his life in the manner and during the time periods set out in Paragraph 5, *supra*.  Plaintiff THOMAS H. TOY, SR., in a manner that was reasonably foreseeable, used, handled, disturbed, or was a bystander to the use, handling and disturbance of, or otherwise was exposed to asbestos and asbestos-containing products for which defendants, including PRODUCT DEFENDANTS, were, are and remain liable and legally responsible.  Plaintiff's exposure to these defendants', including PRODUCT DEFNDANTS', asbestos, talc contaminated with asbestos and asbestiform minerals and asbestos-containing products which occurred at various locations and times, including within the State of California and County of Alameda.

17.     Plaintiff THOMAS H. TOY, SR.'s disability within the meaning of CCP §340.2 either has yet to occur or occurred less than a year before the filing of this complaint.

18.     As a direct and proximate result of the conduct of the defendants, including PRODUCT DEFENDANTS and each of them, as aforesaid, plaintiff THOMAS H. TOY, SR. plaintiff's exposure to defendants' asbestos fibers, defendants' asbestos-containing products and asbestos-containing materials required or recommended to be used on or with defendants' products caused severe and permanent injury to the plaintiff, including but not limited to

breathing difficulties, mesothelioma and/or other asbestos-related lung disease/damage, and ultimately death.

19.    Plaintiffs are informed and believe, and thereon allege, that the injuries and harm from asbestos hereinabove described from which Plaintiff THOMAS H. TOY, SR. suffers are and have been caused by inhalation of asbestos fibers without perceptible trauma, and that said disease results from Plaintiff THOMAS H. TOY, SR.'s exposure to asbestos and asbestos-containing products over a period of time.

20.    Plaintiff THOMAS H. TOY, SR. suffers from a condition related to exposure to asbestos and asbestos-containing products.  Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.  The asbestos fibers and asbestos-containing products of each named defendant and each DOE defendant, including, but not limited to, PRODUCT DEFENDANTS were a substantial factor in contributing to, and in causing, injury to plaintiff as set forth herein.

21.    Plaintiff THOMAS H. TOY, SR. further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos containing products manufactured, fabricated, inadequately researched, designed, inadequately tested, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them and that plaintiff cannot identify precisely which asbestos or asbestos containing product(s) caused the injuries complained of herein, rather that they each and all during the course of plaintiff's work and use caused

plaintiff's asbestos exposure which contributed to increase the risk of his developing his asbestos illness described hereinabove, and that they did in fact do so.

22.     And as a further direct and legal result it was necessary for Plaintiff THOMAS H. TOY, SR. to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for him from when he first experienced symptoms related to his asbestos-caused conditions until the end of his life. Plaintiffs do not yet know the full extent of treatment rendered to plaintiff THOMAS H. TOY, SR. nor the reasonable value of medical services rendered to plaintiff THOMAS H. TOY, SR. herein and therefore requests leave to amend this complaint when that sum is determined.

23.     As a direct and legal result of the conduct of the defendants, and each of them, and of plaintiff THOMAS H. TOY, SR.'s diagnosis of mesothelioma, plaintiff was unable to follow his normal or any gainful occupation for certain periods of time preceding his diagnosis. Plaintiffs incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

24.     As a further direct and legal result of the conduct of the defendants, and each of them, plaintiff AGNES TOY sustained the loss of plaintiff THOMAS H. TOY, SR.'s love, companionship, comfort, care, assistance, protection, affection, society, support, teaching and tutelage, all to plaintiffs' damage in an amount of at least $50,000, in addition to special damages herein alleged.

18

25.     The asbestos and asbestos-containing products of PRODUCT DEFENDANTS, and each of them, were a substantial factor in contributing to, and in causing, injury to plaintiff THOMAS H. TOY, SR., as set forth herein.

26.     On or before 1930, and thereafter, said defendants, including PRODUCT DEFENDANTS, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with asbestos and asbestos containing products, had no knowledge or information indicating that asbestos or asbestos containing products could cause injury, and said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

27.     With said knowledge, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, opted to research, manufacture, mine, ship, fabricate, design, label, assemble, distribute, lease, buy, offer for sale, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos  containing products without attempting to protect "exposed  persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products, defendants, their "alternate entities", and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively

concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

28.     The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was motivated by the financial interest of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, in the continuing, uninterrupted research, manufacture, fabrication, design, labeling, assembly, design, distribution, lease, purchase, sale, offer for sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos containing products. In pursuance of said financial motivation, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and were in fact consciously willing and intended to permit asbestos and asbestos containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiff THOMAS H. TOY, SR.

29.     In researching, mining, shipping, manufacturing, fabricating, designing, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos containing products, defendants, their "alternate entities", and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said

asbestos and asbestos containing products, in that said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos containing products, including, but not limited to, mesothelioma, cancer and other progressive lung disease (including, but not limited to, asbestosis, scarring, plaques and/or calcifications).   Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, and which knowledge was obtained by said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them on or before 1930, and thereafter.

30.      Plaintiff THOMAS H. TOY, SR. relied upon defendants', their "alternate entities" and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos containing products.   As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

31.      Defendants, their "alternate entities, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

32.      Defendants, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

33.   The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was and is willful, despicable, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

### [AGAINST ALL PRODUCT DEFENDANTS]

For a Second Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and allege:

34.   Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs herein.

35.   The PRODUCT DEFENDANTS, and each of them, marketed, sold, supplied, delivered or otherwise distributed to plaintiff THOMAS H. TOY, SR., or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to plaintiff, or to others working in close proximity to plaintiff, the above-described asbestos and asbestos-containing products to which plaintiff was exposed.

36.   The PRODUCT DEFENDANTS, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or had reason to know that exposed persons, including plaintiff THOMAS H. TOY, SR., would be using asbestos containing products, during which dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

37.   At all relevant times herein, the PRODUCT DEFENDANTS, their "alternate entities", and each of them impliedly warranted their asbestos and asbestos containing products to be safe for their intended and foreseeable uses.  PRODUCT DEFENDANTS, and each of them, impliedly warranted that their asbestos and asbestos-containing products were of merchantable quality and safe, fit and proper for the uses which PRODUCT DEFENDANTS knew or intended were to be made of them at the time of marketing them.

38.   At all relevant times herein, the PRODUCT DEFENDANTS, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose and use.

39.   At all relevant times herein, "Exposed persons," including plaintiff THOMAS H. TOY, SR., did not know of the substantial danger and unreasonable risk of bodily harm as a result of using said asbestos and asbestos-containing products.  Said risk and dangers were not readily recognizable by "exposed persons," including plaintiff.

40.   Plaintiff THOMAS H. TOY, SR. reasonably relied on the skill, knowledge and judgment of PRODUCT DEFENDANTS, and each of them, in furnishing and supplying the asbestos-containing products described hereinabove.

41.   The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by PRODUCT DEFENDANTS, and each of them, in that said products had dangerous propensities when put to the use for which each of these PRODUCT DEFENDANTS knew or intended they were marketed or sold, and would cause severe injury to users or bystanders, such as plaintiff THOMAS H. TOY, SR. PRODUCT DEFENDANTS, their "alternate entities," and each of them, knew, or should have known, that the aforementioned

asbestos and products containing asbestos would be used for insulation and other purposes, would require sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation which would result in the release of airborne asbestos fibers, and that through such foreseeable use "exposed persons" would use or be in proximity to and exposed to said asbestos fibers.

42.   The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by PRODUCT DEFENDANTS, and each of them, in that said products had dangerous propensities when put to the use for which each of these PRODUCT DEFENDANTS knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as Plaintiff THOMAS H. TOY, SR.

43.   The PRODUCT DEFENDANTS, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, which would advise Plaintiff THOMAS H. TOY, SR. and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing, removing and otherwise manipulating said products, and working around others doing such tasks.

44.   As a direct and proximate result of the breach of implied warranty of good and merchantable quality and/or fitness for the particular intended use, plaintiff THOMAS H. TOY, SR. developed mesothelioma, cancer and progressive lung disease as previously set forth. Plaintiffs were damaged as fully set forth herein, including those special damages herein alleged.

45.     The failure of the asbestos and asbestos-containing products to be suitable for the particular purpose was a substantial factor in causing the injuries to plaintiff THOMAS H. TOY, SR., as hereinabove described.

WHEREFORE, plaintiffs pray judgment against defendants, including PRODUCT DEFENDANTS, and each of them, as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**STRICT LIABILITY**

**[AGAINST ALL PRODUCT DEFENDANTS]**

For a Third Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and allege:

46.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

47.     At all relevant times herein, defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, tested or failed to test, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos, including those described in the preceding Paragraphs herein.

48.     At all relevant times herein, the asbestos and asbestos-containing products which were mined, milled, manufactured, tested, developed, processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and

inspected by PRODUCT DEFENDANTS, and each of them, were defective due to the design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary consumer expectations of safety when used in an intended or reasonably foreseeable manner. The design, manufacture and/or said defendants' failure to warn or give adequate warnings of the risk of developing an asbestos-related disease and risk of death from an asbestos-related disease resulting from use of the product, rendered the product unsafe for its intended or reasonably foreseeable use.

49.   Said asbestos and products containing asbestos were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of defendants, their alternate entities, and each of them.

50.   Defendants, their "alternate entities", and each of them, knew and intended that the above referenced asbestos and other products containing asbestos would be used by the purchaser or user without inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

51.   Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be used for insulation purposes, would require sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation which would result in the release of airborne asbestos fibers, and that through such foreseeable use "exposed persons" would use or be in proximity to and exposed to said asbestos fibers.

A.   PRODUCT DEFENDANTS, and each of them, knew that PRODUCT DEFENDANTS' asbestos-containing products would be used by plaintiff THOMAS H.

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

TOY, SR. and anyone similarly situated in an industrial and construction setting without inspection for defects.

B. PRODUCT DEFENDANTS, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of pneumoconiosis, asbestosis or cancer, or all.

C. At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants and each of them knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

D. At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, PRODUCT DEFENDANTS, and each of them failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including plaintiff THOMAS H. TOY, SR., of the dangers and hazards associated with its products.

E. At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, PRODUCT DEFENDANTS, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including plaintiff THOMAS H. TOY, SR., of the dangers and hazards associated with its products.

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

F.     PRODUCT DEFENDANTS, and each of them, prior to and at the time of placing the aforementioned products in to the stream of commerce, including but not limited to supplying said products to plaintiff THOMAS H. TOY, SR.'s employer or to others who in turn sold to plaintiff's employers, and to other persons relevant herein, knew that the asbestos which plaintiff and others around him were exposed to was dangerous. The PRODUCT DEFENDANTS, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products and failed to place a sufficient warning on the said product or package thereof regarding said dangerous nature, despite knowing that said products would be used by plaintiff and others around him who had no knowledge of the dangerous and hazardous nature thereof.

G.     PRODUCT DEFENDANTS, their "alternate entities", and each of them, further failed to adequately warn of the risks to which exposed persons, including plaintiff THOMAS H. TOY, SR. and others similarly situated, were exposed.

52.     The asbestos-containing products of the PRODUCT DEFENDANTS, and each of them, were defective in that:

A.     The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or;

B.     The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse consequences to the product and to the consumer of a safer alternative design.

C.     *Failure to Warn*: PRODUCT DEFENDANTS, and each of them knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

D.     Each of defendants' products reached plaintiff THOMAS H. TOY, SR. without substantial change in its condition.

53.     The aforementioned products were used by plaintiff THOMAS H. TOY, SR. and those in close proximity to plaintiff in a foreseeable manner, and in the manner for which they were intended. "Exposed persons", including plaintiff THOMAS H. TOY, SR., did not know of the substantial danger of using said asbestos and asbestos-containing products. Said dangers were not readily recognizable by "exposed persons".

54.     Defendants' products were used in a manner reasonably foreseeable by defendants, which defendants intended or knew they would be used, or for which they marketed them or knew they were marketed to be used.

55.     At all times mentioned herein, plaintiff THOMAS H. TOY, SR. was unaware of the dangerous nature of the aforementioned products.

56.     The asbestos and asbestos-containing products of PRODUCT DEFENDANTS, and each of them, did, in fact, cause personal injuries, including lung cancer and related lung disease to "exposed persons", including plaintiff THOMAS H. TOY, SR., while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use and exposing such exposed persons, including plaintiff THOMAS H. TOY, SR., to asbestos.

57.     The asbestos and asbestos-containing products of each of the PRODUCT DEFENDANTS was a substantial factor in contributing to, and in causing, injury to plaintiff

THOMAS H. TOY, SR. as set forth herein. As a direct and legal result of the conduct of PRODUCT DEFENDANTS, and each of them, plaintiff developed an asbestos-related disease, mesothelioma, and related conditions and disabilities. Plaintiffs have incurred damages in excess of $50,000 in addition to the special damages alleged herein.

58. The conduct of the PRODUCT DEFENDANTS, and each of them, was motivated by their financial interests. In this financial pursuit, PRODUCT DEFENDANTS consciously disregarded the safety of users, and persons exposed to their products, and were consciously willing to permit their products and premises to injure workers and others, including plaintiff THOMAS H. TOY, SR. in order to maximize profits. Said defendants consciously disregarded the well-publicized risks of asbestos exposure because to have kept consumers and end users like plaintiff safe would have required said PRODUCT DEFENDANTS to make less money or limit distribution of their products.

59. The conduct of PRODUCT DEFENDANTS, and each of them, as described herein was and is willful, malicious, outrageous, and in conscious disregard and indifference to the safety and health of workers and others exposed to asbestos, including plaintiff THOMAS H. TOY, SR., and therefore Plaintiffs are entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE – CLUTCH & BRAKE
### ASSEMBLIES, MECHANISMS & COMPONENTS

### [AGAINST ALL EQUIPMENT DEFENDANTS]

For a Fourth Cause of Action, Plaintiffs complain of EQUIPMENT DEFENDANTS, and each of them, and allege:

60. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

61.   Plaintiffs complaint of defendants **HONEYWELL INTERNATIONAL INC.,** f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; **BORGWARNER MORSE TEC LLC,** as successor-by- merger to   BORG-WARNER   CORPORATION;   **PARKER-HANNIFIN   CORPORATION;** **PNEUMO ABEX, LLC,** successor-in-interest to ABEX CORPORATION; **STANDARD MOTOR PRODUCTS, INC.,** individually and as successor-in-interest to EIS AUTOMOTIVE; and THREE-HUNDRED-FIRST DOE (301) through FOUR-HUNDREDTH DOE (400) (where the THREE-HUNDRED-FIFTY-FIRST DOE through FOUR-HUNDREDTH DOE are the officers, directors principals and managers of THREE-HUNDRED-FIRST DOE through THREE-HUNDRED-FIFTIETH DOE, inclusive, whom directed and ratified the conduct, acts and omissions of the same) (hereinafter and throughout, collectively, "EQUIPMENT DEFENDANTS").

62.   At all times herein mentioned, each of the defendants, including EQUIPMENT DEFENDANTS, was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos. The EQUIPMENT DEFENDANTS, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk  spreading role of each such "alternate entity"; and that each such enjoys the goodwill originally attached to each such "alternate entity".

63.    At all times herein mentioned, defendants DOE 350 through DOE 400 were Officers and Directors of named defendants herein as DOE 1 through DOE 249.

64.    EQUIPMENT DEFENDANTS manufactured or supplied defective clutch components and brake assemblies or mechanisms which were incorporated into various makes and models of automobiles, trucks, busses and other vehicles designed, manufactured, sold, supplied, marketed, distributed, specified and otherwise placed into the stream of commerce by EQUIPMENT DEFENDANTS. Said clutch components and brake assemblies or mechanisms

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

were negligently designed, manufactured, sold, supplied, marketed, specified and placed into the stream of commerce in that:

A.     The design of said clutch and brake assemblies and mechanisms incorporated the use of asbestos-containing clutch facings/plates and brake linings;

B.     By the normal, foreseeable, intended and known operation of these EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles and the necessary and integral clutch and brake assemblies and mechanisms thereof, the asbestos clutch and brake linings are ground, worn, pulverized, deteriorated, abraded, and otherwise disturbed during the regular and ordinary use of EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles, thereby creating friable and respirable asbestos-laden dust, debris, fiber and particulate which was either trapped within the clutch and brake assemblies/mechanisms/enclosures of these automobiles, trucks, busses and other vehicles, and/or released directly into the enclosed cabs and control boxes of these EQUIPMENT DEFENDANTS' cranes, draw works and lifting mechanisms, wherein the operator of said cranes, draw works and lifting mechanisms sits;

C.     The design of said EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles , including the clutch and brake assemblies/mechanisms thereof,  and the continuous degeneration and destruction by the normal, intended, foreseeable, and known operation of the same, unavoidably required as a part of the normal operation, use and maintenance of said automobiles, trucks, busses and other vehicles that the asbestos clutch facings/components and brake linings therein needed to be and were removed and replaced;

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

D.    Said EQUIPMENT DEFENDANTS effectively required, and often designated and specified, the use of asbestos-containing clutch facings/components and brake linings throughout the time period of at least 1940-1985, particularly given the absence – known to the EQUIPMENT DEFENDANTS - of non-asbestos alternatives available on the market; nonetheless, EQUIPMENT DEFENDANTS failed to alter or redesign their automobiles, trucks, busses and other vehicles , including the clutch and brake assemblies/mechanisms thereof,  to avoid the necessary replacement of those internal asbestos-containing clutch and brake friction components;

E.    During the normal and necessary maintenance, inspection, repair and overhaul of EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles and their clutch and brake assemblies/mechanisms thereof, asbestos-containing clutch components and brake linings were necessarily inspected, disturbed, removed, replaced and reinstalled, during which work asbestos-containing dust unavoidably was encountered, generated and released by EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles because of the design of the clutch and brake assemblies and mechanisms thereof;

F.    EQUIPMENT DEFENDANTS knew or should have known that this asbestos-containing dust would be generated, created, released and encountered during the regular use and maintenance of the clutch and brake assemblies and mechanisms of their automobiles, trucks, busses and other vehicles and linings, and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust, including bystanders to such work;

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

G.   The EQUIPMENT DEFENDANTS, and each of them, failed to warn and/or properly instruct users, consumers, or others, including bystanders to that work, of the asbestos-containing dust hazard which existed at the time of regular inspection, maintenance, repair and replacement of its automobiles, trucks, busses and other vehicles' clutch and brake assembly asbestos clutch and brake facings and linings. Such failure includes, but is not limited to:

(1)   Failure to place prominent and adequate warnings or instructions in and on the clutch and brake assemblies and mechanisms, including any covers, panels, enclosures, assemblies, shoes, pads and drums thereof;

(2)   Failure to place any or adequate warnings or instructions in the owners', technical and service manuals accompanying or provided for said automobiles, trucks, busses and other vehicles; and

(3)   Failure to provide any or adequate information regarding the asbestos hazards associated with the regular use and maintenance of the automobiles, trucks, busses and other vehicles and its integral clutch and brake assemblies and mechanisms thereof.

65.   EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles, including their integral clutch and brake assemblies and mechanisms thereof, as designed, manufactured, sold, supplied, marketed and placed into the stream of commerce by defendants failed to perform as safely as the ordinary consumer would expect, even though these products performed as designed.

66.    EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof, both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

67.    The dangers inherent in EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof, were unknown and unforeseeable to plaintiff and others around him performing this same work.

68.    Plaintiff THOMAS H. TOY, SR. thereby was exposed to asbestos-containing dust, debris, fiber and particulate by EQUIPMENT DEFENDANTS, which was created, generated and released by the normal, foreseeable, intended, specified and known use of EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof , which plaintiffs contend caused THOMAS H. TOY SR.'s mesothelioma and/or other asbestos-related lung disease/damage.

69.    EQUIPMENT DEFENDANTS' negligence and defective products as described in this cause of action were a direct cause of plaintiff THOMAS H. TOY SR.'s injuries, and the injuries and damages thereby sustained by plaintiffs as a result, alleged herein.

70.    None of plaintiffs' claims hereinabove seek to impose liability on the EQUIPMENT DEFENDANTS for the products or actions of any third party that may have manufactured or supplied replacement asbestos clutch or brake linings, or components used in the hereinabove described EQUIPMENT DEFENDANTS' clutch and brake assemblies.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### STRICT LIABILITY – CLUTCH & BRAKE ASSEMBLIES, MECHANISMS & COMPONENTS

### [AGAINST ALL EQUIPMENT DEFENDANTS]

For a Fifth Cause of Action, Plaintiffs complain of EQUIPMENT DEFENDANTS, and each of them, and allege:

71.    Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

72.    EQUIPMENT DEFENDANTS' defective products as described in this cause of action did not perform as safely as an ordinary consumer would have expected at the time of plaintiff's use.

73.    EQUIPMENT DEFENDANTS' defective products as described in this cause of action were used in a manner foreseeable by defendants.

74.    The gravity of the potential harm resulting from the use of EQUIPMENT DEFENDANTS' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm, including asbestos-related disease.

75.    EQUIPMENT DEFENDANTS' conduct and defective products as described in this cause of action were a direct cause of plaintiff THOMAS H. TOY, SR.'s injuries, and the injuries and damages thereby sustained by plaintiffs.

76.    Nothing hereinabove claimed seeks to impose liability on the EQUIPMENT DEFENDANTS named in this cause of action for the products or actions of any third party that

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

may have supplied replacement brake linings used in the hereinabove described brake assemblies.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION

## FRAUD & CONCEALMENT

For a Sixth Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS and EQUIPMENT DEFENDANTS, and each of them, and allege:

77.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

78.     Plaintiffs complain of all named defendants, identified above, as well as FOUR-HUNDRED-FIRST DOE through FIVE-HUNDREDTH DOE (where FOUR-HUNDRED-FIFTY-FIRST DOE through FIVE-HUNDREDTH DOE were the officers, directors, principals and managers of, whom directed and ratified the acts of, FOUR-HUNDRED-FIRST through FOUR-HUNDRED-FIFTIETH DOES, inclusive) (hereinafter, collectively, and throughout, "CONSPIRACY/FRAUD DEFENDANTS").

79.     At all times pertinent hereto, the defendants, and each of them, owed plaintiff THOMAS H. TOY, SR. a duty, as provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. In violation of that duty, the defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1710, and more specifically were suggestions of fact that were not true and which the defendants

did not believe to be true, assertions of fact that which was not true, which the defendants had no reasonable ground for believing it to be true, and the suppression of facts when a duty existed to disclose it, all as more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned code sections.

80.     Since 1924, the defendants, and each of them, have known and have possessed the true facts consisting of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the plaintiff THOMAS H. TOY, SR., and others in plaintiff's position working in close proximity with such materials and have known of the dangerous propensities of other of the aforementioned materials and products prior to that time and with intent to deceive plaintiff, and others in his position and with intent that he and such others should be and remain ignorant of such facts and with intent to induce plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages did do the following acts:

A.     Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products as to the hazards of such materials and products to the health and safety of plaintiff THOMAS H. TOY, SR. and others in plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, when the knowledge of such hazards was existing and known and readily available to defendants, and each of them since 1924. By not labeling such materials as to their said hazards, defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer that it was safe for plaintiff to work in close proximity to such

materials when in fact it was not true, and defendants did not believe it to be true;

B.     Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff THOMAS H. TOY, SR. and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

C.     Defendants, and each of them, sold the aforementioned products and materials to plaintiff THOMAS H. TOY, SR's. employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers.  Thereby, defendants caused to be positively asserted to plaintiff's employer of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

D.     Defendants, and each of them, suppressed from everyone, including plaintiff THOMAS H. TOY, SR. and plaintiff's employer, and continue to suppress, medical and scientific data and knowledge of the accurate results of studies including, but not limited to, suppressing information contained in the unpublished Lanza report by participating in the influencing of A.J. Lanza to change his report, which altered version

was published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were bound to disclose it unaltered, and by causing Asbestos Magazine, a widely disseminated trade journal, to omit any mention of the dangers of inhaling asbestos dust, thereby lessening the probability of notice of danger to those exposed to asbestos, and thereby caused plaintiff to be and remain ignorant thereof;

      E.    Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of defendants, and each of them, thereby misleading plaintiff THOMAS H. TOY, SR. and plaintiff's employer to their prejudice through the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and (ii) the suppression of such information from 1946 to a date unknown to plaintiff at this time;

      F.    Commencing in 1930 with the study of mine and mill workers at the Thetford asbestos mined in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connections between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950 the defendants, and each of them, knew and

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead plaintiff THOMAS H. TOY, SR. and plaintiff's employer and which did mislead them for want of communication of true facts which consisted of the afore described medical and scientific data and other knowledge by not giving plaintiff or plaintiff's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

      G.     Failed to warn plaintiff THOMAS H. TOY, SR. and plaintiff's employer of the nature of said materials, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

      H.     Failed to provide plaintiff THOMAS H. TOY, SR. with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to the plaintiff and others applying and installing such materials;

      I.     Concealed from plaintiff THOMAS H. TOY, SR. the true nature of the industrial exposure of plaintiff, the fact that they and each of them, knew that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time develop

irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclosure it;

J.      Failed to provide information to the public at large and buyers, users and physicians employed by plaintiff THOMAS H. TOY, SR. and plaintiff's employer for the purpose of conducting physical examinations of plaintiff and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which plaintiff had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and

K.      Defendants, and each of them, affirmatively misrepresented that asbestos-containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

81.      Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty to existed to act, the said defendants, and each of them, having such knowledge, knowing the plaintiff THOMAS H. TOY, SR. did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce plaintiff to work in a dangerous environment and to cause plaintiff to remain unaware of the true facts, all in violation of Section 1710 of the Civil Code of the State of California.

82.     Plaintiff THOMAS H. TOY, SR. relied upon the said acts, suggestions, assertions and forbearances; had plaintiff known the true facts, he would not have continued to work in the said environment.

83.     By reason of the aforesaid premises, plaintiff THOMAS H. TOY, SR. has been damaged in his health, strength and activity in addition to special damages hereinabove alleged.

84.     Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and plaintiff THOMAS H. TOY, SR. is entitled to exemplary and punitive damages.  The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled.  In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

85.     Plaintiff THOMAS H. TOY, SR. had no knowledge that the foregoing acts were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

## CONSPIRACY TO DEFRAUD AND FAILURE TO WARN

For a Seventh Cause of Action, Plaintiffs complain of CONSPIRACY/FRAUD DEFENDANTS, and each of them, and allege:

86.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

87.     At all times mentioned, the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff THOMAS H. TOY, SR. the acts complained of as set forth in the First through Seventh Causes of Action as incorporated herein.

88.     Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, did the acts and things herein alleged in Paragraph 93 of the Eighth Cause of Action, *supra*, incorporated by reference herein, in furtherance of the conspiracy and agreement as herein alleged and did further conspire to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them.

89.     Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, and plaintiff THOMAS H. TOY, SR. is entitled to exemplary and punitive damages.   The foregoing conduct of the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, was done wantonly, willfully, oppressively and in conscious

disregard of the safety of plaintiff herein, in that the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled.  In addition to the unlawful conduct described above, the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

90.     By reason of the aforesaid acts of Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, plaintiff THOMAS H. TOY, SR. has suffered damages to his health, strength and activity.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### LOSS OF CONSORTIUM

For an Eighth Cause of Action, Plaintiffs complain of all defendants, and each of them, and allege:

46

91.   Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each of the preceding paragraphs, above.

92.   Plaintiffs THOMAS H. TOY, SR. and AGNES TOY are husband and wife and were so at the time of plaintiff THOMAS H. TOY, SR.'s injury.

93.   Plaintiff THOMAS H. TOY, SR. sustained injuries as alleged.  Prior to the aforesaid injuries, plaintiff was able to and did perform duties as a spouse.  Subsequent to the injuries, and as a proximate result thereof, plaintiff THOMAS H. TOY, SR. has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, services and duties in the future.  As a proximate result thereof, AGNES TOY has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages in an amount presently unknown but which will be proved at the time of trial.

94.   As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to plaintiff THOMAS H. TOY, SR. as set forth in this complaint, Plaintiff AGNES TOY has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

## PRAYER FOR RELIEF

**ALL DEFENDANTS – FIRST THROUGH EIGHTH CAUSES OF ACTION**

WHEREFORE, Plaintiffs pray judgment against all defendants, their "alternate entities", and each of them, as follows:

1.     General damages in an amount in excess of $50,000.00 in accordance with proof;

2.     Loss of income, wages and earning potential according to proof;

3.     Medical and related expenses according to proof;

4.     Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

5.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

6.     Special damages in accordance with proof;

7.     Prejudgment interest and post-judgment interest in accordance with law;

8.     Costs of suit; and

9.     Such other and further relief as the Court deems just and proper, including costs as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law.

DATED: December 14, 2018

DEAN OMAR & BRANHAM, LLP

BENJAMIN H. ADAMS, ESQ.

Attorneys for Plaintiffs

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM –ASBESTOS

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jessica M. Dean (CSB 260598) / Benjamin H. Adams (CSB 272909)<br>Dean Omar & Branham, LLP<br>302 N. Market St., Suite 300, Dallas, TX 75202<br>TELEPHONE NO.: 214-722-5990   FAX NO.: 214-722-5991<br>ATTORNEY FOR *(Name):* Thomas H. Toy Sr. and Agnes Toy | FOR COURT USE ONLY<br><br>E N D O R S E D<br>F I L E D<br>ALAMEDA COUNTY<br><br>DEC 1 4 2018<br><br>SUE PESKO |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1221 Oak Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Asbestos - Department 17

CASE NAME:
TOY v. HONEYWELL INTERNATIONAL INC., etc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: R G 1 8 9 3 2 3 5 0 |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount       (Amount<br>demanded    demanded be<br>exceeds $25,000)  $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☑ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties   d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve                in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence   f. ☑ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 14, 2018

Benjamin H. Adams
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| TOY v. HONEYWELL INTERNATIONAL, INC., etc., et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[ X ] Oakland, Rene C. Davidson Alameda County Courthouse  (446)

[ ] Hayward Hall of Justice  (447)

[ ] Pleasanton, Gale-Schenone Hall of Justice  (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | Is this an uninsured motorist case?  [ ] yes  [ ] no | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ X ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial   Is the deft. in possession |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential   of the property? |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs   [ ] Yes   [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [ ] Yes  [ ] No | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

202-19 (5/1/00)

A-13