# EXHIBIT B



    

2208 North 30th Street, Suite 202, Tacoma, WA 98403 • 253.627.6401 • Toll Free: 800.649.2034 • byersanderson.com

# ONE-WEEK TRANSCRIPT TURNAROUND

**Digital Transcripts • Internet Realtime • HD Legal Video • Picture-in-Picture Depositions
Remote Witnesses • Designation Editing • Nationwide Scheduling • HD Videoconferencing**

In the Matter of:

RE TOY ASBESTOS LITIGATION

vs

_____

**CARL BRODKIN**

*March 06, 2020*

_____

Thank you for choosing Byers & Anderson for your court reporting, legal video, and videoconferencing needs.  For over 35 years it has been our goal to provide you with unmatched service.  Our one-week transcript turnaround is an industry leader.  If there is anything we can do to assist you, please don't hesitate to let us know.

*Sarah Fitzgibbon, CCR*
Deposition Services Lead Consultant



The Premier Advantage™
PDF transcript bundle contains:

• Full-size and condensed transcripts
• Printable word index
• Hyperlinked selectable word index
• Embedded printable exhibit scans
• Hyperlinked selectable exhibit viewing
• Common file formats: txt, lef, mdb
   accessed via *paperclip* icon

STRATEGY    •    TECHNOLOGY    •    DESIGN    •    DEPOSITIONS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | ) |
| | ) |
| | ) No. 4:19-cv-00325-HSG |
| | ) |
| IN RE TOY ASBESTOS LITIGATION | ) Related: |
| | ) 4:19-cv-00326-HSG |
| | ) and |
| | ) 4:19-cv-00336-HSG |
| | ) |
| | ) |
| | ) |

DEPOSITION OF CARL A. BRODKIN, MD MPH FACOEM

March 6, 2020

Seattle, Washington

Reporter:  Barbara Castrow, CCR, RMR, CRR



```
 1                        APPEARANCES

 2         For the Plaintiffs:

 3                          Benjamin H. Adams
                            Dean Omar & Branham, LLP
 4                          302 North Market Street
                            Suite 300
 5                          Dallas, TX  75202
                            214.722.5990
 6                          badams@dobllp.com

 7    (Following counsel appearing telephonically)

 8         For Defendant Ingersoll-Rand Company:

 9                          Kevin E. Deenihan
                            The Rasmussen Law Firm, LLP
10                          6033 West Century Boulevard
                            Suite 444
11                          Los Angeles, CA  90045
                            310.981.5516
12                          kdeenihan@rasmussenlawca.com

13

14         For Defendant Warren Pumps LLC:

15                          James P. Cunningham
                            Tucker Ellis
16                          201 Mission Street
                            Suite 2310
17                          San Francisco, CA  94105-1831
                            415.617.2214
18                          415.617.2409 Fax
                            james.cunningham@tuckerellis.com

19

20         For Defendant Honeywell International, Inc.:

21                          Nilufar Majd
                            Ongaro PC
22                          1604 Union Street
                            San Francisco, CA  94123
23                          415.433.3900
                            nmajd@ongaropc.com

24

25
```

```
 1                 APPEARANCES:   (Continuing.)

 2    For Defendants SB Decking, Inc., and Smothers
          Parts International, Inc.:
 3
                      Florence A. McClain
 4                    Lewis Brisbois
                      333 Bush Street
 5                    Suite 1100
                      San Francisco, CA  94104
 6                    415.438.6602
                      415.434.0882 Fax
 7                    florence.mcclain@lewisbrisbois.com

 8
      For Defendant The Goodyear Tire & Rubber Company:
 9
                      Thomas J. Tarkoff
10                    MG+M
                      100 Pringle Avenue
11                    Suite 750
                      Walnut Creek, CA  94593
12                    415.527.2810
                      415.512.6791 Fax
13                    ttarkoff@mgmlaw.com

14
      For Defendants Armstrong International, Inc., and
15        Aurora Pump Company:

16                    Gilliam F. Stewart
                      CMBG3 Law
17                    100 Spectrum Center Drive
                      Suite 820
18                    Irvine, CA  92618
                      949.467.9500
19                    gstewart@cmbg3.com

20
      For Defendants BW/IP, Inc., and Alfa Laval, Inc.:
21
                      Emily M. Cunningham
22                    Foley & Mansfield
                      2185 North California Boulevard
23                    Suite 575
                      Walnut Creek, CA  94596
24                    510.590.9586
                      510.590.9595
25                    ecunningham@foleymansfield.com
```

```
 1                    APPEARANCES:   (Continuing.)

 2    For Defendants Morse TEC and Metalclad:

 3                    Frank K. Berfield
                      Dentons US LLP
 4                    One Market Plaza
                      Spear Tower, 24th Floor
 5                    San Francisco, CA  94105
                      415.267.4000
 6                    415.267.4198
                      frank.berfield@dentons.com

 7

 8    For Defendant Air & Liquid Systems Corporation:

 9                    Vick Mansourian
                      Gordon Rees Scully Mansukhani
10                    633 West Fifth Street
                      52nd Floor
11                    Los Angeles, CA  90071
                      510.463.8525
12                    vmansourian@grsm.com

13

      For Defendant Cla-Val Co.:
14
                      Charles H. Kanter
15                    Palmieri Tylerm Wiener Wilhelm
                         & Waldron LLP
16                    1900 Main Street
                      Suite 700
17                    Irvine, CA  92614-7328
                      949.851.7232
18                    949.825.5411

19
      For Defendant Weir Valves & Controls USA, Inc.,
20        and M. Slayen and Associates, Inc.:

21                    Lysle J. Kapp
                      BHC Law Group LLP
22                    5900 Hollis Street
                      Suite O
23                    Emeryville, CA  94608
                      510.650.3600
24                    510.658.1151
                      lkapp@bhc.law

25
```

1        **4 with the discovery documents Page 5 through 9.**

2   Q    Of your handwritten report?

3   A    **Correct, the Clinical Summary and Materials Reviewed**

4        **section.**

5   Q    Okay.  So is it a fair summary to state that what is

6        stated in your report is included in your Redweld with

7        the exception of the two expert reports you just

8        received?

9   A    **Yes, that's fair.**

10  Q    Okay.  Let's mark those collectively as Exhibit 5 then.

11                              (Exhibit No. 5 marked

12                                  for identification.)

13  Q    (By Mr. Deenihan)  Can you describe for me the two expert

14       reports that you just received?

15  A    **Yes.  And just to clarify, Exhibit 5 are the two**

16       **Redwelds?**

17  Q    That's correct.  If it's easier for you, I can mark them

18       separately.

19  A    **Whatever works for you is fine.**

20  Q    Okay.  I prefer to mark them as one big exhibit.  So

21       let's just do that.

22           Can we turn to the two expert reports you received

23       recently?

24  A    **Yes, yesterday.  Yes, I have them.**

25  Q    Can you describe them for me?

1    A    Yes, the first one is authored by Brent Staggs.  It's

2         dated January 3, 2020.  And the second one is from

3         Dr. Victor Roggli dated February 25, 2020.

4    Q    Okay.  And actually I know I said these were part of

5         Exhibit 5, but why don't we make the Staggs report

6         Exhibit 6 and the Roggli report Exhibit 7, just so we

7         don't confuse them with the other ones you have received.

8         Is that okay?

9    A    Sure.

10                          (Exhibit Nos. 6-7 marked

11                            for identification.)

12                    MR. DEENIHAN:  Ben, have you produced

13        the Staggs report?

14                    MR. ADAMS:  I'm not sure.  I don't

15        think in the initial disclosures he was disclosed, but he

16        will be submitting a supplemental report in response to

17        -- or a rebuttal report in response to Roggli.

18                    MR. DEENIHAN:  Would you have a

19        problem sending me that now so I can take a look at it?

20                    MR. ADAMS:  No.  Let me see if I can

21        find it real quick.  I will send it to you as soon as I

22        can.

23                          (Discussion off the record.)

24   Q    (By Mr. Deenihan)  Okay.  Ben, if you could send me that,

25        and maybe I'll take a look at it over the break and then

1    we can discuss it.

2          Have you had a chance to review those two reports?

3  A   **Yes, I have.**

4  Q   Okay.  We'll get to that later on.  Did you ever produce

5    any draft reports?

6  A   **I did not.**

7  Q   Outside of the two documents -- the two export reports

8    that you brought with you, have you reviewed anything

9    else subsequent to the date of your report in late

10   January?

11  A   **No.**

12  Q   Are there any materials that you relied on in forming

13   your report that you did not bring with you today?

14  A   **I would indicate, and this is consistent with the Notice**

15   **of Deposition, that articles that I've relied on are**

16   **listed in the Reference Reliance List or noted in the**

17   **body of my report.  So I don't have those actual articles**

18   **or references, but they are listed.**

19  Q   Okay.  I understand.  They are listed in there.  You may

20   not have physical copies with you.  Is that a fair

21   summary?

22  A   **Yes.**

23  Q   Okay.  Did you review any expert reports besides the

24   Dr. Roggli one and the Dr. Staggs one?

25  A   **No, not to my knowledge.  I mean, the other pathology**

```
 1     about an hour.  Do you want to take a break?
 2                      THE WITNESS:  We could take five
 3     minutes.
 4                      MR. ADAMS:  Sounds good.
 5                      MR. DEENIHAN:  Let's take a quick
 6     five.  That will be an opportunity for me to look at the
 7     Staggs report.  Let's go off the record.
 8                          (Recess from 10:01 to 10:08.)
 9  Q  (By Mr. Deenihan)  Doctor, I'm looking at the Dr. Staggs'
10     report.  Do you have that in front of you?
11  A  Yes.
12  Q  Okay.  Do you rely on this report with respect to your
13     opinions?
14  A  Well, I would indicate that for the January 20, 2020,
15     report, I had not reviewed Dr. Staggs' report, so I did
16     not rely on it.  I relied on the treating clinical
17     pathologists for my assessment.
18  Q  Okay.  Does this report then have no significance to you?
19     Is it something that you don't rely on?  I'm trying to
20     figure that part of it out.
21  A  Certainly Dr. Staggs' opinion is consistent with the
22     clinical pathologist's report at Butler Health Pathology
23     from October 1st, 2018.  I would say it's fully
24     consistent with that.
25  Q  Okay.  And when you say "consistent," do you mean in
```

1    terms of diagnosing with a mesothelioma based on

2    pathology review?

3  A   **Yes, and in terms of the histologic type and epithelioid**

4    **mesothelioma, it is consistent.**

5         **And in terms of its review of the immuno-**

6    **histochemical markers, it's consistent with what was**

7    **stated in the clinical pathology report from Butler**

8    **Health.**

9  Q   I'm confused what you mean by consistent as to the review

10    of the immunohistochemical -- I keep messing that word

11    up.  I'm sorry.  For review of the markers, that it's

12    consistent.  What part of the report are you referring

13    to?

14 A   **So this would be Page 13 of the report when he's**

15    **reviewing pathology reports.  He reviews the Butler**

16    **Memorial Hospital report.  And that review, I think, is**

17    **consistent and fairly states what was observed in the**

18    **report, the pathology report at Butler Health.**

19 Q   So you are referring to his recapitulation of the Butler

20    Health report?

21 A   **His review of it, yes.**

22 Q   Okay.  And then in turning to his own pathological

23    review, did you review that section as well?

24 A   **Yes.**

25 Q   Okay.  Are you able to tell me what staining he