# EXHIBIT H

Jessica M. Dean, Esq.        (CSBN 260598)
Benjamin H. Adams, Esq.      (CSBN 272909)
**DEAN OMAR BRANHAM SHIRLEY, LLP**
302 N. Market Street, Suite 300
Dallas, Texas 75202
Telephone: (214) 722-5990
Facsimile:  (214) 722-5991
jdean@dobslegal.com
badams@dobslegal.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AGNES TOY**, individually and successor-in-interest to the Estate of **THOMAS H. TOY, SR.,** deceased**;**<br>**THOMAS H. TOY, JR.**, individually and as legal heir to THOMAS H. TOY, SR., deceased,<br><br>              Plaintiffs,<br>       vs.<br><br>**HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION;<br>**AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to BUFFALO PUMPS, INC.;<br>**ALFA LAVAL INC.;**<br>**ARMSTRONG INTERNATIONAL, INC.;**<br>**AURORA PUMP COMPANY**;<br>**BLACKMER PUMP COMPANY**;<br>**BORGWARNER MORSE TEC LLC,** as successor-by- merger to BORG-WARNER CORPORATION;<br>**BW/IP, INC.,** individually and as successor-in-interest to BYRON JACKSON PUMPS;<br>**CARRIER CORPORATION;**<br>**CBS CORPORATION**, | **CASE NO. 4:19-cv-00325-HSG**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES (PERSONAL INJURY, WRONGFUL DEATH AND SURVIVOR ACTION)**<br><br>**JURY TRIAL DEMANDED** |

a Delaware corporation, f/k/a VIACOM, INC.,
successor-by-merger to CBS CORPORATION, a
Pennsylvania corporation, f/k/a
WESTINGHOUSE ELECTRIC
CORPORATION and also as successor-in-
interest to B. F. STURTEVANT COMPANY;
**CLA-VAL CO.;**
**COPES-VULCAN, INC.;**
**DEZURIK, INC.,**
individually and successor-in-interest to COPES-
VULCAN, INC.;
**CRANE CO.;**
**DANA COMPANIES, LLC;**
**FLOWSERVE US, INC.;**
**FRYER-KNOWLES, INC.;**
**GENERAL ELECTRIC COMPANY;**
**GENUINE PARTS COMPANY**,
d/b/a RAYLOC, a/k/a NAPA;
**THE GOODYEAR TIRE & RUBBER**
**COMPANY**;
**GRINNELL LLC,**
d/b/a GRINNELL CORPORATION;
**HENNESSY INDUSTRIES, LLC,**
f/k/a HENNESSY INDUSTRIES, INC.;
**HILL BROTHERS CHEMICAL**
**COMPANY**;
**IMO INDUSTRIES INC.;**
**INGERSOLL-RAND COMPANY;**
**ITT LLC,**
f/k/a ITT CORPORATION, ITT INDUSTRIES
INC., ITT FLUID PRODUCTS CORP.,
HOFFMAN SPECIALTY MFG. CORP., BELL
and GOSSETT COMPANY and ITT
MARLOW;
**M. SLAYEN AND ASSOCIATES, INC.;**
**METALCLAD INSULATION LLC,**
f/k/a METALCLAD INSULATION
CORPORATION, individually and as successor-
in-interest to METALCLAD INSULATION
COMPANY, INC.;
**METROPOLITAN LIFE INSURANCE**
**COMPANY**, a wholly-owned subsidiary of
METLIFE INC.;
**PARKER-HANNIFIN CORPORATION;**
**PNEUMO ABEX, LLC,**
successor-in-interest to ABEX

CORPORATION;
**SB DECKING, INC.**;
**SMOTHERS PARTS INTERNATIONAL, INC.**, d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES;
**STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE;
**THOMAS DEE ENGINEERING CO., INC.**;
**VELAN VALVE CORP.**;
**VIAD CORP**, f/k/a THE DIAL CORPORATION, individually and as successor to GRISCOM-RUSSELL COMPANY;
**VIKING PUMP, INC.**;
**WARREN PUMPS LLC**;
**WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.;
**WESTERN AUTO SUPPLY COMPANY**, a wholly-owned subsidiary of ADVANCE AUTO PARTS INC.;
**THE WILLIAM POWELL COMPANY**; and
**FIRST DOE through SIX-HUNDRED DOE,** inclusive,

           Defendants

      COMES NOW, Plaintiffs AGNES TOY, Individually and as successor-in-interest to the Estate of THOMAS H. TOY, SR., deceased, who brings this this survival action pursuant to section 377.30 of the California Code of Civil Procedure, and come now Plaintiffs AGNES TOY and THOMAS H. TOY, JR. who bring this action for wrongful death pursuant to section 377.60 of the California Code of Civil Procedure, and complain and allege as follows:

## GENERAL ALLEGATIONS

      1.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 600, inclusive, are unknown to Plaintiffs at this time, whom Plaintiffs therefore sue said Defendants by such fictitious names.

When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.     At all times herein mentioned, each of the Defendants, except as otherwise alleged, were the agent, servant, employee and/or joint venture of its Co-Defendants, and each of them, and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Certain defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Decedent THOMAS H. TOY, SR.; and such defendants, as co-conspirators, are liable for the acts, or failures to act, of the other conspiring defendants.

3.     At all times herein mentioned, each of the defendants was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed,

labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants and each of them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk spreading role of each such "alternate entity"; and that each such defendants enjoys the goodwill originally attached to each such "alternate entity".

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| BORGWARNER MORSE TEC LLC | BORG-WARNER CORPORATION |
| CBS CORPORATION, a Delaware corporation | VIACOM, INC.; CBS CORPORATION, a Pennsylvania corporation; WESTINGHOUSE ELECTRIC CORPORATION; and B. F. STURTEVANT COMPANY |
| DEZURIK, INC. | COPES-VULCAN, INC. |
| GENUINE PARTS COMPANY | RAYLOC; and NAPA |
| GRINNELL LLC | GRINNELL CORPORATION |
| HENNESSY INDUSTRIES, LLC | HENNESSY INDUSTRIES, INC. |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC.; and BENDIX CORPORATION |
| ITT LLC | ITT CORPORATION; ITT INDUSTRIES INC.; ITT FLUID PRODUCTS CORP.; HOFFMAN SPECIALTY MFG. CORP.; |

| | BELL AND GOSSETT COMPANY; and ITT MARLOW |
|---|---|
| METALCLAD INSULATION LLC | METALCLAD INSULATION CORPORATION; and METALCLAD INSULATION COMPANY, INC. |
| METROPOLITAN LIFE INSURANCE COMPANY | METLIFE INC. |
| PNEUMO ABEX, LLC | ABEX CORPORATION |
| SMOTHERS PARTS INTERNATIONAL, INC. | SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES |
| STANDARD MOTOR PRODUCTS, INC. | EIS AUTOMOTIVE |
| VIAD CORP | THE DIAL CORPORATION; and GRISCOM-RUSSELL COMPANY |
| WEIR VALVES & CONTROLS USA, INC. | ATWOOD & MORRILL CO., INC. |
| WESTERN AUTO SUPPLY COMPANY | ADVANCE AUTO PARTS INC. |

4.     Plaintiffs are informed and believe, and allege, that at all times herein mentioned defendants, including the FIRST DOE through SIX-HUNDREDTH DOE, inclusive, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and each of them, were and are authorized to do and are doing business in the State of California, that said defendants have regularly conducted business in the County of Alameda, State of California, and that certain of said defendants presently designate and have at pertinent times designated the County of Alameda as their principal place of doing business within the State of California.

5.     Plaintiffs are informed and believe, and allege that TOY H. TOY, SR. was exposed to asbestos during the course of his life in the manner and during the time periods set forth below:

From approximately 1953 to 1962, Decedent THOMAS H. TOY, SR. served in the United States Army.  During and throughout these years, Decedent was trained as a

wheel mechanic and assigned as a mechanic to motor pool repair while stationed in Germany where he worked on all types of vehicles performing maintenance and repairs including brakes and clutches. As a result, Decedent was exposed to asbestos and asbestos-containing products.

Decedent THOMAS H. TOY, SR. was employed as a civil service employee of the U. S. Government in the State of California from approximately 1962 to 1990. During and throughout these years, Decedent worked in the following capacities:

A.     From approximately 1962 to 1974, Decedent worked as a marine machinist aboard ships, submarines and air craft carriers performing activities in ship building and/or ship repair at several locations including but not limited to Hunters Point Naval Shipyard and Mare Island Naval Shipyard.  As a result, Decedent was exposed to asbestos and asbestos-containing products.

B.     From approximately 1974 to 1980, Decedent worked as a maintenance machinist performing activities in building operation, maintenance and repair to HVAC, pumps, valves, condensate in the mechanical room and other equipment at Treasure Island Naval Shipyard. As a result, Decedent was exposed to asbestos and asbestos-containing products.

C.     From approximately 1980 to 1990, Decedent worked as a planner/estimator performing activities of buying materials for projects and visiting on-site locations including but not limited to: Hamilton Air Force Base, Alameda Naval Air Station and the Naval Hospital in Oak Knoll while working at the Navy Public Works Center in San Francisco.  As a result, Decedent was exposed to asbestos and asbestos-containing products.

Also, during various times throughout his life, Decedent THOMAS H. TOY, SR., performed maintenance and repairs, including brakes, clutches, and gaskets on his own vehicles and on his family's vehicles. Decedent worked in non-occupational capacities performing vehicle maintenance and repairs involving asbestos-containing products, including brakes, clutches, and gaskets, throughout the 1960s through 1990s in the State of California. As a result, Decedent was exposed to asbestos and asbestos-containing products.

6. Plaintiffs allege herein that Decedent THOMAS H. TOY, SR. developed malignant mesothelioma as a result of exposure to asbestos from defendants' asbestos dust, fibers and/or particles, asbestos-containing products and/or products designed to be used in association with asbestos products ("Defendants' Products"), including: **HONEYWELL INTERNATIONAL INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION (as a supplier of asbestos-containing Bendix brakes); **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in-interest to BUFFALO PUMPS, INC. (as a supplier of asbestos-containing Buffalo pumps); **ALFA LAVAL INC.** (as a supplier of asbestos-containing DeLaval purifiers); **ARMSTRONG INTERNATIONAL, INC.** (as a supplier of asbestos-containing Armstrong steam traps and strainers); **AURORA PUMP COMPANY** (as a supplier of asbestos-containing Aurora pumps); **BLACKMER PUMP COMPANY** (as a supplier of asbestos-containing Blackmer pumps); **BORGWARNER MORSE TEC LLC,** as successor-by- merger to BORG-WARNER CORPORATION (as a supplier of asbestos-containing BorgWarner clutches); **BW/IP, INC.**, individually and as successor-in-interest to BYRON JACKSON PUMPS (as a supplier of asbestos-containing Byron Jackson pumps); **CARRIER CORPORATION** (as a supplier of

asbestos-containing Carrier air compressors and chillers); **CBS CORPORATION**, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to B. F. STURTEVANT COMPANY (as a supplier of asbestos-containing B. F. Sturtevant forced-draft blowers and turbines, and Westinghouse blowers, emergency generators, ship service generators and turbines); **CLA-VAL CO.** (as a supplier of asbestos-containing CLA-VAL valves); **COPES-VULCAN, INC.** (as a supplier of asbestos-containing Vulcan blowers and valves); **DEZURIK, INC.**, individually and successor-in-interest to COPES-VULCAN, INC. (as a supplier of asbestos-containing Vulcan blowers and valves); **CRANE CO.** (as a supplier of asbestos-containing Crane feed tanks, pumps and valves; Chapman valves; and Cranite gaskets); **DANA COMPANIES, LLC** (as a supplier of asbestos-containing Victor gaskets); **FLOWSERVE US, INC.** (as a supplier of asbestos-containing Edward valves); **FRYER-KNOWLES, INC. (**as a supplier of asbestos-containing decking and flooring products); **GENERAL ELECTRIC COMPANY** (as a supplier of asbestos-containing turbines, ship's service generators and electrical panels); **GENUINE PARTS COMPANY**, d/b/a RAYLOC, a/k/a NAPA (as a supplier of asbestos-containing friction products); **THE GOODYEAR TIRE & RUBBER COMPANY** (as a supplier of asbestos-containing gaskets and packing); **GRINNELL LLC**, d/b/a GRINNELL CORPORATION (as a supplier of asbestos-containing Grinnell boilers, heaters and valves); **HENNESSY INDUSTRIES, LLC**, f/k/a HENNESSY INDUSTRIES, INC. (as a supplier of Ammco Arc grinds and asbestos-containing grinders); **HILL BROTHERS CHEMICAL COMPANY** (as a supplier of asbestos-containing fiber); **IMO INDUSTRIES INC.** (as a supplier of asbestos-containing DeLaval pumps and turbines, and CH Wheeler air ejectors); **INGERSOLL-RAND COMPANY** (as a

supplier of asbestos-containing Ingersoll-Rand compressors and pumps); **ITT LLC**, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW (as a supplier of asbestos-containing Bell and Gossett pumps and valves); **M. SLAYEN AND ASSOCIATES, INC.** (as a contractor of asbestos-containing insulation products); **METALCLAD INSULATION LLC**, f/k/a METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to METALCLAD INSULATION COMPANY, INC. (as a contractor of asbestos-containing insulation products); **METROPOLITAN LIFE INSURANCE COMPANY**, a wholly-owned subsidiary of METLIFE INC. (as a conspiracy defendant); **PARKER-HANNIFIN CORPORATION** (as a supplier of asbestos-containing EIS brakes); **PNEUMO ABEX, LLC**, successor-in-interest to ABEX CORPORATION (as a supplier of asbestos-containing friction products); **SB DECKING, INC.** (as a supplier of asbestos-containing decking products); **SMOTHERS PARTS INTERNATIONAL, INC.**, d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES (as a supplier of asbestos-containing automotive products); **STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE (as a supplier of asbestos-containing EIS brakes); **THOMAS DEE ENGINEERING CO., INC.** (as a contractor for asbestos-containing boilers); **VELAN VALVE CORP.** (as a supplier of asbestos-containing Velan valves and steam traps); **VIAD CORP**, f/k/a THE DIAL CORPORATION, individually and as successor to GRISCOM-RUSSELL COMPANY (as a supplier of asbestos-containing Griscom-Russell distilling plants and fuel oil heaters); **VIKING PUMP, INC.** (as a supplier of asbestos-containing Viking pumps); **WARREN PUMPS LLC** (as a supplier of asbestos-containing Warren pumps); **WEIR VALVES & CONTROLS USA, INC.**, individually and as

successor-in-interest to ATWOOD & MORRILL CO., INC. (as a supplier of asbestos-containing Atwood & Morrill valves); **WESTERN AUTO SUPPLY COMPANY**, a wholly-owned subsidiary of ADVANCE AUTO PARTS INC. (as a supplier of asbestos-containing automotive parts); and **THE WILLIAM POWELL COMPANY** (as a supplier of asbestos-containing Powell valves).

## FIRST CAUSE OF ACTION
## NEGLIGENCE
### [Against All PRODUCT DEFENDANTS]

For a First Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and for a cause of action for negligence (personal injuries) and allege:

7.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

8.     Plaintiffs complaint of defendants **HONEYWELL INTERNATIONAL INC.,** f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to BUFFALO PUMPS, INC.; **ALFA LAVAL INC.**; **ARMSTRONG INTERNATIONAL, INC.**; **AURORA PUMP COMPANY**; **BLACKMER PUMP COMPANY**; **BORGWARNER MORSE TEC LLC,** as successor-by- merger to BORG-WARNER CORPORATION; **BW/IP, INC.,** individually and as successor-in-interest to BYRON JACKSON PUMPS; **CARRIER CORPORATION**; **CBS CORPORATION**, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to B. F. STURTEVANT COMPANY; **CLA-VAL CO.**; **COPES-VULCAN, INC.**; **DEZURIK, INC.,** individually and successor-in-interest to COPES-

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

VULCAN, INC.; **CRANE CO.**; **DANA COMPANIES, LLC**; **FLOWSERVE US, INC.**; **FRYER-KNOWLES, INC.**; **GENERAL ELECTRIC COMPANY**; **GENUINE PARTS COMPANY**, d/b/a RAYLOC, a/k/a NAPA; **THE GOODYEAR TIRE & RUBBER COMPANY**; **GRINNELL LLC**, d/b/a GRINNELL CORPORATION; **HENNESSY INDUSTRIES, LLC**, f/k/a HENNESSY INDUSTRIES, INC.; **HILL BROTHERS CHEMICAL COMPANY**; **IMO INDUSTRIES INC.**; **INGERSOLL-RAND COMPANY**; **ITT LLC**, f/k/a ITT CORPORATION, ITT INDUSTRIES INC., ITT FLUID PRODUCTS CORP., HOFFMAN SPECIALTY MFG. CORP., BELL and GOSSETT COMPANY and ITT MARLOW; **M. SLAYEN AND ASSOCIATES, INC.**; **METALCLAD INSULATION LLC**, f/k/a METALCLAD INSULATION CORPORATION, individually and as successor-in-interest to METALCLAD INSULATION COMPANY, INC.; **PARKER-HANNIFIN CORPORATION**; **PNEUMO ABEX, LLC**, successor-in-interest to ABEX CORPORATION; **SB DECKING, INC.**; **SMOTHERS PARTS INTERNATIONAL, INC.**, d/b/a SMOTHERS AUTO PARTS & PERFORMANCE ACCESSORIES; **STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE; **THOMAS DEE ENGINEERING CO., INC.**; **VELAN VALVE CORP.**; **VIAD CORP**, f/k/a THE DIAL CORPORATION, individually and as successor to GRISCOM-RUSSELL COMPANY; **VIKING PUMP, INC.**; **WARREN PUMPS LLC**; **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.; **WESTERN AUTO SUPPLY COMPANY**, a wholly-owned subsidiary of ADVANCE AUTO PARTS INC.; **THE WILLIAM POWELL COMPANY**; and FIRST DOE through ONE-HUNDREDTH DOE (where the FIFTH-FIRST DOE through ONE-HUNDREDTH DOE are the officers, directors principals and managers of FIRST DOE through FIFTIETH DOE,

inclusive, whom directed and ratified the conduct, acts and omissions of the same) (hereinafter and throughout, collectively, "PRODUCT DEFENDANTS").

9. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, that PRODUCT DEFENDANTS, and each of them, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, including PRODUCT DEFENDANTS, and each of them, were and are authorized to do and are doing business in the State of California, that said defendants have regularly conducted business in the County of Alameda, State of California, and that certain of said defendants presently designate and have at pertinent times have designated the County of Alameda as their principal place of doing business within the State of California.

10. At all times herein mentioned, each of the defendants was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor,

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos. The PRODUCT DEFENDANTS, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, including PRODUCT DEFENDANTS, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, including PRODUCT DEFENDANTS, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk spreading role of each such "alternate entity"; and that each such enjoys the goodwill originally attached to each such "alternate entity".

11.     At all times herein mentioned, defendants DOE 150 through DOE 200 were Officers and Directors of named defendants herein as DOE 1 through DOE 149.

12.     At all times herein mentioned, defendants, including PRODUCT DEFENDANTS, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, supplying, inspecting, servicing, installing, contracting for installation, repairing, removing, demolishing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos.

13.    At all times herein mentioned, defendants, including PRODUCT DEFENDANTS, and each of them, singularly and jointly, negligently and unreasonably researched, manufactured, fabricated, designed, tested or failed to test, warned or failed to warn, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, supplied, inspected, serviced, installed, contracted for installation, contracting for fabrication, repaired, removed and/or demolished, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain substance, the generic name of which is asbestos, talc contaminated with asbestos and asbestiform minerals and other products containing asbestos, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent THOMAS H. TOY, SR. herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substances unsafe and dangerous for use by "exposed persons".

14.    Defendants, and each of them, knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been associated with terminal and incurable diseases which have caused and continue to cause death. Defendants, including PRODUCT DEFENDANTS, and each of them, had a non-delegable and continuing post-sale duty to exercise due care in the pursuance of the activities set forth above, yet defendants, including PRODUCT DEFNDANTS, and each of them, breached said duty of due care.

15.    Decedent THOMAS H. TOY, SR. in a manner that was reasonably foreseeable to defendants, including PRODUCT DEFENDANTS, used, handled, disturbed, or was a bystander to the use, handling and disturbance of, or was otherwise exposed to, asbestos and asbestos-containing products for which defendants, including PRODUCT DEFENDANTS,

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

were, are and remain liable and legally responsible., including, but not limited to, through PRODUCT DEFENDANTS' design, manufacture, use, supply, distribution, specification, sale or other use of the same.

16. Decedent THOMAS H. TOY, SR. was exposed to asbestos during the course of his life in the manner and during the time periods set out in Paragraph 5, *supra*. Decedent THOMAS H. TOY, SR., in a manner that was reasonably foreseeable, used, handled, disturbed, or was a bystander to the use, handling and disturbance of, or otherwise was exposed to asbestos and asbestos-containing products for which defendants, including PRODUCT DEFENDANTS, were, are and remain liable and legally responsible. Decedent's exposure to these defendants', including PRODUCT DEFNDANTS', asbestos, talc contaminated with asbestos and asbestiform minerals and asbestos-containing products which occurred at various locations and times, including within the State of California and County of Alameda.

17. Decedent THOMAS H. TOY, SR.'s disability within the meaning of CCP §340.2 either has yet to occur or occurred less than a year before the filing of this complaint.

18. As a direct and proximate result of the conduct of the defendants, including PRODUCT DEFENDANTS and each of them, as aforesaid, Decedent THOMAS H. TOY, SR.'s exposure to defendants' asbestos fibers, defendants' asbestos-containing products and asbestos-containing materials required or recommended to be used on or with defendants' products caused severe and permanent injury to the plaintiff, including but not limited to breathing difficulties, mesothelioma and/or other asbestos-related lung disease/damage, and ultimately death.

19. Plaintiffs are informed and believe, and thereon allege, that the injuries and harm from asbestos hereinabove described from which Decedent THOMAS H. TOY, SR. suffers are and have been caused by inhalation of asbestos fibers without perceptible trauma, and that said

disease results from Decedent THOMAS H. TOY, SR.'s exposure to asbestos and asbestos-containing products over a period of time.

20.     Decedent THOMAS H. TOY, SR. suffers from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease. The asbestos fibers and asbestos-containing products of each named defendant and each DOE defendant, including, but not limited to, PRODUCT DEFENDANTS were a substantial factor in contributing to, and in causing, injury to Decedent as set forth herein.

21.     Decedent THOMAS H. TOY, SR. further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos containing products manufactured, fabricated, inadequately researched, designed, inadequately tested, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them and that plaintiff cannot identify precisely which asbestos or asbestos containing product(s) caused the injuries complained of herein, rather that they each and all during the course of Decedent's work and use caused Decedent's asbestos exposure which contributed to increase the risk of his developing his asbestos illness described hereinabove, and that they did in fact do so.

22.     And as a further direct and legal result it was necessary for Decedent THOMAS H. TOY, SR. to retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose, treat, and provide palliative care for him from when he first experienced symptoms related to his asbestos-caused conditions until the end of his life.

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

Plaintiffs do not yet know the full extent of treatment rendered to Decedent THOMAS H. TOY, SR. nor the reasonable value of medical services rendered to Decedent THOMAS H. TOY, SR. herein and therefore requests leave to amend this complaint when that sum is determined.

23. As a direct and legal result of the conduct of the defendants, and each of them, and of Decedent THOMAS H. TOY, SR.'s diagnosis of mesothelioma, Decedent was unable to follow his normal or any gainful occupation for certain periods of time preceding his diagnosis. Decedent incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

24. As a further direct and legal result of the conduct of the defendants, and each of them, plaintiff AGNES TOY sustained the loss of Decedent THOMAS H. TOY, SR.'s love, companionship, comfort, care, assistance, protection, affection, society, support, teaching and tutelage, all to plaintiffs' damage in an amount of exceeding $50,000, in addition to special damages herein alleged.

25. The asbestos and asbestos-containing products of PRODUCT DEFENDANTS, and each of them, were a substantial factor in contributing to, and in causing, injury to Decedent THOMAS H. TOY, SR., as set forth herein.

26. On or before 1930, and thereafter, said defendants, including PRODUCT DEFENDANTS, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with asbestos and asbestos containing products, had no knowledge or information indicating that asbestos or asbestos containing products could cause injury, and said defendants, including PRODUCT

18

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

DEFENDANTS, their "alternate entities", and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

27.     With said knowledge, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, opted to research, manufacture, mine, ship, fabricate, design, label, assemble, distribute, lease, buy, offer for sale, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos  containing products without attempting to protect "exposed  persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos containing products, defendants, their "alternate entities", and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

28.     The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was motivated by the financial interest of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and

each of them, in the continuing, uninterrupted research, manufacture, fabrication, design, labeling, assembly, design, distribution, lease, purchase, sale, offer for sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos containing products. In pursuance of said financial motivation, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and were in fact consciously willing and intended to permit asbestos and asbestos containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent THOMAS H. TOY, SR.

29.     In researching, mining, shipping, manufacturing, fabricating, designing, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos containing products, defendants, their "alternate entities", and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos containing products, in that said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos containing products, including, but not limited to, mesothelioma, cancer and other progressive lung disease (including, but not limited to, asbestosis, scarring, plaques and/or calcifications). Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, and which knowledge was obtained by said defendants, including

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

PRODUCT DEFENDANTS, their "alternate entities", and each of them on or before l930, and thereafter.

30.     Decedent THOMAS H. TOY, SR. relied upon defendants', their "alternate entities" and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos containing products.  As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

31.     Defendants, their "alternate entities, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

32.     Defendants, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

33.     The above referenced conduct of said defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, was and is willful, despicable, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
## [Against All PRODUCT DEFENDANTS]

For a Second Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and allege:

34.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

35.     The PRODUCT DEFENDANTS, and each of them, marketed, sold, supplied, delivered or otherwise distributed to Decedent THOMAS H. TOY, SR., or to another purchaser or user who subsequently sold, supplied, delivered or otherwise distributed to plaintiff, or to others working in close proximity to Decedent, the above-described asbestos and asbestos-containing products to which Decedent was exposed.

36.     The PRODUCT DEFENDANTS, and each of them, knew the intended purpose of the asbestos and asbestos-containing products prior to marketing said products and knew or had reason to know that exposed persons, including Decedent THOMAS H. TOY, SR., would be using asbestos containing products, during which dangerous levels of asbestos fiber would be released during the process of applying, installing and removing these products.

37.     At all relevant times herein, the PRODUCT DEFENDANTS, their "alternate entities", and each of them impliedly warranted their asbestos and asbestos containing products to be safe for their intended and foreseeable uses. PRODUCT DEFENDANTS, and each of them, impliedly warranted that their asbestos and asbestos-containing products were of merchantable quality and safe, fit and proper for the uses which PRODUCT DEFENDANTS knew or intended were to be made of them at the time of marketing them.

38.     At all relevant times herein, the PRODUCT DEFENDANTS, and each of them,

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose and use.

39.     At all relevant times herein, "Exposed persons," including Decedent THOMAS H. TOY, SR. , did not know of the substantial danger and unreasonable risk of bodily harm as a result of using said asbestos and asbestos-containing products.  Said risk and dangers were not readily recognizable by "exposed persons," including Decedent.

40.     Decedent THOMAS H. TOY, SR. reasonably relied on the skill, knowledge and judgment of PRODUCT DEFENDANTS, and each of them, in furnishing and supplying the asbestos-containing products described hereinabove.

41.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by PRODUCT DEFENDANTS, and each of them, in that said products had dangerous propensities when put to the use for which each of these PRODUCT DEFENDANTS knew or intended they were marketed or sold, and would cause severe injury to users or bystanders, such as Decedent THOMAS H. TOY, SR.  PRODUCT DEFENDANTS, their "alternate entities," and each of them, knew, or should have known, that the aforementioned asbestos and products containing asbestos would be used for insulation and other purposes, would require sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation which would result in the release of airborne asbestos fibers, and that through such foreseeable use "exposed persons" would use or be in proximity to and exposed to said asbestos fibers.

42.     The products were neither safe for their intended use nor of merchantable quality or fit for use as warranted by PRODUCT DEFENDANTS, and each of them, in that said products

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

had dangerous propensities when put to the use for which each of these PRODUCT DEFENDANTS knew or intended they were marketed or sold and would cause severe injury to users or bystanders, such as Decedent THOMAS H. TOY, SR.

43. The PRODUCT DEFENDANTS, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, which would advise Decedent THOMAS H. TOY, SR. and others working in close proximity to Decedent that dangerous levels of asbestos fiber would be released during the process of applying, installing, removing and otherwise manipulating said products, and working around others doing such tasks.

44. As a direct and proximate result of the breach of implied warranty of good and merchantable quality and/or fitness for the particular intended use, Decedent THOMAS H. TOY, SR. developed mesothelioma, cancer and progressive lung disease as previously set forth. Plaintiffs were damaged as fully set forth herein, including those special damages herein alleged.

45. The failure of the asbestos and asbestos-containing products to be suitable for the particular purpose was a substantial factor in causing the injuries to Decedent THOMAS H. TOY, SR., as hereinabove described.

WHEREFORE, plaintiffs pray judgment against defendants, including PRODUCT DEFENDANTS, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
### STRICT LIABILITY
### [Against All PRODUCT DEFENDANTS]

For a Third Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS, and each of them, and allege:

46.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

47.     At all relevant times herein, defendants, including PRODUCT DEFENDANTS, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, tested or failed to test, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos, including those described in the preceding Paragraphs herein.

48.     At all relevant times herein, the asbestos and asbestos-containing products which were mined, milled, manufactured, tested, developed, processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by PRODUCT DEFENDANTS, and each of them, were defective due to the design, manufacture, sufficiency of or lack of warning, and/or failure to meet ordinary consumer expectations of safety when used in an intended or reasonably foreseeable manner.  The design, manufacture and/or said defendants' failure to warn or give adequate warnings of the risk of developing an asbestos-related disease and risk of death from an asbestos-related disease resulting from use of the product, rendered the product unsafe for its intended or reasonably

foreseeable use.

49. Said asbestos and products containing asbestos were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of defendants, their alternate entities, and each of them.

50. Defendants, their "alternate entities", and each of them, knew and intended that the above referenced asbestos and other products containing asbestos would be used by the purchaser or user without inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

51. Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be used for insulation purposes, would require sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation which would result in the release of airborne asbestos fibers, and that through such foreseeable use "exposed persons" would use or be in proximity to and exposed to said asbestos fibers.

A. PRODUCT DEFENDANTS, and each of them, knew that PRODUCT DEFENDANTS' asbestos-containing products would be used by Decedent THOMAS H. TOY, SR. and anyone similarly situated in an industrial and construction setting without inspection for defects.

B. PRODUCT DEFENDANTS, and each of them, knew that, upon inhalation of asbestos from defendant's asbestos-containing products, such persons would, in time, develop irreversible conditions of pneumoconiosis, asbestosis or cancer, or all.

C.     At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, defendants and each of them knew or should have known of the risks and hazards associated with the use and/or exposure of its products.

D.     At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, PRODUCT DEFENDANTS, and each of them failed to warn or provided inadequate warnings to persons who used or would be exposed to its defective asbestos-containing products, including Decedent THOMAS H. TOY, SR., of the dangers and hazards associated with its products.

E.     At the time PRODUCT DEFENDANTS, and each of them, placed such asbestos-containing products in to the stream of commerce, and subsequent thereto, PRODUCT DEFENDANTS, and each of them failed to provide instructions or provided inadequate instructions to persons who used its defective asbestos-containing products, or who would be exposed to said products, including Decedent THOMAS H. TOY, SR., of the dangers and hazards associated with its products.

F.     PRODUCT DEFENDANTS, and each of them, prior to and at the time of placing the aforementioned products in to the stream of commerce, including but not limited to supplying said products to Decedent THOMAS H. TOY, SR.'s employer or to others who in turn sold to Decedent's employers, and to other persons relevant herein, knew that the asbestos which Decedent and others around him were exposed to was dangerous. The PRODUCT DEFENDANTS, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products and failed to place

a sufficient warning on the said product or package thereof regarding said dangerous nature, despite knowing that said products would be used by Decedent and others around him who had no knowledge of the dangerous and hazardous nature thereof.

     G.    PRODUCT DEFENDANTS, their "alternate entities", and each of them, further failed to adequately warn of the risks to which exposed persons, including Decedent THOMAS H. TOY, SR. and others similarly situated, were exposed.

52.    The asbestos-containing products of the PRODUCT DEFENDANTS, and each of them, were defective in that:

     A.    The products failed to perform as safely as an ordinary consumer would expect in their intended or reasonably foreseeable use or manner of operation, or;

     B.    The products had inherent risks of danger that outweighed their benefits; alternate and safer substitute products existed and the state-of-the-art required their use given the seriousness of the potential danger, likelihood of its occurrence, feasibility, cost, and adverse consequences to the product and to the consumer of a safer alternative design.

     C.    *Failure to Warn*: PRODUCT DEFENDANTS, and each of them knew or reasonably should have known of the dangerous propensities of their products but nonetheless distributed and marketed their products with inadequate warning of its dangers.

     D.    Each of defendants' products reached Decedent THOMAS H. TOY, SR. without substantial change in its condition.

53.    The aforementioned products were used by Decedent THOMAS H. TOY, SR. and those in close proximity to Decedent in a foreseeable manner, and in the manner for which

they were intended. "Exposed persons", including Decedent THOMAS H. TOY, SR., did not know of the substantial danger of using said asbestos and asbestos-containing products. Said dangers were not readily recognizable by "exposed persons".

54. Defendants' products were used in a manner reasonably foreseeable by defendants, which defendants intended or knew they would be used, or for which they marketed them or knew they were marketed to be used.

55. At all times mentioned herein, Decedent THOMAS H. TOY, SR. was unaware of the dangerous nature of the aforementioned products.

56. The asbestos and asbestos-containing products of PRODUCT DEFENDANTS, and each of them, did, in fact, cause personal injuries, including lung cancer and related lung disease to "exposed persons", including Decedent THOMAS H. TOY, SR., while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use and exposing such exposed persons, including Decedent THOMAS H. TOY, SR., to asbestos.

57. The asbestos and asbestos-containing products of each of the PRODUCT DEFENDANTS was a substantial factor in contributing to, and in causing, injury to Decedent THOMAS H. TOY, SR. as set forth herein. As a direct and legal result of the conduct of PRODUCT DEFENDANTS, and each of them, Decedent developed an asbestos-related disease, mesothelioma, and related conditions and disabilities. Plaintiffs have incurred damages in excess of $50,000 in addition to the special damages alleged herein.

58. The conduct of the PRODUCT DEFENDANTS, and each of them, was motivated by their financial interests. In this financial pursuit, PRODUCT DEFENDANTS consciously disregarded the safety of users, and persons exposed to their products, and were consciously willing to permit their products and premises to injure workers and others, including

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

Decedent THOMAS H. TOY, SR. in order to maximize profits. Said defendants consciously disregarded the well-publicized risks of asbestos exposure because to have kept consumers and end users like Decedent safe would have required said PRODUCT DEFENDANTS to make less money or limit distribution of their products.

59. The conduct of PRODUCT DEFENDANTS, and each of them, as described herein was and is willful, malicious, outrageous, and in conscious disregard and indifference to the safety and health of workers and others exposed to asbestos, including Decedent THOMAS H. TOY, SR., and therefore Plaintiffs are entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE – CLUTCH & BRAKE ASSEMBLIES, MECHANISMS & COMPONENTS

### [Against All EQUIPMENT DEFENDANTS]

For a Fourth Cause of Action, Plaintiffs complain of EQUIPMENT DEFENDANTS, and each of them, and allege:

60. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

61. Plaintiffs complaint of defendants **HONEYWELL INTERNATIONAL INC.,** f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; **BORGWARNER MORSE TEC LLC,** as successor-by- merger to BORG-WARNER CORPORATION; **PARKER-HANNIFIN CORPORATION**; **PNEUMO ABEX, LLC**, successor-in-interest to ABEX CORPORATION; **STANDARD MOTOR PRODUCTS, INC.**, individually and as successor-in-interest to EIS AUTOMOTIVE; and THREE-HUNDRED-FIRST DOE (301) through FOUR-HUNDREDTH DOE (400) (where the THREE-HUNDRED-FIFTY-FIRST DOE through FOUR-HUNDREDTH DOE are the

officers, directors principals and managers of THREE-HUNDRED-FIRST DOE through THREE-HUNDRED-FIFTIETH DOE, inclusive, whom directed and ratified the conduct, acts and omissions of the same) (hereinafter and throughout, collectively, "EQUIPMENT DEFENDANTS").

62.     At all times herein mentioned, each of the defendants, including EQUIPMENT DEFENDANTS, was the successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, alter ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos.  Said entities shall hereinafter collectively be called "alternate entities".  Each of the herein named defendants are liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor, predecessor-in-business, predecessor-in-product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled or failed to label, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing asbestos.  The EQUIPMENT DEFENDANTS, and each of them, are liable for the acts of each and every "alternate entity", and each of them,

in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, including EQUIPMENT DEFENDANTS, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk spreading role of each such "alternate entity"; and that each such enjoys the goodwill originally attached to each such "alternate entity".

63.     At all times herein mentioned, defendants DOE 350 through DOE 400 were Officers and Directors of named defendants herein as DOE 1 through DOE 249.

64.     EQUIPMENT DEFENDANTS manufactured or supplied defective clutch components and brake assemblies or mechanisms which were incorporated into various makes and models of automobiles, trucks, busses and other vehicles designed, manufactured, sold, supplied, marketed, distributed, specified and otherwise placed into the stream of commerce by EQUIPMENT DEFENDANTS.  Said clutch components and brake assemblies or mechanisms were negligently designed, manufactured, sold, supplied, marketed, specified and placed into the stream of commerce in that:

     A.     The design of said clutch and brake assemblies and mechanisms incorporated the use of asbestos-containing clutch facings/plates and brake linings;

     B.     By the normal, foreseeable, intended and known operation of these EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles and the necessary and integral clutch and brake assemblies and mechanisms thereof, the asbestos clutch and brake linings are ground, worn, pulverized, deteriorated, abraded, and otherwise disturbed during the regular and ordinary use of EQUIPMENT

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

DEFENDANTS' automobiles, trucks, busses and other vehicles, thereby creating friable and respirable asbestos-laden dust, debris, fiber and particulate which was either trapped within the clutch and brake assemblies/mechanisms/enclosures of these automobiles, trucks, busses and other vehicles, and/or released directly into the enclosed cabs and control boxes of these EQUIPMENT DEFENDANTS' cranes, draw works and lifting mechanisms, wherein the operator of said cranes, draw works and lifting mechanisms sits;

C.     The design of said EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles , including the clutch and brake assemblies/mechanisms thereof,  and the continuous degeneration and destruction by the normal, intended, foreseeable, and known operation of the same, unavoidably required as a part of the normal operation, use and maintenance of said automobiles, trucks, busses and other vehicles  that the asbestos clutch facings/components and brake linings therein needed to be and were removed and replaced;

D.     Said EQUIPMENT DEFENDANTS effectively required, and often designated and specified, the use of asbestos-containing clutch facings/components and brake linings throughout the time period of at least 1940-1985, particularly given the absence – known to the EQUIPMENT DEFENDANTS - of non-asbestos alternatives available on the market; nonetheless, EQUIPMENT DEFENDANTS failed to alter or redesign their automobiles, trucks, busses and other vehicles , including the clutch and brake assemblies/mechanisms thereof,  to avoid the necessary replacement of those internal asbestos-containing clutch and brake friction components;

E.     During the normal and necessary maintenance, inspection, repair and

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

overhaul of EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles and their clutch and brake assemblies/mechanisms thereof, asbestos-containing clutch components and brake linings were necessarily inspected, disturbed, removed, replaced and reinstalled, during which work asbestos-containing dust unavoidably was encountered, generated and released by EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles because of the design of the clutch and brake assemblies and mechanisms thereof;

F. EQUIPMENT DEFENDANTS knew or should have known that this asbestos-containing dust would be generated, created, released and encountered during the regular use and maintenance of the clutch and brake assemblies and mechanisms of their automobiles, trucks, busses and other vehicles and linings, and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust, including bystanders to such work;

G. The EQUIPMENT DEFENDANTS, and each of them, failed to warn and/or properly instruct users, consumers, or others, including bystanders to that work, of the asbestos-containing dust hazard which existed at the time of regular inspection, maintenance, repair and replacement of its automobiles, trucks, busses and other vehicles' clutch and brake assembly asbestos clutch and brake facings and linings. Such failure includes, but is not limited to:

(1) Failure to place prominent and adequate warnings or instructions in and on the clutch and brake assemblies and mechanisms, including any covers, panels, enclosures, assemblies, shoes, pads and drums thereof;

(2) Failure to place any or adequate warnings or instructions in the owners', technical and service manuals accompanying or provided for said automobiles, trucks, busses and other vehicles; and

(3) Failure to provide any or adequate information regarding the asbestos hazards associated with the regular use and maintenance of the automobiles, trucks, busses and other vehicles and its integral clutch and brake assemblies and mechanisms thereof.

65. EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles, including their integral clutch and brake assemblies and mechanisms thereof, as designed, manufactured, sold, supplied, marketed and placed into the stream of commerce by defendants failed to perform as safely as the ordinary consumer would expect, even though these products performed as designed.

66. EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof, both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

67. The dangers inherent in EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles' use and design, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof, were unknown and unforeseeable to Decedent and others around him performing this same work.

68. Decedent THOMAS H. TOY, SR. thereby was exposed to asbestos-containing dust, debris, fiber and particulate by EQUIPMENT DEFENDANTS, which was created,

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

generated and released by the normal, foreseeable, intended, specified and known use of EQUIPMENT DEFENDANTS' automobiles, trucks, busses and other vehicles, including their integral clutch and brake assemblies and mechanisms and asbestos-containing necessary components thereof , which plaintiffs contend caused THOMAS H. TOY SR.'s mesothelioma and/or other asbestos-related lung disease/damage.

69. EQUIPMENT DEFENDANTS' negligence and defective products as described in this cause of action were a direct cause of Decedent THOMAS H. TOY SR.'s injuries, and the injuries and damages thereby sustained by plaintiffs as a result, alleged herein.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### STRICT LIABILITY – CLUTCH & BRAKE ASSEMBLIES, MECHANISMS & COMPONENTS

### [Against All EQUIPMENT DEFENDANTS]

For a Fifth Cause of Action, Plaintiffs complain of EQUIPMENT DEFENDANTS, and each of them, and allege:

70. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

71. EQUIPMENT DEFENDANTS' defective products as described in this cause of action did not perform as safely as an ordinary consumer would have expected at the time of Decedent's use.

72. EQUIPMENT DEFENDANTS' defective products as described in this cause of action were used in a manner foreseeable by defendants.

73. The gravity of the potential harm resulting from the use of EQUIPMENT

DEFENDANTS' defective products as described in this cause of action, and the likelihood such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm, including asbestos-related disease.

74. EQUIPMENT DEFENDANTS' conduct and defective products as described in this cause of action were a direct cause of Decedent THOMAS H. TOY, SR.'s injuries, and the injuries and damages thereby sustained by plaintiffs.

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### FRAUD & CONCEALMENT

For a Sixth Cause of Action, Plaintiffs complain of PRODUCT DEFENDANTS and EQUIPMENT DEFENDANTS, and each of them, and allege:

75. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

76. Plaintiffs complain of all named defendants, identified above, as well as FOUR-HUNDRED-FIRST DOE through FIVE-HUNDREDTH DOE (where FOUR-HUNDRED-FIFTY-FIRST DOE through FIVE-HUNDREDTH DOE were the officers, directors, principals and managers of, whom directed and ratified the acts of, FOUR-HUNDRED-FIRST through FOUR-HUNDRED-FIFTIETH DOES, inclusive) (hereinafter, collectively, and throughout, "CONSPIRACY/FRAUD DEFENDANTS").

77. At all times pertinent hereto, the defendants, and each of them, owed Decedent THOMAS H. TOY, SR. a duty, as provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. In

violation of that duty, the defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1710, and more specifically were suggestions of fact that were not true and which the defendants did not believe to be true, assertions of fact that which was not true, which the defendants had no reasonable ground for believing it to be true, and the suppression of facts when a duty existed to disclose it, all as more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned code sections.

78. Since 1924, the defendants, and each of them, have known and have possessed the true facts consisting of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the Decedent THOMAS H. TOY, SR., and others in Decedent's position working in close proximity with such materials and have known of the dangerous propensities of other of the aforementioned materials and products prior to that time and with intent to deceive Decedent, and others in his position and with intent that he and such others should be and remain ignorant of such facts and with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages did do the following acts:

A. Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products as to the hazards of such materials and products to the health and safety of Decedent THOMAS H. TOY, SR. and others in Decedent's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein,

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

when the knowledge of such hazards was existing and known and readily available to defendants, and each of them since 1924. By not labeling such materials as to their said hazards, defendants, and each of them, caused to be suggested as a fact to Decedent and Decedent's employer that it was safe for Decedent to work in close proximity to such materials when in fact it was not true, and defendants did not believe it to be true;

B. Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent THOMAS H. TOY, SR. and the general public concerning the dangerous nature of the aforementioned materials to workers by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants were bound to disclose such information;

C. Defendants, and each of them, sold the aforementioned products and materials to Decedent THOMAS H. TOY, SR's. employer and others without advising such employers and others of the dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby, defendants caused to be positively asserted to Decedent's employer of that which was not true and which defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said defendants, and each of them, of that which was and is not true, to wit, that it was safe for Decedent to work in close proximity to such materials;

D. Defendants, and each of them, suppressed from everyone, including

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

Decedent THOMAS H. TOY, SR. and Decedent's employer, and continue to suppress, medical and scientific data and knowledge of the accurate results of studies including, but not limited to, suppressing information contained in the unpublished Lanza report by participating in the influencing of A.J. Lanza to change his report, which altered version was published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were bound to disclose it unaltered, and by causing Asbestos Magazine, a widely disseminated trade journal, to omit any mention of the dangers of inhaling asbestos dust, thereby lessening the probability of notice of danger to those exposed to asbestos, and thereby caused Decedent to be and remain ignorant thereof;

E.     Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of defendants, and each of them, thereby misleading Decedent THOMAS H. TOY, SR. and Decedent's employer to their prejudice through the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and (ii) the suppression of such information from 1946 to a date unknown to Decedent at this time;

F.     Commencing in 1930 with the study of mine and mill workers at the Thetford asbestos mined in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

possessed medical and scientific information of the connections between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950 the defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein. Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead Decedent THOMAS H. TOY, SR. and Decedent's employer and which did mislead them for want of communication of true facts which consisted of the afore described medical and scientific data and other knowledge by not giving Decedent or Decedent's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

G.     Failed to warn Decedent THOMAS H. TOY, SR. and Decedent's employer of the nature of said materials, to wit: dangerous when breathed, causing pathological effects without noticeable trauma, when possessed with knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it;

H.     Failed to provide Decedent THOMAS H. TOY, SR. with information concerning adequate protective masks and devices for use with and application and installation of the products of the defendants, and each of them, when they knew that such protective measures were necessary, when they were under a duty to disclose such information, and if not advised as to use would result in injury to the Decedent and others

41

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

applying and installing such materials;

I.     Concealed from Decedent THOMAS H. TOY, SR. the true nature of the industrial exposure of Decedent, the fact that they and each of them, knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time develop irreversible conditions of either pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be in not good health, the fact that he had in fact been exposed to harmful materials and the fact that the materials to which he was exposed would cause pathological effects without noticeable trauma, when under a duty to and bound to disclosure it;

J.     Failed to provide information to the public at large and buyers, users and physicians employed by Decedent THOMAS H. TOY, SR. and Decedent's employer for the purpose of conducting physical examinations of Decedent and others working in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat workers coming into contact with asbestos, in that the materials to which Decedent had been exposed would cause pathological effects without noticeable trauma, when under a duty to supply such information and such failure is likely to mislead for want of communication of such facts; and

K.     Defendants, and each of them, affirmatively misrepresented that asbestos-containing products were safe to use and handle, when they knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

79.     Each of the foregoing acts, suggestions, assertions and forbearances to act when a duty to existed to act, the said defendants, and each of them, having such knowledge, knowing

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

the Decedent THOMAS H. TOY, SR. did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Decedent to work in a dangerous environment and to cause Decedent to remain unaware of the true facts, all in violation of Section 1710 of the Civil Code of the State of California.

80.     Decedent THOMAS H. TOY, SR. relied upon the said acts, suggestions, assertions and forbearances; had Decedent known the true facts, he would not have continued to work in the said environment.

81.     By reason of the aforesaid premises, Decedent THOMAS H. TOY, SR. has been damaged in his health, strength and activity in addition to special damages hereinabove alleged.

82.     Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the defendants, and each of them, and Decedent THOMAS H. TOY, SR. is entitled to exemplary and punitive damages.  The foregoing conduct of the defendants, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of Decedent herein, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to Decedent's employers or to those entities that installed and/or handled the asbestos products to which Decedent was exposed, knew  that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled.  In addition to the unlawful conduct described above, the defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as Decedent,

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

83. Decedent THOMAS H. TOY, SR. had no knowledge that the foregoing acts were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### CONSPIRACY TO DEFRAUD AND FAILURE TO WARN

For a Seventh Cause of Action, Plaintiffs complain of CONSPIRACY/FRAUD DEFENDANTS, and each of them, and allege:

84. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

85. At all times mentioned, the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon Decedent THOMAS H. TOY, SR. the acts complained of as set forth in the First through Seventh Causes of Action as incorporated herein.

86. Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, did the acts and things herein alleged in Paragraph 93 of the Eighth Cause of Action, *supra*, incorporated by reference herein, in furtherance of the conspiracy and agreement as herein alleged and did further conspire to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them.

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

87.     Each of the said acts and forbearances to act were caused by false, fraudulent and malicious motives of the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, and Decedent THOMAS H. TOY, SR. is entitled to exemplary and punitive damages.   The foregoing conduct of the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, was done wantonly, willfully, oppressively and in conscious disregard of the safety of Decedent herein, in that the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, prior to and at the time of the sale of the aforementioned products to Decedent's employers or to those entities that installed and/or handled the asbestos products to which Decedent was exposed, knew that the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled.  In addition to the unlawful conduct described above, the Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as Decedent, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

88.     By reason of the aforesaid acts of Defendants, including CONSPIRACY/FRAUD DEFENDANTS, and each of them, Decedent THOMAS H. TOY, SR. has suffered damages to his health, strength and activity.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### WRONGFUL DEATH

For an Eighth Cause of Action, Plaintiffs complain of all defendants, and each of them, and allege:

89.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, each and every allegation in the preceding paragraphs herein.

90.     At the time that Decedent THOMAS H. TOY, SR. sustained injuries and later died, as more fully alleged in the First through Seven Causes of Action, and at all times thereafter, Plaintiff AGNES TOY was the wife of Decedent and Plaintiff THOMAS H. TOY, JR. was the son of Decedent THOMAS H. TOY, SR.

91.     As a direct and proximate result of defendants, and each of them, and of Decedent's diagnosis of and later death from mesothelioma, Plaintiffs will be deprived of the love, care, affection, comfort, moral support, protection, companionship, guidance, services and support of Decedent THOMAS H. TOY, SR., and have thereby sustained and will continue to sustain damages in an amount in excess of $50,000.00 in additional to special damages herein alleged.

92.     As a further direct and proximate result of the acts and omissions of defendants, each one of them, and the death of Decedent, Plaintiffs have incurred medical expenses, funeral expenses, as well as other expenses, in an amount in excess of $50,000.00 in additional to special damages herein alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

For a Ninth Cause of Action, Plaintiff AGNES TOY complains of all defendants, and each of them, and alleges:

93. Plaintiff AGNES TOY re-alleges and incorporates herein by reference, as though fully set forth herein, each of the preceding paragraphs.

94. Decedent THOMAS H. TOY, SR. and Plaintiff AGNES TOY were married, and at all times relevant to this action and up to Decedent's death, were husband and wife and were so at the time of Decedent THOMAS H. TOY, SR.'s injuries.

95. Prior to Decedent THOMAS H. TOY, SR.'s injuries and subsequent death as alleged, he was able to and did perform duties as a spouse. Subsequent to the injuries, and as a proximate result thereof, Decedent THOMAS H. TOY, SR. had been unable to perform the necessary duties as a spouse, and the work and services usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, services and duties in the future. As a proximate result thereof, AGNES TOY has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages in an amount presently unknown but which will be proved at the time of trial.

96. As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to Decedent THOMAS H. TOY, SR. as set forth in this complaint, Plaintiff AGNES TOY has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## TENTH CAUSE OF ACTION

### SURVIVAL ACTION

For a Tenth Cause of Action, Plaintiff AGNES TOY, Personal Representative of the Estate of THOMAS H. TOY, SR., deceased, complains of the defendants, and each of them, and alleges as follows:

97.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, each of the preceding paragraphs.

98.     Plaintiff, AGNES TOY, is the spouse of decedent, THOMAS H. TOY, SR. Plaintiff AGNES TOY, individually and as Personal Representative of the Estate of THOMAS H. TOY, SR., deceased, and brings this survivorship action and as allowed under Code of Civil Procedure, §§ 377.11, 377.20 and 377.30.

99.     As a direct and proximate result of the conduct of the defendants, and each of them, as herein alleged, THOMAS H. TOY, SR. suffered severe and permanent injury, including, but not limited to mesothelioma, and other asbestos-related lung disease/damage, from which he died.

100.     As a proximate result of the conduct of the defendants, and each of them, Decedent was required to, and did, employ physicians and surgeons to examine, treat and care for him and did incur medical and incidental expenses in a sum to be subsequently determined.

101.     Prior to the death of Decedent, the conduct of defendants named herein and each of them, as alleged in those causes of action was willful, malicious, outrageous, and in conscious disregard and indifferent to the safety and health of workers and others exposed to asbestos, including Decedent.  Said defendants, and each of them, knowingly disregarded the substantial

certainty of injury to others, including Decedent. The conduct of said defendants, and each of them, constituted a conscious and reckless disregard of the rights and safety of others, including Decedent, and therefore Plaintiffs are entitled to an award of punitive damages.

102. As a direct and legal result of the conduct of the defendants, and each of them, prior to Decedent's death, Decedent sustained the damages alleged in this Cause of Action, in an amount of at least $50,000.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as herein set forth.

## **PRAYER FOR RELIEF**

### **ALL DEFENDANTS – FIRST THROUGH NINTH CAUSES OF ACTION**

WHEREFORE, Decedent THOMAS H. TOY, SR. by and through his personal representative, AGNES TOY, prays judgment against all defendants, their "alternate entities", and each of them, as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with proof;

2. Loss of income, wages and earning potential according to proof;

3. Medical and related expenses according to proof;

4. Damages for fraud in an amount in excess of $50,000.00 in accordance with proof;

5. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

6. Special damages in accordance with the proof;

7. Prejudgment interest and post-judgment interest in accordance with law;

8. Costs of suit; and

9. Such other and further relief as the Court deems just and proper in the premises.

WHEREFORE, Plaintiff AGNES TOY prays judgment against all defendants, their "alternate entities", and each of them, as follows:

10. General damages in an amount in excess of $50,000.00 in accordance with proof;

11. For AGNES TOY's loss of Decedent's financial support and financial contributions;

12. For Decedent's medical and related expenses according to proof;

13. For funeral and burial expenses caused by Decedent's death;

14. Damages for fraud in an amount in excess of $50,000.00 in accordance with proof;

15. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

16. Special damages in accordance with the proof;

17. Prejudgment interest and post-judgment interest in accordance with law;

18. Costs of suit; and

19. Such other and further relief as the Court deems just and proper in the premises.

WHEREFORE, all WRONGFUL DEATH Plaintiffs pray judgment against all defendants, their "alternate entities", and each of them, as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3. For Decedent's medical and related expenses according to proof;

4. Non-economic damages as found appropriate by the trier of fact;

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

5.    Prejudgment interest and post-judgment interest in accordance with law;

6.    Costs of suit; and

7.    Such other and further relief as the Court deems just and proper in the premises.

## PRAYER FOR RELIEF

### ALL DEFENDANTS – SURVIVORSHIP TENTH CAUSE OF ACTION

WHEREFORE, Plaintiffs pray judgment against all defendants, their "alternate entities", and each of them, as follows:

1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

2.    Special damages in accordance with proof;

3.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

4.    Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

5.    For Decedent's medical and related expenses according to proof;

6.    Non-economic damages as found appropriate by the trier of fact;

7.    Prejudgment interest and post-judgment interest in accordance with law;

8.    Costs of suit; and

9.    Such other and further relief as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Plaintiffs also by this pleading demand a jury trial on all issues set forth hereinabove and as shall or might arise pursuant to the same.

//

//

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS

DATED: July 22, 2019     DEAN OMAR BRANHAM SHIRLEY, LLP


*/s/ Benjamin H. Adams*
Benjamin H. Adams, Esq.

ATTORNEYS FOR PLAINTIFFS

**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS**

## CERTIFICATE OF SERVICE BY ELECTRONIC FILING

### *In Re Toy Asbestos Litigation*
**U.S. District Court, Northern District of California**
**Case No. 4:19-cv-00325-HSG**

I declare that I am over the age of eighteen (18) and not a party to this action.  I am an employee of Dean Omar Branham Shirley, LLP, Counsel for Plaintiffs.  My business address is 302 N. Market Street, Suite 300, Dallas, Texas 75202.

On July 19, 2019, I served the following entitled document:

### PLAINTIFFS' SECOND AMENDED COMPLAINT

by electronic service via the Electronic Court Filing System (ECF) on all parties opting for e-service and is available for viewing and downloading form the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 22, 2019.


*/s/ Teresa Gilliland*
Teresa Gilliland

SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP – ASBESTOS