UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE PLAINTIFFS' EXPERT DR. BRENT STAGGS**

Re: Dkt. Nos. 399, 402, 403, 407, 408, 459, 520

Pending before the Court is the motion to strike Plaintiffs Agnes Toy and Thomas Toy, Jr.'s expert, Dr. Brent Staggs. Dkt. No. 399. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I.  **BACKGROUND**

Plaintiffs initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC"). The Court subsequently set a case schedule, in which fact discovery closed on December 13, 2019; opening expert reports were due on February 17, 2020; and rebuttal expert reports were due on March 9, 2020. *See* Dkt. No. 245, 348 (modified case schedule). Defendants then had until April 6, 2020, to depose Plaintiffs' experts and Plaintiffs had until April 27, 2020, to depose Defendants' experts. *Id.* As discussed in more detail below, however, the parties did not comply with the Court's scheduling order. Defendants now challenge Plaintiffs' expert Dr. Brent Staggs' report. *See* Dkt.

No. 399.

The Court notes that this motion was initially brought by Defendants Ingersoll-Rand Company and Armstrong International, Inc. *See* Dkt. No. 399. However, Ingersoll-Rand filed a petition for bankruptcy on June 18, 2020. *See* Dkt. No. 530. Under Section 362 of the Bankruptcy Code, the bankruptcy filing triggered an automatic stay of all claims against Ingersoll-Rand. *Id.* at 2. Plaintiffs have confirmed that due to the stay they will no longer prosecute the case against Ingersoll-Rand. *See* Dkt. No. 532 at 2. The Court continues to consider this motion on behalf of Defendant Armstrong and the several other Defendants who joined this motion to strike. *See* Dkt. Nos. 402, 403, 407, 408, 459, 520; *see also* Dkt. No. 532 at 2.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the

2

knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

### III. DISCUSSION

Both Plaintiffs and Defendant Armstrong failed to comply with court-imposed deadlines regarding the exchange of expert reports. Plaintiffs submitted two expert reports by the Court's February 17, 2020 deadline: the reports of Dr. Carl Brodkin and Dr. Arnold Brody. At the time, Plaintiffs did not serve an expert report from Dr. Staggs. But Dr. Brodkin testified during his March 6, 2020 deposition that he had reviewed and relied on an undisclosed report from Dr. Staggs, dated January 3, 2020. *See* Dkt. No. 399-4, Ex. B at 13:22–14:17. During the deposition, Defendants noted that they had not received this report and requested a copy. *Id.*; *see also* Dkt. No. 399-2 at ¶ 2.

On February 27, 2020, ten days after the deadline for opening expert reports, Defendants Ingersoll-Rand and Armstrong served an untimely opening expert report from Dr. Victor L. Roggli. *See* Dkt. No. 418-2, Ex. 1 ("Roggli Report"). Defendant Armstrong contends that Dr. Roggli had fallen ill, so Defendants Ingersoll-Rand and Armstrong stipulated with Plaintiff that Dr. Roggli's report could be served after the court-imposed deadline. *See* Dkt. No. 399-3, Ex. A. In his report, Dr. Roggli opined that Mr. Toy died from lung cancer and not from mesothelioma. *See* Roggli Report at 2–3.

Defendant Armstrong and Plaintiffs met and conferred regarding Dr. Staggs' expert report and agreed among themselves that Plaintiffs would not rely on his earlier expert report. *See* Dkt. No. 399-7, Ex. D. Plaintiffs intended instead to produce a report from Dr. Staggs in rebuttal to Dr. Roggli's report. *See* Dkt. No. 399-4, Ex. B at 14:12–17. Plaintiffs served this rebuttal report on March 25, 2020. *See* Dkt. No. 399-8, Ex. E ("Staggs Report"). Defendants now challenge the rebuttal expert report and the anticipated testimony of Dr. Staggs. *See* Dkt. Nos. 399, 402, 403, 407, 459, 520. Defendants assert that Dr. Staggs' report was untimely and does not constitute proper rebuttal. *See id.*

3

### A. Timeliness

Federal Rule of Civil Procedure 26 provides that expert disclosures must be made at the times directed by the Court. *See* Fed. R. Civ. P. 26(a)(2)(D). Rule 37, in turn, provides that if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The Court has "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Under the scheduling order, the deadline for opening expert reports was February 17, 2020, and the deadline for rebuttal expert reports was 21 days later, on March 9, 2020. *See* Dkt. No. 348. Defendants ask the Court to strike Dr. Staggs' report for failure to abide by the scheduling order because Plaintiffs served Dr. Staggs' rebuttal report over 21 days after Dr. Roggli's report. *See* Dkt. No. 399 at 9. Plaintiffs concede—as they must—that Dr. Staggs' expert report was untimely under the Court's scheduling order. *See* Dkt. No. 418 at 2. They served the report weeks after the March 9 deadline. But Dr. Roggli's report was similarly untimely. Neither Plaintiffs nor Defendants sought a court order to extend the case deadlines. To the extent Defendants suggest that the Court should hold only Plaintiffs accountable for missing the case deadlines, the Court declines to credit such transparent gamesmanship.

Defendants suggest that their agreement with Plaintiffs to extend the deadline to serve Dr. Roggli's expert report somehow excuses their own delay. Defendants further urge that the "[s]equencing of expert report discovery by party stipulation does not require the Court to alter the dates established by the pre-trial orders in this case," and thus does not require a court order. *See* Dkt. No. 455 at 3. Defendants are mistaken. The parties are not free to disregard Court orders, whether they agree among themselves or not. The Court's scheduling order in this case specifically stated that "[t]hese dates may only be altered by order of the Court and only upon a showing of good cause." *See* Dkt. No. 348. The parties' current dispute highlights the problems that arise when parties attempt to revise case schedules on their own. *First*, the parties did not specify a due date for any rebuttal reports in response to Dr. Roggli's opening report. Although

4

1    the Court's scheduling order required the parties to serve rebuttal reports within 21 days, Federal
2    Rule of Civil Procedure 26(a)(2)(D)(ii) permits rebuttal reports within 30 days of the other party's
3    disclosure.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).  There is therefore an ambiguity inherent in the
4    parties' agreement.  *Second*, not all Defendants in this case were a party to the agreement.  As
5    their joinders indicate, however, at least some of them believe their rights are implicated by the
6    timing and substance of Dr. Roggli's and Dr. Staggs' expert reports.  *See, e.g.*, Dkt. Nos. 402, 403,
7    407, 408, 459, 520.

8         Still, the Court declines to hold Plaintiffs exclusively responsible for what was a mutual
9    error.  Moreover, due to the COVID-19 pandemic, the original trial date in this case was vacated,
10   and the Court has not yet set a new date.  *See* Dkt. No. 525.  Consequently, permitting these late
11   expert reports will not unduly delay the case schedule.  Defendants argue that they will be
12   prejudiced because Dr. Staggs' deposition will be taken "out of the sequence established in the
13   scheduling order."  Dkt. No. 399 at 7–8.  But Defendants fail to provide any concrete reasons why
14   tracking that sequence is critical to their defense.  The Court finds this assertion particularly
15   disingenuous given Defendants' own failure to follow the scheduling order.  The Court therefore
16   declines to strike Dr. Staggs' expert report as untimely.  The Court nevertheless cautions the
17   parties to scrupulously abide by all Court orders without exception, and will consider imposing
18   sanctions for any future noncompliance.

19       **B.**    **Substance**

20   Defendants next assert that the vast majority of Dr. Staggs' report contains opinions that
21   Plaintiffs should have included in their case-in-chief.  *See* Dkt. No. 399 at 5–7.  Specifically,
22   Defendants point out that the Dr. Staggs' expert report opines that Mr. Toy died of mesothelioma,
23   and that only two pages of the 17-page report specifically address Dr. Roggli's opening report.  *Id.*

24   Federal Rule of Civil Procedure 26 states that rebuttal disclosures of expert testimony are
25   "intended solely to contradict or rebut evidence on the same subject matter identified by another
26   party" in its expert disclosures.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).  Courts have explored the
27   contours and limits of rebuttal evidence.  As relevant here:

> If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one. Rather, rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case.

*See R & O Construction Company v. Rox Pro International Group, LTD*, No. 2:09–cv–017490–LRH–LRL, 2011 WL 2923703 (D. Nev. July 18, 2011) (collecting cases) (quotations omitted); *see also Daly v. Fesco Agencies NA Inc.*, 108 F. App'x 476, 479 (9th Cir. 2004) (upholding exclusion of expert whose rebuttal testimony "related to issues that were the subject of the plaintiff's case-in-chief").[1]

Much of Dr. Staggs' report is not proper rebuttal. Despite Plaintiffs' urging, *see* Dkt. No. 418 at 5, Dr. Staggs generally does not refute any unforeseen theories. Rather, he opines that Mr. Toy developed malignant mesothelioma from asbestos exposure. *See* Staggs Report at 16–17. He explains: (1) the link between asbestos and cancer; (2) mechanisms of asbestos-related cancer development; (3) the dose-response relationship between asbestos exposure and the risk of developing asbestos diseases; (4) the effect of low-dose asbestos exposures; (5) the relationship between mesothelioma and asbestos exposure; (6) the risk of developing lung cancer from asbestos exposure; and (7) genetic susceptibility. *See id.* at 2–10.

In this case, Plaintiffs allege that Mr. Toy developed and later died from mesothelioma as a result of exposure to asbestos from Defendants' products. *See generally* SAC. Establishing that Mr. Toy developed mesothelioma from asbestos is thus a fundamental issue in Plaintiffs' case. Plaintiffs state that "Defendants had never given any indication they intended to dispute [Mr. Toy's] mesothelioma diagnosis." *See* Dkt. No. 418 at 5. But Plaintiffs bear the burden of establishing that exposure to Defendants' products was a substantial factor causing his illness. *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 982 (Cal. 1997), *as modified on denial of reh'g* (Oct. 22, 1997). An expert report is not proper rebuttal if "the report speaks directly to an issue on which [the offering party] bear the burden of proof." *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3509384, at *3 (N.D. Cal. June 3, 2015). Here, Plaintiffs simply

---

[1] As an unpublished Ninth Circuit decision, *Daly v. Fesco Agencies NA Inc.* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

waited to see how Defendants' experts would challenge Plaintiffs' case, and they took that risk at their own peril.

The deadline for Plaintiffs to disclose their affirmative experts on "all issues on which [they] bear[] the burden of proof" passed on February 17, 2020. *See Clear-View Techs.*, 2015 WL 3509384, at *3. Yet Plaintiffs failed to disclose Dr. Staggs. Plaintiffs' tactic ignored the crucial significance of the sequencing of expert disclosures. By waiting for Defendants' own expert to offer testimony about Mr. Toy's diagnosis before producing Dr. Staggs' report, Plaintiffs prevented all Defendants from designating informed experts who could rebut Dr. Staggs' opinions. Plaintiffs have not offered any credible reason for the delay. Dr. Staggs' review of medical records and his own pathological analysis all could have been done prior to the disclosure of Dr. Roggli's report. In fact, much of Dr. Staggs' "rebuttal" report tracks—almost verbatim—his undisclosed report from January 3, 2020. *Compare* Staggs Report *with* Dkt. No. 399-6. Dr. Staggs thus should have been disclosed as an affirmative expert. Plaintiffs should not be allowed to manufacture a tactical advantage by waiting to disclose critical information about their case. Plaintiffs' "actions evince the intent to play fast-and-loose with Rule 26's requirements to the detriment of [Defendants], which the Court will not countenance." *See Clear-View Techs.*, 2015 WL 3509384, at *3

In concluding that Mr. Toy had lung cancer, Dr. Roggli reviewed certain pathology materials and performed his own immunohistochemical stains on one of the specimens. *See* Roggli Report at 2–3. This analysis formed the entire basis of Dr. Roggli's opinion. Dr. Staggs' report only briefly references and responds to Dr. Roggli's expert report. *See* Staggs Report at 15–16 (titled "Expert Reports" and "Analysis"). The Court finds that only these limited two paragraphs are proper rebuttal. The Court therefore **GRANTS IN PART** Defendants' motion, striking the remainder of Dr. Staggs' rebuttal report. And because Dr. Staggs is designated solely as a rebuttal expert, his testimony at trial is limited. Dr. Staggs will not be allowed to testify in Plaintiffs' case-in-chief, and he will not be allowed to testify unless and until Dr. Roggli testifies as to his opinions—based on his immunohistochemical staining review—that Mr. Toy had lung cancer.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike. To the extent Defendants have not yet deposed Dr. Staggs and would like to do so based on these limited rebuttal opinions, the Court **DIRECTS** the parties to coordinate a mutually agreeable date and time, no later than April 16, 2021. For the avoidance of doubt, if the parties require an extension of time, they must file a stipulation and proposed order with the Court. This terminates Dkt. Nos. 402, 403, 407, 408, 459, 520.

**IT IS SO ORDERED.**

Dated: 3/19/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge