UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER GRANTING MOTION TO STRIKE OR LIMIT TESTIMONY OF DEFENSE EXPERT GAIL STOCKMAN**

Re: Dkt. No. 424

Pending before the Court is the motion to strike portions of the expert report and anticipated testimony of Defendant Armstrong International Inc.'s expert, Dr. Gail Stockman. Dkt. No. 424. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

I.  **BACKGROUND**

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC"). As related to this motion, Plaintiffs allege that Mr. Toy worked with Defendant Armstrong's "steam traps" in his work as a machinist. *See, e.g.*, *id.* at ¶¶ 5–6. Before his death, Mr. Toy testified that he had removed asbestos insulation from Armstrong steam traps on a daily basis for years. *See* Dkt. No. 424-2, Ex. 1 at 83:16-18; 83:25-85:3; 87:4–89:25; 90:6–91:8. When he worked at Treasure Island from 1974 to 1980, Mr. Toy said that he worked "exclusively" with

Armstrong steam traps. *See id.* at 83:16–18, 87:4–7.

Defendant Armstrong served a medical report from Dr. Stockman, *see* Dkt. No. 492-1, Ex. A ("Stockman Medical Report"), and on March 2, 2020 served a rebuttal report from her in response to Plaintiffs' expert Dr. Carl Brodkin, *see* Dkt. No. 424-7, Ex. 6 ("Stockman Rebuttal Report"). Plaintiffs now challenge portions of Dr. Stockman's reports and anticipated testimony. *See* Dkt. No. 424. Plaintiffs seek to exclude the opinions that Dr. Stockman provides as to: (1) asbestos-related "state of the art"[1] and (2) causation opinions related to steam traps. *Id.* Plaintiffs contend that Dr. Stockman has no specialized knowledge or expertise in either area. *Id.*

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of her asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that

---

[1] In this context, state of the art refers to "evidence that the particular risk [from asbestos] was neither known nor knowable by the application of scientific knowledge available at the time of manufacture and/or distribution" of the product. *See Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 990 (Cal. 1991).

1   the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted).
2   Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the
3   knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565.  To ensure
4   reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate
5   such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at
6   564.

## III. DISCUSSION

Dr. Stockman is a medical doctor specializing in pulmonary medicine with 38 years of experience.  *See* Dkt. No. 424-3 (CV); *see also* Dkt. No. 492 at 4.  Defendant notes that she "has spent a career studying and clinically practicing within the field of pulmonology, including asbestos-related disease." *See* Dkt. No. 492 at 5.  Consistent with this background, Dr. Stockman concludes that Mr. Toy's lung cancer "was the direct result of a history of cigarette smoking beginning in adolescence" and that Mr. Toy's "risk for lung cancer was further increased by his advanced age." *See* Stockman Rebuttal Report at 4 (Assessment Nos. 1, 2).  She further opines that the presence of pleural plaques is not indicative of a higher risk of lung cancer. *See id.* (Assessment Nos. 2, 3).  However, Plaintiffs point out her two reports also contain considerable detail and opinions about (1) asbestos-related state of the art and (2) gaskets in steam traps, the asbestos fiber contained in them, and the likely asbestos exposure for those working with them. *See id.* at 1; *see also* Stockman Medical Report at 5–6.  Plaintiffs argue that Dr. Stockman is not qualified as an expert in these areas "by knowledge, skill, experience, training, or education," and therefore may not testify about these subjects. *See Daubert*, 509 U.S. at 588 (citing Federal Rule of Civil Procedure 702).

### A. Asbestos State-of-the-Art Opinions

Plaintiffs first argue that as a pulmonologist, Dr. Stockman is not trained in asbestos-related state of the art.  *See* Dkt. No. 424 at 6.  Plaintiffs further argue that although Dr. Stockman may have reviewed articles in this area as part of her testimony for this and other asbestos-related litigation, this is not sufficient to qualify her as an expert.  *See id.* at 6–7.

In response, Defendant asserts that Dr. Stockman need not be an epidemiologist, industrial

hygienist, or occupational safety professional to qualify as an expert in this area. *See* Dkt. No. 492 at 4. Defendant also highlights that Dr. Stockman has years of medical experience diagnosing and treating asbestos-related diseases. *See id.* Defendant thus concludes that "there is no reason that a medical doctor that has spent a career studying and clinically practicing withing the field of pulmonology, including asbestos-related disease, is somehow not qualified to be an expert on state-of-the-art . . . ." *See id.* at 5. Of course, an expert's job title is not dispositive of her qualifications. *See Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 656 (9th Cir. 2005) ("[A]n expert need not be officially credentialed in the specific matter under dispute.") (citing *United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993)).[2] As noted above, Rule 702 anticipates that an expert may be qualified through her "knowledge, skill, experience, training, or education." *See* Fed. R. Civ. P. 702.

Here, Plaintiffs do not question that Dr. Stockman is qualified in diagnosing and treating asbestos-related diseases. However, Defendant fails to explain how Dr. Stockman's knowledge, skill, experience, training, and education as a pulmonologist somehow provides relevant insight into what was historically known or knowable about the hazards associated with asbestos. Dr. Stockman provides detailed information regarding what was known within the medical and scientific communities regarding malignant mesothelioma beginning in the 1950s. *See* Stockman Medical Report at 5–6. She also appears to have compiled information regarding the government and Navy's use of asbestos and their purported knowledge of its health hazards since the 1950s. *See id.* at 6. Yet at least on its face, Dr. Stockman's background as a pulmonologist does not appear relevant to asbestos state of the art generally, or what the government or Navy may have known about the hazards of asbestos more specifically. Defendant bears the burden of establishing that Dr. Stockman is qualified to render opinions about state of the art. *See Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Pointing out that she is a practicing pulmonologist is simply insufficient.

Defendant attempts to buttress Dr. Stockman's qualifications in this area by suggesting that

---

[2] As an unpublished Ninth Circuit decision, *Massok v. Keller* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

she has gathered sufficient knowledge on these subjects by reviewing asbestos-related literature and "perform[ing] her own independent research into what was known or knowable at specific periods regarding asbestos-related diseases." *See* Dkt. No. 492 at 4–5. Dr. Stockman's reports list numerous publications that she reviewed. *See* Stockman Medical Report at 10–13. She also states that "[i]n the early 1990's, [she] completed a review of the world literature on asbestos-related diseases, beginning in 1898" and she has "subsequently testified at trial on a number of occasions regarding what could or should have been known at various time periods regarding asbestos-related disease." *See* Stockman Medical Report at 13. During a 2016 deposition, Dr. Stockman explained that at the request of counsel, she first "embarked on a study of the historical medical literature of asbestos related diseases beginning in 1898 and extending into the 1970s, and subsequently began testifying at trial regarding state-of-the-art." *See* Dkt. No. 424-7, Ex. 5 at 22:15–23:12; *see also* Dkt. No. 424-8 at 16:1–17:8 (1997 Deposition).

Defendant concludes, with little explanation, that Dr. Stockman's review of these publications is enough to qualify her as an expert. But Federal Rule of Evidence 702 requires expertise based on the proffered expert's own specialized knowledge and experience. That a person is well-read on a specific topic does not necessarily qualify her as an expert. *See In re Related Asbestos Cases*, 543 F. Supp. 1142, 1149 (N.D. Cal. 1982) (precluding witness from testifying as expert regarding compilation of articles about the hazards of asbestos); *cf. United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (holding that absent some specific knowledge, experience, or training, an individual's review of articles does not make him any more qualified to testify as an expert than a lay person who read the same articles). If reading articles were sufficient on its own, any lay witness could qualify as an expert by summarizing and relaying such information for a given litigation.

Neither Dr. Stockman's reports nor Defendant's opposition brief explain what specialized knowledge Dr. Stockman applied in compiling, evaluating, or interpreting these publications. *Cf. Krik v. Crane Co.*, 71 F. Supp. 3d 784, 787 (N.D. Ill. 2014) (admitting testimony of expert on asbestos-related state of the art where expert "sets out his reasoning and methodology in detail," including "a full explication of the scope of his research, identifying the documents he reviewed,

5

the types of individuals that he interviewed in the course of crafting his thesis, and the techniques he used in obtaining the materials he reviewed"). Defendant criticizes Plaintiffs for failing to address "the reliance materials Dr. Stockman used, her methodologies in gathering those texts, her analyses of available data, or her formulation of opinions regarding state-of-the-art based on her analyses." *See* Dkt. No. 492 at 5–6. But critically, Defendant—which bears the burden of establishing Dr. Stockman's qualifications—does not offer any information about her methodology or analysis. Defendant had ample opportunity to explain Dr. Stockman's qualifications as they relate to these specific matters she proposes to address as an expert, but has failed to do so. The Court accordingly finds that Dr. Stockman is not qualified to testify about asbestos-related state of the art in this case.[3]

### B. Steam Trap Opinions

Plaintiffs next argue that Dr. Stockman admits that she lacks knowledge and experience regarding steam traps. *See* Dkt. No. 424 at 2–6. Plaintiffs point out that Dr. Stockman nevertheless opined during her deposition that exposure to asbestos from steam traps would be insufficient to cause asbestos-related disease and did not contribute to Mr. Toy's development of lung cancer. *See* Dkt. No. 424-9, Ex. 8 at 22:1–25:24. And similarly, in her reports, Dr. Stockman explained that manipulation of the gaskets used with Defendant Armstrong steam traps "would not have caused or contributed to any asbestos-related disease." *See* Stockman Medical Report at 7–9 (Assessment No. 5); Stockman Rebuttal Report at 1, 4 (Assessment No. 5). Plaintiffs clarify that they do not dispute that Dr. Stockman may opine about gaskets and packing generally. *See* Dkt. No. 509 at 2. However, they argue that she may not testify that Mr. Toy's work on steam traps could never increase his risk of mesothelioma. *See id.* In short, Plaintiffs state that "all of [Dr. Stockman's] opinions regarding Mr. Toy's exposure to Armstrong steam

---

[3] The Court further notes that even if the Court found that Dr. Stockman was otherwise qualified, the Court would still have to consider whether she expressed these opinions "independent of the litigation" or "expressly for purposes of testifying." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (*Daubert II*). Here, Dr. Stockman was retained by Defendant Armstrong for purposes of testifying at trial, and her review of the literature—beginning in the 1990s and continuing to the present—appears "litigation driven." As the Ninth Circuit has stated, an expert's "normal workplace" is "not the courtroom or the lawyer's office." *See id.*

6

1  traps must be excluded." *See* Dkt. No. 424 at 5.

2  In response, Defendant does not appear to dispute that Dr. Stockman lacks specific knowledge regarding steam traps. *See* Dkt. No. 492 at 6–7. Rather, Defendant explains that this specialized knowledge is unnecessary because it is irrelevant to Dr. Stockman's opinions. Defendant explains that Mr. Toy did not testify that he performed maintenance work on any internal component of steam traps. *See id.* Defendant argues instead that Mr. Toy testified that he removed entire steam trap units, which sometimes involved the removal of external insulation and replacement of flange gaskets, placed between the steam trap and the connecting pipe. *See id.*; *see also* Dkt. No. 424-2, Ex. 1 at 87:18–89:25. Defendant states that Dr. Stockman therefore does not offer opinions specific to work on Armstrong steam traps, just regarding exposure to asbestos from flange gaskets and insulation. *See* Dkt. No. 492 at 6–7.

The parties do not appear to have any actual dispute. Dr. Stockman is not qualified to offer opinions about the exposure to and risk from asbestos from steam traps. And Defendant indicates that it does not intend to offer such testimony. Although Dr. Stockman opined during her deposition about exposure to asbestos from steam traps, this was in response to a hypothetical from Plaintiffs' counsel. *See* Dkt. No. 424-9, Ex. 8 at 22:1–25:24. Still, for the avoidance of doubt, the Court finds that Dr. Stockman may not offer testimony on this subject.

//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motion to strike Dr. Stockman's expert report and anticipated testimony. Dr. Stockman may not testify as to asbestos-related state of the art or offer opinions about the exposure to and risk from asbestos from steam traps. The Court accordingly **STRIKES** the portions of Dr. Stockman's expert reports on these subjects. *See* Stockman Medical Report at 6–7.[4]

**IT IS SO ORDERED.**

Dated: 3/23/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Sections entitled "Government and Navy knowledge regarding the health hazards of asbestos."