UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER DENYING MOTION TO STRIKE OR EXCLUDE TESTIMONY OF CARL BRODKIN, M.D.**

Re: Dkt. Nos. 427, 442, 443

Pending before the Court is Defendant Honeywell International Inc.'s motion to exclude the testimony of Plaintiffs Agnes Toy and Thomas Toy, Jr.'s expert, Dr. Carl Andrew Brodkin. Dkt. No. 442. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

**I.  BACKGROUND**

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC"). As related to this motion, Plaintiffs allege that Mr. Toy worked with Defendant Bendix brand brakes[1] during his service in the U.S. Army and as a civilian machinist at Treasure Island Naval Shipyard. *See, e.g.*, *id.* at ¶¶ 5–6. Before his death, Mr. Toy also testified that he

---

[1] Defendant Honeywell is the successor-in-interest to The Bendix Corporation, which manufactured Bendix brakes. *See* Dkt. No. 442 at 2.

may have installed Bendix brakes while as a mechanic in the motor pool for the U.S. Army from 1954 at 1956 and as a civilian machinist at Treasure Island Naval Shipyard between 1974 and 1980. *See, e.g.*, Dkt. No. 442-5, Ex. 12 at 494:3–15, 499:25–501:6, 508:8–24.

Plaintiffs offer Dr. Carl Brodkin as a causation expert. *See* Dkt. No. 489-3, Ex. 2 ("Brodkin Report"). Dr. Brodkin is a specialist in occupational and environmental medicine with almost thirty years of experience. *See* Brodkin Report, Ex. 2 at 74 (CV).[2] He holds an M.D. from the University of Colorado Medical School and an M.P.H. from the University of Washington School of Public Health. *Id.* He has also authored a textbook on occupational and environmental medicine, as well as many peer-reviewed articles on the subject of asbestos-related disease. *Id.* at 100–105. In developing his opinions in this case, Dr. Brodkin reviewed Mr. Toy's deposition testimony, medical records, pathology reports, medical billing records, national personnel records, and death certificate. *See* Brodkin Report at 5–8; *see also* Dkt. No. 489-4, Ex. 3 at 8:24–9:14. He also considered discovery documents, including information about Bendix brakes. *See* Brodkin Report at 11. In his report, Dr. Brodkin analyzes Mr. Toy's occupational and environmental history. *See* Brodkin Report at 14–44. Based on this review, Dr. Brodkin opines, *inter alia*, that Mr. Toy's work with and around Bendix brakes was "a substantial contributing factor" in Mr. Toy's development of mesothelioma. *See* Dkt. No. 442-3, Ex. 4 at 100:12–22. Defendant Honeywell challenges Dr. Brodkin's methodology and argues that Dr. Brodkin's conclusions are undermined by epidemiological studies. *See* Dkt. No. 442.

The Court notes that Defendant Ingersoll-Rand Company initially brought a parallel motion to strike or exclude the expert testimony of Dr. Brodkin. *See* Dkt. No. 427. And Defendants Morse TEC LLC and Metalclad Insulation LLC joined Ingersoll-Rand's motion to strike. *See* Dkt. No. 443. However, Ingersoll-Rand filed a petition for bankruptcy on June 18, 2020. *See* Dkt. No. 530. Under Section 362 of the Bankruptcy Code, the bankruptcy filing triggered an automatic stay of all claims against Ingersoll-Rand. *Id.* at 2. Plaintiffs have confirmed that due to the stay they will no longer prosecute the case against Ingersoll-Rand. *See*

---

[2] Because Dr. Brodkin's Report is not sequentially paginated, the Court refers to the PDF page numbers.

1  Dkt. No. 532 at 2.  Additionally, Morse TEC and Metalclad have since been dismissed from this

2  action.  *See* Dkt. Nos. 477, 541.  The Court therefore **TERMINATES AS MOOT** these related

3  motions.  Dkt. Nos. 427, 443.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004).  Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of her asserted expertise.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702.  Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted).  Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565.  To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

## III. DISCUSSION

Defendant argues that Dr. Brodkin's methodology is flawed because:  (1) Dr. Brodkin does

1    not quantify Mr. Toy's exposure to asbestos from Bendix brakes; (2) absent such quantification,
2    Dr. Brodkin impermissibly opines that each and every exposure to asbestos is a substantial factor
3    in causing mesothelioma (the "every exposure" theory); and (3) epidemiological studies have
4    found that brake mechanics do not have an increased risk of developing mesothelioma from
5    asbestos exposure.  *See* Dkt. No. 442.

6        Plaintiffs concede that  Dr. Brodkin did not quantify Mr. Toy's exposure to asbestos
7    generally or to asbestos from Bendix brakes more specifically.  *See* Dkt. No. 489 at 4–6.  Dr.
8    Brodkin previously testified that he can only quantify someone's actual exposure if that person
9    wore a dosimeter when working with asbestos products.  *See* Dkt. No. 489-5, Ex. 4 at 31:8–32:1
10   (2019 Deposition).  The parties appear to tacitly recognize that Mr. Toy did not wear a dosimeter
11   during his work as a mechanic for the U.S. Army beginning over 65 years ago or during his work
12   as a civilian machinist beginning over 35 years ago.  So instead, Dr. Brodkin performed a
13   qualitative review of Mr. Toy's occupational and environmental history and the asbestos-
14   containing products that Mr. Toy worked with, including Bendix brakes.  *See, e.g.*, Brodkin
15   Report at 1, 14–19, 44, 59–68; *see also* Dkt. No. 489-6, Ex. 5 at 26:5–27:6, 52:25–55:7 (2018
16   Deposition).

17       Dr. Brodkin explains that whether an exposure to asbestos from these products is
18   significant depends on the intensity, duration, and frequency of that exposure.  *See* Dkt. No. 489-5
19   at 152:6–14.  Dr. Brodkin accordingly identifies Mr. Toy's occupational history as including
20   approximately 50 lifetime "brake jobs" as well as "bystander exposure" to brake work.  *See*
21   Brodkin Report at 16–19, 61.  Such work comprised blowing out brakes with compressed air;
22   sanding new brake linings for deglazing; and cleaning up brakes and the resulting dust afterward.
23   *See id.* at 16–19.  Dr. Brodkin describes Mr. Toy's history as including "intermittent exposure"
24   from these jobs.  *See id.* at 61.  Dr. Brodkin next relies on scientific literature to explain that
25   brakes have a high asbestos content.  *See id.*  He also relies on scientific literature to approximate
26   the level of asbestos exposure for each brake activity, measured in fibers per cubic centimeter
27   ("f/cc").  *See id.*  For example, he notes that brake sanding produces approximately 2.7 to 4.8 f/cc;
28   brake blowouts produce approximately .1 to 29.4 f/cc; and brake cleanup produces approximately

4

.1 to 12.7 f/cc.  *See id.*

Dr. Brodkin explains that not all exposures to asbestos are significant, so he looks for significant "identified exposures" in an individual's occupational and environmental history.  *See* Dkt. No. 489-5, Ex. 4 at 24:14–25, 90:3–11 (2019 Deposition); Dkt. No. 489-6, Ex. 5 at 41:19–42:21, 45:1–3 (2018 Deposition).  He defines "identified exposures" as:

> [A]n exposure characterized by the constructed occupational and environmental history that has a well-characterized source of asbestos, an activity that disrupts that source to generate significant airborne asbestos fibers that have sufficient intensity to overcome the body's defenses, add to the body's burden of asbestos, and, therefore, increase risk for asbestos-related diseases such as mesothelioma.

*See* Dkt. No. 489-6, Ex. 5 at 46:25–47:7 (2018 Deposition).  In other words, not only must the product contain significant amounts of asbestos, but someone must be manipulating those products in a way that produces a significant amount of asbestos fibers.

Dr. Brodkin explains that "[t]he scientific studies have not identified a specific fiber cc year cumulative dose that characterizes a threshold risk" of developing mesothelioma from asbestos exposure.  *See* Dkt. No. 489-5, Ex. 4 at 50:10–24 (2018 Deposition).  Nevertheless, in Dr. Brodkin's analysis, he considers an "identified exposure" significant (as opposed to "de minimis") based on the intensity and duration of the exposure.  *See id.* at 52:7–53:25.  For example, Dr. Brodkin considers the mere handling of new brakes to be de minimis exposure.  *See, e.g.*, Dkt. No. 489-5, Ex. 4 at 90:3–11 (2019 Deposition).  Dr. Brodkin acknowledges that in the absence of dosimeter information over the course of someone's lifetime, however, he must make "assumptions about duration, intensity, [and] frequency of exposure" based on the occupational and environmental history.  *See* 489-5, Ex. 4 at 52:7–53:25.  Having considered the totality of the evidence before him, Dr. Brodkin concludes that Mr. Toy's exposure to asbestos through brake work was "significant," and therefore contributed to his development of mesothelioma.  *See* Brodkin Report at 59, 61.

### A.   Quantifying Exposure

Defendant contends that Dr. Brodkin's methodology, which fails to quantify Mr. Toy's

1   actual exposure from Bendix brakes (or any of the Defendants' products), is unreliable and
2   therefore inadmissible under Rule 702 and *Daubert*. But neither Rule 702 nor *Daubert* precludes
3   qualitative analysis. Rather, the Supreme Court has cautioned that the *Daubert* inquiry is intended
4   to be flexible, and that when evaluating specialized or technical expert opinion testimony, "the
5   relevant reliability concerns may focus upon personal knowledge or experience." *See Kumho Tire*
6   *Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The Ninth Circuit has recognized that this is
7   particularly true in the medical context because "[t]he human body is complex" and "etiology is
8   often uncertain." *Primiano*, 598 F.3d at 565–66 (quotations omitted). This uncertainty is
9   compounded here, where the latency period for mesothelioma is long and experts are attempting to
10  reconstruct work history and exposure from decades ago. *See, e.g.*, Brodkin Report at 64.

11  Defendant first cites to the California Supreme Court's opinion in *Rutherford v. Owens*
12  *Illinois, Inc.*, regarding the proof of causation required in asbestos-related cases. 16 Cal. 4th 953,
13  975 (Cal. 1997), *as modified on denial of reh'g* (Oct. 22, 1997). The court cited a non-exhaustive
14  list of factors that may be relevant, including (1) "the length, frequency, proximity, and intensity
15  of exposure"; (2) other potential causes of the disease; and (3) other factors of comparative risk.
16  *Id.* at 975. But nothing in *Rutherford* demands that a plaintiff create a dose assessment in order to
17  establish causation. Rather, the court simply held that in the context of an asbestos case, the
18  plaintiff bears "the burden of proving that exposure to defendant's product was a substantial factor
19  causing the illness." *Id.* at 982. The court recognized that the term "substantial factor" is
20  undefined, and thus clarified that "a force which plays only an 'infinitesimal' or 'theoretical' part
21  in bringing about injury, damage, or loss is not a substantial factor." *Id.* at 970 (citations omitted);
22  *id.* at 978. Accordingly, a plaintiff may meet his burden "by showing that in reasonable medical
23  probability [a defendant's product] contributed to the plaintiff or decedent's risk of developing
24  cancer." *Id.* at 982. This is consistent with Dr. Brodkin's distinction between "significant" and
25  "de minimis" exposures.

26  Defendant argues, however, that Dr. Brodkin's analysis collapses into an "every exposure"
27  theory of liability. *See* Dkt. No. 502 at 7–14. Under the "every exposure" theory, every exposure
28  to asbestos contributes to the total dose and is a substantial factor in causing disease. *See, e.g.*,

*McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016). In *McIndoe*, the Ninth Circuit rejected this theory under maritime law because the expert did not consider the severity of the decedent's exposure aboard a U.S. Naval ship that contained pipe insulation made from asbestos "beyond the basic assertion that such exposure was significantly above ambient asbestos levels." *Id.* And "[m]ore critically," the expert did not "make distinctions between the overall dose of asbestos [the decedent] breathed aboard the ships and that portion of such exposure which could be attributed to the [defendant's] materials." *Id.* The Court reasoned that the problem with this "every exposure" theory is that it would "permit imposition of liability on the manufacturer of any [asbestos-containing] product with which a worker had the briefest of encounters on a single occasion." *See id.* (quotation omitted). Yet as explained above, Dr. Brodkin does *not* conclude that every exposure to an asbestos-containing product caused Mr. Toy's mesothelioma. Rather, he considered the type of work Mr. Toy performed; the amount of time he engaged in such work; and the amount of asbestos produced from such activities. There is therefore more than just "speculat[ion] as to the actual extent of his exposure to asbestos from [Defendants'] materials." *Id.* To the extent that Defendant argues that Mr. Toy's deposition testimony does not support Dr. Brodkin's assumptions about the extent and nature of Mr. Toy's work with Bendix brakes, *see* Dkt. No. 442 at 3–6, this is a fact question for the jury. Defendant can challenge the accuracy of these assumptions on cross-examination.

This is not the first time that a defendant has challenged Dr. Brodkin's causation testimony. And courts routinely admit Dr. Brodkin's qualitative testimony over defendants' objections. *See, e.g.*, *Jack v. Borg-Warner Morse TEC LLC*, No. C17-0537JLR, 2018 WL 3819027, at *13 (W.D. Wash. Aug. 10, 2018); *Phillips v. Honeywell Int'l Inc.*, 9 Cal. App. 5th 1061, 1088 (Cal. Ct. App. 2017); *Lipson v. On Marine Servs. Co.*, LLC, No. C13-1747 TSZ, 2013 WL 6536923, at *4 (W.D. Wash. Dec. 13, 2013); *Anderson v. Saberhagen Holdings, Inc.*, No. 10-cv-61118, 2011 WL 605801, at *1 (E.D. Penn. Feb. 16, 2011). The Court finds these courts' reasoning persuasive, particularly Judge Robart's analysis in *Jack*, and adopts that reasoning here. *See Jack*, 2018 WL 3819027 at *4–5, *13–14.

The Court recognizes that a district court recently excluded Dr. Brodkin's testimony in

*Clarke v. Air & Liquid Sys. Corp.*, No. 20-cv-0591-SWV-JC (C.D. Cal. March 18, 2021). However, the Court respectfully disagrees with this analysis. In *Clarke*, the court reasoned that Dr. Brodkin's analysis "is not sensitive to the dose of asbestos attributable to a particular defendant." *Id.* at 10. In particular, the court explained that Dr. Brodkin's analysis does not speak to the "frequency and duration" of the identified exposures. *Id.* at 11. In short, the court in *Clarke* held that without "even a rough estimate of dose," Dr. Brodkin's testimony would not "help the trier of fact . . . to determine a fact in issue." *Id.* at 12 (citing Fed. R. Evid. 702(a)). Yet at least on the record before the Court in this case, Dr. Brodkin's analysis does appear to consider the amount of time Mr. Toy worked on brakes over the course of his career, the number of "brake jobs" Mr. Toy performed, and the amount of exposure in f/cc produced for specific brake-related activities.

The Court recognizes that Defendant may dispute whether Mr. Toy's deposition testimony supports Dr. Brodkin's assumptions. And as the California Supreme Court has acknowledged, there are of course "inherent practical difficulties, given the long latency period of asbestos-related disease," in establishing causation from work performed several decades ago. *See Rutherford*, 16 Cal. 4th at 958. But it is enough, for purposes of establishing causation, that Defendant's product "contributed to [Mr. Toy's] risk of developing cancer." *Id.* at 982. Dr. Brodkin's testimony is therefore helpful to the trier of fact in determining risk from these specific exposures, even if it is based on qualitative rather than quantitative assessments of such exposure. As the Ninth Circuit has acknowledged, "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork." *Primiano*, 598 F.3d at 565.

### B. Contrary Evidence

Defendant next argues that Dr. Brodkin failed to consider competing evidence that brakes do not cause mesothelioma. *See* Dkt. No. 442 at 10–13. Defendant explains—and Dr. Brodkin appears to recognize—that Bendix brakes contain chrysotile rather than amphibole asbestos. *See id.* at 1–3, 11–13; *see also* Brodkin Report at 61. Defendant cites myriad epidemiological studies to support its contention that chrysotile fibers do not cause mesothelioma and that there is no increased risk for mesothelioma in brake mechanics. *See* Dkt. No. 442 at 10–13. Dr. Brodkin's report, however, cites competing scientific literature that workers exposed to chrysotile asbestos

8

had "a prominent mesothelioma risk." *See* Brodkin Report at 64. At trial, Defendant may cross-examine Dr. Brodkin and offer its own studies and expert opinions to undermine the weight of Dr. Brodkin's conclusions. But the Court declines Defendant's invitation to step in as factfinder and weigh the evidence. "*Daubert* makes the district court a gatekeeper, not a fact finder." *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).

\*   \*   \*

To the extent Defendant disagrees with Dr. Brodkin's approach or conclusions, it will have ample opportunity to cross-examine him at trial and present its own contrary evidence. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The jury ultimately will have to decide how persuasive it finds Dr. Brodkin's testimony to be. At this stage, the Court finds that Dr. Brodkin may offer causation testimony regarding Defendants' products, including Bendix brakes.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion to strike. The Court further **DIRECTS** Plaintiffs to file a typed copy of Dr. Carl Brodkin's handwritten expert report, Dkt. No. 427-2, Ex. 2, as well as a signed declaration from Dr. Brodkin confirming that the typed version is an accurate rendering of his handwritten report. Plaintiffs shall file this document by April 5, 2021. Dkt. Nos. 427 and 443 are also **TERMINATED AS MOOT**.

**IT IS SO ORDERED.**

Dated: 3/26/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge