UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE OR EXCLUDE THE EXPERT TESTIMONY OF ARNOLD BRODY AND DENYING MOTION TO EXCLUDE "EVERY EXPOSURE" TESTIMONY**

Re: Dkt. No. 432, 450, 453, 460, 468

Pending before the Court are motions to strike or exclude the anticipated testimony of Plaintiffs Agnes Toy and Thomas Toy, Jr.'s expert Dr. Arnold R. Brody, Dkt. Nos. 432, 453, and motions to exclude evidence or testimony that "every exposure" to asbestos causes mesothelioma, Dkt. Nos. 450, 460, 468. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike or exclude Dr. Brody's anticipated testimony and **DENIES** the motion to exclude what Defendants characterize as "every exposure" testimony.

**I.    BACKGROUND**

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC").

### A. Motion to Strike or Exclude Dr. Brody

As related to this motion, Plaintiffs offer Dr. Brody as a causation expert. *See generally* Dkt. No. 432-2, Ex. A ("Brody Report"). Dr. Brody is the Professor Emeritus in the Pathology Department at Tulane University Medical School and an adjunct professor at North Carolina State University in the Department of Molecular and Biomedical Sciences. *Id.* at ¶ 1; *see also id.* at 34–35 (CV). Dr. Brody holds a Bachelor of Science degree in Zoology, a Master of Science degree in Functional Vertebrate Anatomy, and a Ph.D. in cell biology. *Id.* at ¶ 2. He focuses on "the pathobiology of several lung diseases," and conducts experiments to understand the development of disease on both a cell and genetic level. *Id.* at ¶¶ 3–4. Since the 1970s, his research has focused on how asbestos causes lung disease. *Id.* at ¶ 4. In his report, Dr. Brody discusses what asbestos is, the different types of asbestos fibers, and how asbestos fibers get into the lungs and cause disease. *See generally id.*

The Court notes that Defendant Ingersoll-Rand Company initially brought the motion to strike or exclude the expert testimony of Dr. Brody. *See* Dkt. No. 432. However, Ingersoll-Rand filed a petition for bankruptcy on June 18, 2020. *See* Dkt. No. 530. Under Section 362 of the Bankruptcy Code, the bankruptcy filing triggered an automatic stay of all claims against Ingersoll-Rand. *Id.* at 2. Plaintiffs have confirmed that due to the stay they will no longer prosecute the case against Ingersoll-Rand. *See* Dkt. No. 532 at 2. Nevertheless, the Court will consider the motion on behalf of Defendant Armstrong International Inc., which joined Ingersoll-Rand's motion to strike. *See* Dkt. No. 453.

### B. Motion to Exclude "Every Exposure" Testimony

Defendants Warren Pumps, LLC and Honeywell International Inc. also move the Court to preclude Plaintiffs' experts from testifying that every exposure to asbestos is a substantial factor in causing mesothelioma (the "every exposure" theory). *See* Dkt. Nos. 450, 468. The Court notes that Defendants Morse TEC LLC and Metalclad Insulation LLC joined Defendant Warren Pump's motion to strike. *See* Dkt. No. 460. However, Morse TEC and Metalclad have since been dismissed from this action. *See* Dkt. Nos. 477, 541. The Court therefore **TERMINATES AS MOOT** this related motion for joinder. Dkt. No. 460.

2

## II. LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of her asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

## III. DISCUSSION

### A. Motion to Strike or Exclude Dr. Brody

Defendant Armstrong challenges Dr. Brody's qualifications to testify about the development of asbestos-related disease in humans and further argues that Dr. Brody's anticipated testimony is irrelevant and should be excluded. *See* Dkt. Nos. 432, 453.

3

### i. Specific Causation

As an initial matter, Defendant Armstrong contends that Dr. Brody may not offer specific causation opinions in this case. *See* Dkt. No. 432 at 7–8. Dr. Brody's report does not contain any opinions regarding specific causation. *See generally* Brody Report. Rather, he concludes that (1) asbestos-related diseases are cumulative dose diseases, such that the more asbestos a person is exposed to, the more likely that person is to develop a disease; and (2) there is no safe level of asbestos exposure above the background levels present in the ambient air. *See id.* at ¶¶ 44–45. And Plaintiffs confirm that Dr. Brody "will not offer any specific causation opinions involving the products or defendants in this case," and instead will offer only background information about asbestos and asbestos-related diseases. *See* Dkt. No. 486 at 10.

The parties do not appear to have any actual dispute as to this issue. Dr. Brody testified that he did not review any deposition, medical records, or other case-specific materials in this case. *See* Dkt. No. 432-3, Ex. B at 14:3–14 (2020 Deposition). Accordingly, he is not qualified to offer specific causation opinions. And Plaintiffs indicate that Dr. Brody does not intend to offer such testimony. Still, for the avoidance of doubt, the Court **GRANTS** the motion on this basis and finds that Dr. Brody may not offer testimony on specific causation.

### ii. General Causation

Defendant Armstrong next argues that Dr. Brody's anticipated testimony regarding general causation should be excluded because (1) he lacks the proper qualifications to render opinions about asbestos in humans; (2) his opinions are based on animal studies, which cannot be extrapolated to humans; and (3) any opinions based on these animal studies are irrelevant because Dr. Brody exposed animals to higher concentrations of asbestos than those to which Mr. Toy was exposed. *See* Dkt. No. 432 at 8–15.

Defendant points out that Dr. Brody is not a medical doctor, epidemiologist, industrial hygienist, or toxicologist, and concludes that he lacks training in these fields. *See id.* at 8–10. An expert's job title, however, is not dispositive of his qualifications. *See Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 656 (9th Cir. 2005) ("[A]n expert need not be officially credentialed in the specific matter under dispute.") (citing *United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir.

4

1993)).[1]  As noted above, Rule 702 anticipates that an expert may be qualified through his "knowledge, skill, experience, training, or education."  *See* Fed. R. Civ. P. 702.  Here, Dr. Brody has spent decades studying the pathobiology of lung diseases and conducting experiments to understand the progression of asbestos-related diseases at the cellular level.  He served as the head of the Laboratory of Pulmonary Pathobiology with the National Institute of Environmental Health Sciences for fifteen years; as a professor in the Department of Pathology and the Department of Environmental Health Services at Tulane University Medical Center in New Orleans for thirteen years; and as the director of Tulane's Lung Biology Program at the Center for Bioenvironmental Research for thirteen years.  *See* Brody Report at 34 (CV).  Dr. Brody has also authored over 100 peer-reviewed articles regarding the pathobiology of asbestos-related lung diseases.  *See id.* at 47–60.  Defendant fails to adequately explain why this experience is insufficient.

Instead, Defendant suggests that the majority of Dr. Brody's research has involved animal studies.  *See* Dkt. No. 432 at 10–14.  Defendant argues that Dr. Brody must therefore explain how such studies are relevant to the pathobiology of asbestos-related diseases in humans for his testimony to be admissible.  *Id.*  Defendant's own authorities indicate, however, that it "is generally accepted in the scientific community [] that if an agent causes [] cancer in animals, that it's biologically plausible to be a human carcinogen."  *See In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1127 (N.D. Cal. 2018) (citation omitted); *see also In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) ("[O]ne can usually rely on the fact that a compound causing an effect in one mammalian species will cause it in another species.").

Moreover, in his expert report, Dr. Brody explains how his work with animals has helped him understand the process by which asbestos causes disease.  *See* Brody Report at 20.  He analyzes these processes "by controlling the animals' does of asbestos and then examining their lungs at various times after the [asbestos] exposure occurred."  *Id.*  Dr. Brody concludes that he thus has shown at the cellular level that the cells from which asbestos diseases develop are the

---

[1] As an unpublished Ninth Circuit decision, *Massok v. Keller* is not precedent, but may be considered for its persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

same in animals as they are in humans and "inhaled asbestos fibers land in the same place in animals as they do in humans." *See* Dkt. No. 486-5, Ex. 4 at ¶¶ 18–21. Dr. Brody recognizes that there are limitations inherent in animal studies. *Id.* at ¶ 21. For example, during his deposition he explained that "you can't tell from an animal just how much asbestos it takes to cause disease in people." *See* Dkt. No. 432-3, Ex. B at 27:18–21, 28:16–19, 29:22–30:16. But Dr. Brody explains that animal studies nevertheless "provide [other] useful and scientifically valid information on the human disease processes resulting from asbestos inhalation." Brody Report at ¶ 21. Although human and rodent pleura are of different sizes, Dr. Brody has explained that aside from "thickness," their "contents are the same," with an outer layer of mesothelial cells sitting on a thin layer of elastic connective tissue. *See* Dkt. No. 432-3, Ex. B. at 48:11–50:11. Dr. Brody has also explained that these studies allow him to "learn how the [asbestos-related] disease develops." *See id.* at 29:24–30:7. Plaintiffs further indicate that Dr. Brody's testimony will include "a significant foundation explaining why studies using rats and their lungs are pertinent and helpful to understanding human lungs." *See* Dkt. No. 486 at 8.

Defendant also argues that Dr. Brody did not evaluate certain epidemiological studies before reaching his opinions. *See, e.g.*, Dkt. No. 432-3, Ex. B at 75:10–81:24. Although Defendant does not identify any specific studies in its motion or reply brief, the Court understands that Defendant disagrees with many—if not all—of Dr. Brody's conclusions, at least as they relate to exposure to chrysotile fibers in the workplace. But much like Defendant's criticism of Dr. Brody's animal studies, the Court finds that Defendant's criticism goes to weight and not admissibility. The Ninth Circuit has cautioned that the Court's gatekeeping function "is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

\*   \*   \*

Defendant will have ample opportunity to highlight the purported shortcomings of Dr. Brody's animal studies and his related inferences about human disease pathobiology during cross examination, and to present its own contrary evidence. *See Daubert*, 509 U.S. at 596 ("Vigorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The jury ultimately will have to decide how persuasive it finds Dr. Brody's testimony to be. At this stage, the Court finds that he meets Rule 702's "*broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original). Dr. Brody may thus offer general causation testimony.

### B. Motion to Exclude "Every Exposure" Testimony

Defendants Warren and Honeywell seek to exclude expert testimony or evidence based on an "every exposure" theory. *See* Dkt. Nos. 250, 268. Under the "every exposure" theory, every exposure to asbestos contributes to the total dose and is a substantial factor in causing disease. *See, e.g.*, *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016). Defendants suggest that this "every exposure" theory is embedded within the opinions of Plaintiffs' experts—Drs. Brody, Brodkin, and Staggs—and should be excluded. *See* Dkt. No. 450 at 5. Plaintiffs, for their part, deny that any of their experts intend to rely on an "every exposure" theory. *See* Dkt. No. 491 at 4.

Throughout its briefing, Defendant Warren states that Plaintiffs' experts do not offer any specific causation opinion that Mr. Toy's asbestos exposure was "attributable to Warren" products. *See* Dkt. No. 450 at 6, 9; *see also* Dkt. No. 513 at 2–4. Defendants thus anticipate that Plaintiffs will argue that "every asbestos exposure above background [levels] is a substantial factor" in causing Mr. Toy's disease. *See* Dkt. No. 250 at 2. Defendants extract short statements from the expert reports and deposition testimony of Plaintiffs' experts to support this conjecture.

For example, Defendants note that Dr. Brody's report states that "there is no safe level of exposure to asbestos." *See* Brody Report at ¶¶ 44–45. Yet Defendants do not proffer any citations to Dr. Brody's report or deposition testimony to support their contention that Plaintiffs intend to rely on this statement to conclude that every exposure to asbestos was a substantial factor in Mr. Toy's disease. And as discussed in Section III.A.ii above, Dr. Brody is offered as a general causation expert, who provides detail about how asbestos affects cells and causes disease. Defendants also cite to a sentence in Dr. Staggs' rebuttal report that "Mr. Toy has a malignant

7

mesothelioma that was caused by these identified and substantial exposures to asbestos." *See* Dkt. No. 450-4, Ex. C at 17. However, the Court has already stricken the majority of Dr. Staggs' report as improper rebuttal, including this "summary" subsection. *See* Dkt. No. 547. The remainder of Dr. Staggs' report and anticipated testimony only addresses the expert report from Defendants Ingersoll-Rand and Armstrong's expert Dr. Victor L. Roggli. *Id.* at 7–8. And lastly, Defendants cite to portions of Dr. Brodkin's expert report and prior testimony regarding his reliance on "identified exposures." *See, e.g.*, Dkt. No. 450-3, Ex. B at 54. The Court has already rejected similar arguments that Dr. Brodkin's opinions contain an "every exposure" theory of liability. *See* Dkt. No. 550 at 6–8. The Court incorporates its analysis here and denies Defendants' motion on that basis.

None of Plaintiffs' experts appear to rely on an "every exposure" theory of liability, and the Court declines the invitation to speculate that they will do so at trial. To the extent Plaintiffs' experts attempt to offer "every exposure" opinions (notwithstanding their reports), such testimony will be excluded. *See, e.g.*, *McIndoe*, 817 F.3d at 1177 (rejecting "every exposure" theory because it would "permit imposition of liability on the manufacturer of any [asbestos-containing] product with which a worker had the briefest of encounters on a single occasion") (quotation omitted); *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673–77 (7th Cir. 2017) (same).[2] If this case proceeds to trial, the Court will consider holding a voir dire hearing outside the presence of the jury to confirm in advance that Plaintiffs' experts will only offer reliable and relevant opinions that are not premised on an impermissible "every exposure" theory.

//
//
//

---

[2] The Court acknowledges that the California Supreme Court has not yet determined whether an "every exposure" theory of liability is consistent with the substantial factor test that applies in asbestos cases. *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 977 (Cal. 1997), *as modified on denial of reh'g* (Oct. 22, 1997) (adopting substantial factor test). However, the Court finds the Ninth Circuit's reasoning in *McIndoe* persuasive, and believes that the California Supreme Court would likely agree that the "every exposure" theory is inconsistent with the substantial factor test.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike or exclude Dr. Brody's anticipated testimony. Dkt. Nos. 432, 453. Dr. Brody may not offer any specific causation testimony. The Court **DENIES** the motion to exclude on the ground that Defendants' characterization of Plaintiffs' expert testimony as relying on an "every exposure" theory does not appear accurate. Dkt. Nos. 450, 468. However, this denial is without prejudice to Defendants' ability to seek to exclude the testimony at trial to the extent it actually crosses the line into advancing such a theory, either through the voir dire proceeding described above or through objections to specific testimony. And the Court **TERMINATES AS MOOT** Dkt. No. 460.

**IT IS SO ORDERED.**

Dated: 3/30/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge