UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER DENYING PLAINTIFFS' MOTIONS TO EXCLUDE THE TESTIMONY OF DRS. DENNIS J. PAUSTENBACH AND VICTOR ROGGLI**

Re: Dkt. Nos. 444, 449

Pending before the Court are Plaintiffs Agnes Toy and Thomas Toy, Jr.'s motions to exclude the anticipated testimony of defense experts Drs. Dennis J. Paustenbach and Victor L. Roggli. Dkt. Nos. 444, 449. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motions.

I.  **BACKGROUND**

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC").

A.  **Motion to Exclude Dr. Paustenbach**

Defendant Warren Pumps, LLC designated Dr. Paustenbach as an industrial hygienist and toxicologist to offer opinions regarding the risk of mesothelioma and the magnitude of Mr. Toy's exposure to asbestos from work associated with Warren products. *See* Dkt. No. 444-3, Ex. 2

("Paustenbach Report"). Dr. Paustenbach has approximately 25 years of experience in occupational health, risk assessment, toxicology, and environmental engineering. *See id.* at 2. As part of his expert report, Dr. Paustenbach provides background information about pumps and asbestos contained in their gaskets and packing, and the risks posed by different types of asbestos. *See id.* at 13–14, 17–26. Additionally, he offers opinions that (1) low airborne levels of asbestos—such as those occurring in the ambient background in buildings and urban areas—are not associated with an increased risk of asbestos-related disease; and (2) Mr. Toy's exposure to chrysotile asbestos fibers from working with Warren pumps would not have increased his risk of asbestos-related disease. *See id.* at 17, 27–29. Plaintiffs challenge Dr. Paustenbach's opinions regarding Mr. Toy's risk as inconsistent and lacking proper foundation. *See generally* Dkt. No. 444.

**B.     Motion to Exclude Dr. Roggli**

Defendants Armstrong International, Inc. and Ingersoll-Rand Company designated Dr. Roggli as a pathology expert. *See* Dkt. No. 449-2, Ex. 1 ("Roggli Report"). As relevant to this motion, Dr. Roggli opines that Mr. Toy had lung cancer and not mesothelioma. *See id.* at 2. During his deposition, he also suggested that Mr. Toy's lung cancer was caused by his history of cigarette smoking and not asbestos exposure. *See* Dkt. No. 449-3, Ex. 2 at 46:4–9, 46:22–47:17 (2020 Deposition). Plaintiffs contend that Dr. Roggli lacked the proper foundation to render these opinions because he did not have information about Mr. Toy's actual asbestos exposure. *See* Dkt. No. 449.

The Court notes that Ingersoll-Rand filed a petition for bankruptcy on June 18, 2020. *See* Dkt. No. 530. Under Section 362 of the Bankruptcy Code, the bankruptcy filing triggered an automatic stay of all claims against Ingersoll-Rand. *Id.* at 2. Plaintiffs have confirmed that due to the stay they will no longer prosecute the case against Ingersoll-Rand. *See* Dkt. No. 532 at 2. However, the Court continues to consider Dr. Roggli's anticipated testimony, and Plaintiffs' motion to exclude it, as it relates to Defendant Armstrong.

**II.    LEGAL STANDARD**

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion

or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

### III. DISCUSSION

#### A. Motion to Exclude Dr. Paustenbach

Plaintiffs first seeks to exclude the testimony of Dr. Paustenbach as internally inconsistent. *See* Dkt. No. 444. Plaintiffs argue that Dr. Paustenbach attempts to draw conclusions about the risk from Defendant Warren's products by comparing Mr. Toy's work with those products to the amount of asbestos in the ambient air. *Id.* at 5–8. But Plaintiffs urge that the asbestos fibers in the ambient air are shorter, and therefore less hazardous, than the asbestos released from work with

1   Warren pumps. *Id.* at 5-6. Plaintiffs thus conclude that Dr. Paustenbach's opinions lack
2   foundation, and in the alternative, are likely to mislead a jury and should be excluded under
3   Federal Rule of Evidence 403. *Id.* at 8–9.

4   The Court is not persuaded. Plaintiffs' arguments appear to rely on an oversimplification
5   of Dr. Paustenbach's opinions. Dr. Paustenbach opines that "[l]ow airborne concentrations of
6   asbestos, such as those associated with the ambient background environment, are not believed to
7   pose an increased risk of asbestos-related disease." *See* Paustenbach Report at 17. He also
8   distinguishes between different types of asbestos fibers, and states that their differences translate
9   to different risks of developing asbestos-related diseases from exposure to them. *See id.* at 17–19.
10  He further identifies the level of exposure to chrysotile fibers, measured in fibers per cubic
11  centimeter per year (f/cc yr.), that has been found to cause lung cancer and mesothelioma. *Id.* at
12  17. Dr. Paustenbach then describes myriad studies that have been conducted over the years
13  regarding workers' exposure to asbestos while handling asbestos-containing gaskets and packing.
14  *Id.* at 20–26. Based on the nature of Mr. Toy's work with Warren products and his vicinity to
15  others working on such products, Dr. Paustenbach concludes that the exposure to the chrysotile
16  asbestos in such products would not have resulted in an increased risk of asbestos-related disease.
17  *Id.* at 27–29. He notes that "exposure, potency, and duration are the key factors regarding the
18  risks associated with asbestos," and concludes that Mr. Toy's work would "produce very low (and
19  perhaps immeasurably low) concentrations of airborne asbestos." *Id.* at 28. Dr. Paustenbach does
20  not, however, appear simply to suggest that exposure to asbestos from Defendant's products is the
21  same as ambient air exposure.

22  At bottom, Plaintiffs appear to be arguing the merits of their case rather than the
23  admissibility of Dr. Paustenbach's testimony. Certainly they may disagree with the studies on
24  which Dr. Paustenbach relies; his interpretation of Mr. Toy's work and related asbestos exposure;
25  and Dr. Paustenbach's ultimate conclusions. But such disagreement does not render his opinions
26  inconsistent or without foundation. Moreover, Plaintiffs will have ample opportunity to cross-
27  examine Dr. Paustenbach at trial and present their own contrary evidence. *See Daubert*, 509 U.S.
28  at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on

the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The jury—and not the Court—ultimately will have to decide how persuasive it finds Dr. Paustenbach's testimony to be.

The Court similarly rejects Plaintiffs' conclusory argument that Dr. Paustenbach's testimony should be excluded under Rule 403. *See* Dkt. No. 444 at 8–9. The Court understands that the issues underlying liability in this action are complex. However, that is not limited to Dr. Paustenbach's anticipated testimony. The Court finds no basis on the record before it to exclude Dr. Paustenbach's testimony as too complex for the jury to comprehend.

### B. Motion to Exclude Dr. Roggli

Plaintiffs also seek to exclude the testimony of Dr. Roggli regarding the cause of Mr. Toy's disease. Dkt. No. 449. Plaintiffs contend that Dr. Roggli had no factual basis to opine on the cause of Mr. Toy's disease because he had no information about Mr. Toy's asbestos exposure while working in shipyards. *See id.* at 4–5. During his deposition, Dr. Roggli suggested that he did not think Mr. Toy's lung cancer was caused by asbestos exposure. *See* Dkt. No. 449-3, Ex. 2 at 53:15–54:13. He noted, for example, the high level of asbestos exposure needed for an increased risk in lung cancer. *Id.* Dr. Roggli explained that the scientific literature indicates that the level of asbestos exposure needed to significantly increase risk of lung cancer is approximately 25 f/cc. *See id.* Plaintiffs contend that Dr. Roggli did not review any of Mr. Toy's deposition testimony, and therefore did not know how much asbestos Mr. Toy was ever exposed to as a shipyard worker, let alone whether such exposure reached 25 f/cc yr. *See* Dkt. No. 449 at 2–5.

Dr. Roggli's written report does not proffer an opinion about the cause of Mr. Toy's disease. Rather, after looking at three cell specimens, Dr. Roggli concludes that Mr. Toy had a poorly differentiated carcinoma. *See* Roggli Report at 1–2. But because of the limitations in the pathology materials available to Dr. Roggli, he states that he cannot not speak to the presence or absence of asbestos bodies or asbestosis. *Id.* at 2. He thus concludes that "from the perspective of a pathologic study, I am unable to relate Mr. Toy's squamous cell carcinoma of the left lung to any prior history of asbestos exposure." *See id.* Plaintiffs do not appear to argue that these opinions should be excluded. Instead, they point to Dr. Roggli's deposition in which, in answer to a

5

1    question from Plaintiffs' counsel, he confirmed that he does not believe Mr. Toy's lung cancer

2    was related to asbestos exposure. *See* Dkt. No. 449-3, Ex. 2 at 46:22–25.

3          However, Plaintiffs appear to abbreviate Dr. Roggli's reasoning. Dr. Roggli explained that

4    in order for him, as a pathologist, to assess that Mr. Toy's lung cancer was caused by asbestos

5    exposure, Mr. Toy would have to "have asbestos clinically or pathologically or a fiber burden

6    within the range of asbestosis." *See id.* at 59:5–8. As explained in his report, Dr. Roggli did not

7    have evidence of either. *See generally* Roggli Report. Absent such evidence, Dr. Roggli further

8    explained that he would need evidence that Mr. Toy was exposed to at least 25 f/cc yr. of asbestos.

9    *See* Dkt. No. 449-3, Ex. 2 at 59:8–14. He noted that this is a high level, and that he has "not seen

10   any industrial hygienist indicating that was more likely than not achieved" in this case. *Id.* When

11   asked whether it would be possible for a shipyard worker to be exposed to 25 f/cc yr. of asbestos,

12   Dr. Roggli stated that "it probably could be," but he "would defer to an industrial hygienist on that

13   because there's so many different factors that go into it." *See id.* at 54:3–13. He also said that he

14   does not know "for sure" whether Mr. Toy had 25 f/cc yr. of asbestos exposure. *See id.* at 59:2–4.

15         Plaintiffs point out that Dr. Roggli did not review Mr. Toy's deposition and was not "sure"

16   about Mr. Toy's exact level of asbestos exposure. *See* Dkt. No. 449 at 2–5; *see also* Dkt. No. 449-

17   3, Ex. 2 at 34:11–16. But Dr. Roggli is not offered to estimate Mr. Toy's exposure levels or to

18   reconstruct his occupational and environmental history. Nor does Defendant suggest that Dr.

19   Roggli is somehow qualified to determine whether Mr. Toy's asbestos exposure reached this 25

20   f/cc yr. level. *See* Dkt. No. 488 at 1, 5. Rather, Dr. Roggli reviewed pathology materials, medical

21   records, and the reports from other experts in this case. *See* Dkt. No. 449-3, Ex. 2 at 12:19–21,

22   32:9–34:10. He then concluded on the record before him that he had not seen evidence of such

23   high exposure. Plaintiffs have not explained why such conclusions are improper or lack adequate

24   foundation. Plaintiffs may of course cross examine Dr. Roggli about his opinions and the

25   assumptions underlying them, including Mr. Toy's asbestos exposure. Moreover, to the extent Dr.

26   Roggli attempts to offer opinions about Mr. Toy's level of asbestos exposure (contrary to his

27   report and deposition testimony), Plaintiffs may object to such specific testimony at trial.

28   //

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motions.

**IT IS SO ORDERED.**

Dated: March 31, 2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge