UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER DENYING WARREN PUMPS, LLC'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 454

Pending before the Court is Defendant Warren Pumps, LLC's motion for summary judgment. *See* Dkt. No. 454. For the reasons detailed below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC").

As relevant to this motion, Plaintiffs allege that Mr. Toy was exposed to asbestos from Warren brand pumps. *See id.* at ¶¶ 5–6. In their discovery responses, Plaintiffs clarified that, as alleged, "Mr. Toy inhaled asbestos fibers during the removal of asbestos-containing gaskets and/or packing material installed by WARREN." *See* Dkt. No. 454-3, Ex. B at 3. During his deposition, Mr. Toy testified that he worked at Hunters Point Naval Shipyard from 1962 to 1973 as a marine machinist. *See* Dkt. No. 454-4, Ex. C ("Toy Depo. Vol. 1") at 40:2–14, 42:16–17. While at Hunters Point, Mr. Toy removed and repaired shipboard equipment such as pumps and motors in

the engine room. *See id.* at 42:16–43:7. When asked whether he remembered the brand names of the pumps that he worked on at Hunters Point, he testified that he remembered working on Warren pumps. Dkt. No. 497-3, Ex. 2 at 116:7–117:17. He could not, however, recall the specific vessels on which he worked with Warren pumps. *See* Dkt. No. 454-6, Ex. E ("Toy Depo. Vol. 5") at 449:11–450:14. Mr. Toy also clarified that he did not work on the internal components of any Warren pump. *See id.* at 450:15–22. Rather, he would detach and pull out the pumps for other machinists to repair. *See id.*; *see also id.* at 422:11–24. Mr. Toy said that removing a pump did not require him to "disturb the gaskets or packing in the pump." *See* Toy Dep., Vol. 7, 574:2–9. He also said that any insulation on the pumps was removed by the time he worked on them, so he did not recall removing any insulation. *See* Toy Depo. Vol. 5 at 410:13–25. Repair work was often performed in a separate shop and the equipment was later sent back to the vessel where Mr. Toy would reinstall it. *See id.* at 422:11–24; *see also* Dkt. No. 497-4, Ex. 3 at 422:11–423:9.

From 1974 to 1980 Mr. Toy also worked at the Treasure Island Naval Base. *See* Toy Depo. Vol. 2 at 114:4–115:5. Plaintiffs assert that Mr. Toy confirmed that he worked with Warren pumps at Treasure Island as well. *See* Dkt. No. 497 at 2 (citing Dkt. No. 497-3, Ex. 2 at 116:9–117:12; Dkt. No. 497-6, Ex. 5 at 565:16–23). According to Defendant, however, Mr. Toy did not specifically identify working with Warren pumps while at Treasure Island. *See* Dkt. No. 497-2, Ex. 1 at 85:14–86:6. When specifically asked if he worked on the same pump brands that he worked on (and identified) at Hunters Point, he said "no, I don't know." *See id.*

Based on this deposition testimony, Defendant urges that Mr. Toy was never exposed to any asbestos-containing part for which Defendant is responsible. *See* Dkt. No. 454. Defendant thus moves for summary judgment as to all Plaintiffs' causes of action against it. *See id.*

**II. LEGAL STANDARD**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

2

But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. Maritime Law

As a threshold matter, the parties disagree about whether California state law or maritime law should apply in this case. *Compare* Dkt. No. 454 at 4–5, *with* Dkt. No. 497 at 12–17. The Ninth Circuit has explained that "[a] tort claim falls within the admiralty jurisdiction of the federal courts when two conditions are met." *Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005); *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531–43 (1995). *First*, the case must meet the "location test," meaning that "the tort must occur on or over navigable waters." *Taghadomi*, 401 F.3d at 1084 (citations omitted). *Second*, the case must meet the "connections test," meaning that "the actions giving rise to the tort claim must bear a significant relationship to traditional maritime activity." *Id.* (quotation omitted).

Plaintiffs contend that Defendant has not met the location test because "Mr. Toy's exposure was primarily on land at Hunters Point (in dry dock) . . . ." Dkt. No. 497 at 12 (emphasis omitted). However, for purposes of the location test, "[i]t is well-settled that vessels in drydock are still considered to be in 'navigable waters' for purposes of admiralty jurisdiction." *See Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1187 (D. Haw. 2013). Plaintiffs also argue that Mr. Toy worked "exclusively on land at Treasure Island." *See* Dkt. No. 497 at 12. Plaintiffs state that one third of Mr. Toy's work experience, as relevant to this case, was as a land-based machinist on Treasure Island. *See id.* at 14. Defendant does not appear to dispute this. Rather, Defendant argues that Mr. Toy testified that he did not recall which brand of pumps he worked on at Treasure Island. *See* Dkt. No. 518 at 4. However, as noted above, Plaintiffs do not concede this point. To

the contrary, according to Plaintiffs, Mr. Toy confirmed later in his deposition that he worked with Warren pumps at Treasure Island as well. *See* Dkt. No. 497 at 2 (citing Dkt. No. 497-3, Ex. 2 at 116:9–117:12; Dkt. No. 497-6, Ex. 5 at 565:16–23). It is not the Court's role to weigh the persuasiveness of the competing evidence here. Plaintiffs have proffered evidence that Mr. Toy worked on Warren pumps at Treasure Island.

Nevertheless, courts have found that "[b]ecause asbestos-related disease has a long latency period and often involves years of work on or around ships, intermittent episodes of land-based exposure do not affect the analysis . . . ." *See Wineland v. Air & Liquid Sys. Corp.*, No. C19-0793RSL, 2021 WL 843166, at *2 (W.D. Wash. Mar. 4, 2021). Rather, "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id.* (citing *Cabasug*, 956 F. Supp. 2d at 1187); *accord Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466, & n.11 (E.D. Pa. 2011) (declining to apply state law to some exposures and maritime law to others based on the location of the alleged exposure). The Court finds this reasoning persuasive. Because some of Mr. Toy's alleged exposure occurred aboard vessels in drydock, the Court finds that the location test is met.

Plaintiffs also argue that Defendant has not met the connections test because "[t]he presence of, and removal of, asbestos aboard U.S. Navy vessels could not possibly have 'disrupted' maritime 'commerce'" and "Warren Pumps's conduct did not bear a substantial relationship to traditional maritime activity." *See* Dkt. No. 497 at 15. But courts "presiding over naval asbestos lawsuits have held that maritime law applies." *Whalen v. Gen. Elec. Corp.*, No. C 14-00436 WHA, 2014 WL 1347857, at *2 (N.D. Cal. Apr. 3, 2014) (citing *Cabasug*, 956 F. Supp. 2d at 1181). The Court again finds this reasoning persuasive, and adopts it here. *See Cabasug*, 956 F. Supp. 2d at 1187–90. Accordingly, the Court finds that maritime law applies.

In any event, the parties have not explained how this question of applicable law is outcome-determinative here. Defendant, for its part, argues that California law is consistent with maritime law in terms of determining causation. *See* Dkt. No. 454 at 4, n.2. And Plaintiffs appear to agree. *See* Dkt. No. 497 at 17–18. The Ninth Circuit has also clarified that its causation analysis in *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016), "did not

4

1   reflect a uniquely maritime rule but instead was based on settled common-law principles described
2   in the Restatement." *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).  As
3   relevant to this motion, Plaintiffs must establish that (1) Mr. Toy was exposed to asbestos from
4   Defendant's products; and (2) this exposure was a substantial factor in causing Mr. Toy's injury
5   and death. *See McIndoe*, 817 F.3d at 1174 (applying maritime law); *see also Rutherford v.
6   Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968–69 (Cal. 1997), *as modified on denial of reh'g* (Oct. 22,
7   1997) (applying California law).

### B. Causation

As this Court has acknowledged, "there are of course 'inherent practical difficulties, given the long latency period of asbestos-related disease,' in establishing causation from work performed several decades ago." *See In re Toy Asbestos*, No. 19-CV-00325-HSG, 2021 WL 1167638, at *5 (N.D. Cal. Mar. 26, 2021) (quoting *Rutherford*, 16 Cal. 4th at 958).  Plaintiffs often lack direct evidence of causation, and often must rely on circumstantial evidence.

#### i. Exposure to Asbestos from Warren Pumps

Defendant argues that because Mr. Toy did not work on the internal components of any Warren brand pumps, Plaintiffs cannot establish that Mr. Toy was exposed to any asbestos for which Defendant is responsible. *See* Dkt. No. 454 at 5–10.  In response, Plaintiffs appear to concede that Mr. Toy did not work on the internal components of Warren pumps. *See* Dkt. No. 497.  Nevertheless, Plaintiffs allege that Defendant is liable for Mr. Toy's work with flange gaskets and insulation "associated with" Warren pumps. *See id.* at 1–2, 5–6, 10, 18–19.  The Court acknowledges that Plaintiffs' theory of liability, as explained in their opposition brief, is not a model of clarity.  At times, Plaintiffs suggest that Defendant is responsible for asbestos-containing gaskets because Defendant itself sold asbestos-containing replacement gaskets. *See id.* at 3, 6, 10, 19.  Elsewhere, Plaintiffs suggest that Defendant is liable for third-party components, such as gaskets and insulation, that were used with Warren products. *See id.* at 6–7, 18–19.  The Court finds that Plaintiffs have raised genuine disputes of material fact under either theory.

As an initial matter, Plaintiffs provided evidence about how the pumps—including Warren brand pumps—were structured.  During his deposition, Mr. Toy explained that "the flange on the

5

pump bolts to the flange on the pipe," and the "two flanges bolt together with a gasket in the middle." *See* Dkt. No. 497-2, Ex. 1 at 46:3–11. The pump is intended to help "move[] liquids" aboard the vessels. *See id.* at 16–20. And the gaskets, in turn, provide a seal between the flanges to ensure "that whatever is being pumped doesn't leak." *See id.* at 46:25–47:14. Mr. Toy testified that all the pumps utilized such gaskets. *See* Dkt. No. 497-3, Ex. 2 at 118:17–20. He also explained how he would repair and replace equipment, including flanges and gaskets. *See* Toy Depo. Vol. 1 at 42:16–43:7; *see also* Dkt. No. 497-3, Ex. 2 at 118:25–120:17. He would remove the gaskets, prepare each flange for a new gasket by scraping off the old gasket material using a pneumatic wire brush, and then install a new gasket. *See id.* at 118:22–120:4; *see also* Dkt. No. 497-2, Ex. 1 at 47:15–48:22. Mr. Toy said that he did this work while he was standing approximately a foot and a half away. *See id.* at 52:12–15. He estimated that he had to do such work for each ship that he repaired in drydock, and that each ship had approximately 15 to 20 pumps. *See* Dkt. No. 497-2, Ex. 1 at 48:23–50:24.

Mr. Toy explained that as part of his work on vessels in drydock he would take out old equipment and put in new equipment. *See, e.g.*, Dkt. No. 497-4, Ex. 3 at 377:14–22. He also explained that pumps for new installations came with gaskets, and sometimes the equipment also came with pre-cut replacement gaskets. *See* Dkt. No. 497-3, Ex. 2 at 121:7–17; Dkt. No. 497-4, Ex. 3 at 418:11–13. Mr. Toy testified that in such circumstances, he would install the pre-supplied gasket rather than making one. *See* Dkt. No. 497-3, Ex. 2 at 120:11–13. Plaintiffs also proffered evidence from a deposition in another case that Defendant sold pumps that included asbestos-containing gaskets and that it knew its pumps would require maintenance over time. *See* Dkt. No. 497-11, Ex. 10 at 11:15–19, 13:11–23 (2007 Doktor 30(b)(6) Depo.); *see also* Dkt. No. 497-12, Ex. 11 at 30:5–31:13 (2008 Doktor 30(b)(6) Depo.).

Defendant attempts to minimize this evidence and provide its own contradicting evidence. It first argues that it is entitled to summary judgment based on alleged exposure at Hunters Point. *See* Dkt. No. 518 at 2. Defendant states that Mr. Toy's "unequivocal" testimony indicated that "he did not identify working with Warren pumps at Treasure Island." *See id.* As noted above, however, Plaintiffs have proffered other deposition testimony in which Mr. Toy appears to

6

identify Warren brand pumps at both Hunters Point and Treasure Island. *See* Dkt. No. 497-3, Ex. 2 at 116:9–117:12; Dkt. No. 497-6, Ex. 5 at 565:16–23. The Court need not resolve this dispute at this stage. It is enough that Plaintiffs have raised a dispute of material fact.

Defendant also argues that the gaskets that it supplied were internal gaskets, not flange gaskets, and thus could not have contributed to Mr. Toy's alleged asbestos exposure. *See* Dkt. No. 518 at 6–7. In support, Defendant cites a deposition from the same 30(b)(6) witness in 2008 in which he said that the gaskets he discussed were "internal to the pump." *See* Dkt. No. 518-2, Ex. E at 118:14–119:10. Because the parties only provide snippets of the 2008 deposition, the Court cannot confirm that the witness was clarifying his testimony about whether Defendant supplied asbestos-containing flange gaskets. Defendant also does not provide any response to the witness's 2007 deposition in which he stated that Defendant sold "replacement asbestos gaskets." *See* Dkt. No. 497-11, Ex. 10 at 11–23. At best, Defendant has provided conflicting evidence. The Court understands that Defendant disputes Plaintiffs' evidence, but viewing the evidence in the light most favorable to Plaintiffs—as it must at this stage—the Court finds that based on this evidence, Plaintiffs have raised a genuine dispute of material fact as to whether Mr. Toy was exposed to asbestos contained in products that were made or supplied by Defendant.

Plaintiffs have also raised a genuine dispute of material fact as to whether Mr. Toy was exposed to asbestos from third-party components "associated with" Defendant's pumps. The Supreme Court recently considered the scope of an equipment manufacturer's duty to warn of the dangers of asbestos from third-party components *See Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 995 (2019). The Court concluded:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995.

Here, Plaintiffs provide evidence that the flange and flange gaskets were essential to the functioning of the pump. They also provide evidence that Defendant knew that its pumps would

7

1 require maintenance, including replacing gaskets, and that it sold asbestos-containing replacement
2 gaskets. Plaintiffs have therefore presented evidence that Defendant made its products with
3 asbestos and knew that they would require replacement with a similar part. *See DeVries*, 139 S.
4 Ct. at 995. Accordingly, the first *DeVries* prong is satisfied. Defendant does not appear to dispute
5 the other *DeVries* prongs at this stage, and in fact does not appear to address Plaintiffs' theory of
6 liability premised on third-party components at all. The Court finds that Defendant has not met its
7 burden of showing that it is entitled to summary judgment on this basis.

### ii. Substantial Contributing Factor

Lastly, Defendant argues that even if Plaintiffs have provided sufficient evidence that Mr. Toy was exposed to asbestos attributable to Defendant, that exposure was *de minimis*. *See* Dkt. No. 454 at 9–10. In particular, Defendant appears to argue that Plaintiffs' experts Drs. Brodkin and Staggs will provide causation testimony that every exposure to asbestos is a substantial factor in causing mesothelioma (the "every exposure" theory). The Ninth Circuit in *McIndoe* rejected the "every exposure" theory, reasoning that it would "permit imposition of liability on the manufacturer of any [asbestos-containing] product with which a worker had the briefest of encounters on a single occasion." *See McIndoe*, 817 F.3d at 1177 (quotation omitted). As this Court has already determined, however, none of Plaintiffs' experts appear to rely on an "every exposure" theory of liability. *See* Dkt. Nos. 550, 551. The Court will not reject their testimony on this basis.

\* \* \*

Although the evidence that Plaintiffs proffered is not especially strong, when viewed in the light most favorable to them, the Court finds that it is sufficient to raise genuine disputes of material fact regarding: (1) whether Mr. Toy was exposed to asbestos-containing products made, sold, or supplied by Defendant and (2) whether such exposure was a substantial factor in causing his disease.

//

//

//

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion in its entirety.

**IT IS SO ORDERED.**

Dated: 5/13/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge