UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TOY ASBESTOS

Case No. 19-cv-00325-HSG

**ORDER GRANTING ARMSTRONG INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 446

Pending before the Court is Defendant Armstrong International, Inc.'s motion for summary judgment. *See* Dkt. No. 446. For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

Plaintiffs Agnes Toy and Thomas Toy, Jr. initially filed this action in Alameda Superior Court against over forty Defendants, alleging that Thomas H. Toy, Sr. developed malignant mesothelioma and later died from exposure to asbestos-containing products or equipment that Defendants either manufactured or supplied. *See* Dkt. No. 1-1. Defendants removed this action to federal court, Dkt. No. 1, and Plaintiffs filed a second amended complaint on July 22, 2019, Dkt. No. 247 ("SAC"). Plaintiffs bring causes of action against Defendant for (1) negligence; (2) breach of implied warranty; (3) strict liability; (4) fraud and concealment; (5) conspiracy to defraud and failure to warn; (6) wrongful death; and (7) loss of consortium. *See id.* at ¶¶ 7–96.

As relevant to this motion, Plaintiffs allege that Mr. Toy was exposed to asbestos from Armstrong brand steam traps and strainers. *See id.* at ¶¶ 5–6. Mr. Toy testified that he worked "exclusively" with Armstrong steam traps inside buildings at Treasure Island Naval Station between 1974 and 1980. *See* Dkt. No. 493-2, Ex. 1 at 87:4–7; *see also* Dkt. No. 446-1, Ex. E at 745:20–22, 748:9–11, 775:2–4. He removed and replaced steam traps, but did not perform any

maintenance on them or work on their internal components. *Id.* at 757:3–8, 757:23–24, 777:17–20. Mr. Toy further testified that the steam traps required insulation, or "lagging." *See* Dkt. No. 493-2, Ex. 1 at 88:5–10. As Mr. Toy explained, without insulation, the steam inside would turn to water as it cooled and there would be water in the lines. *See id.* at 88:3–12. This would cause the lines to "hammer." *Id.* Therefore, in order to remove the steam trap, "sometimes" he would first have to remove the insulation. *See* Dkt. No. 493-3, Ex. 2 at 758:20–24. Doing this would make the room "dusty." *See* Dkt. No. 493-2, Ex. 1 at 87:24–89:1. His face would be approximately two and a half feet to three feet away from the insulation, and the rooms were small with no ventilation. *See id.* at 89:2–11.

Mr. Toy also testified that the steam traps were connected to pipes with flanges. *See id.* at 89:16–19; *see also* Dkt. No. 493-3, Ex. 2 at 747:23–748:4. The steam traps helped supply the island with steam necessary for heating and hot water. *See* Dkt. No. 493-3, Ex. 2 at 748:24–751:23. Plaintiffs explain that when Mr. Toy removed a steam trap he also had to remove the flange gasket material between the two flanges on the steam trap. *See* Dkt. No. 493-4, Ex. 3 at 124:5–14; *see also* Dkt. No. 493-3, Ex. 2 at 767:21–768:3. To do so, he had to clean the flanges with a scraper and a mechanical wire brush. *See* Dkt. No. 493-2, Ex. 1 at 89:20–25. This process would take approximately an hour, and Mr. Toy testified that he would generally do such work daily. *See* Dkt. No. 493-3, Ex. 2 at 764:3–9, 767:21–768:6.

Defendant points out that elsewhere in his deposition Mr. Toy testified that he did not know who manufactured or supplied the insulation, and he did not apply any new insulation to the steam traps. *See* Dkt. No. 446-1, Ex. E at 758:20–759:23. Defendant further notes that Mr. Toy could not identify the brand of the flange gaskets that he removed either. *See id.* at 766:2–14. He also said that he could not recall where he got the new gaskets from when he would install new steam traps. *See id.* at 771:14–774:2.

In its motion for summary judgment, Defendant urges that on this record there is no evidence that Mr. Toy was exposed to any asbestos-containing part for which Defendant is responsible. *See* Dkt. No. 446. Defendant argues that Plaintiffs' causes of action are therefore barred under California law. *Id.* Defendant also moves for summary judgment as to Plaintiffs'

2

1  claim for conspiracy to defraud and failure to warn, and as to Plaintiffs' claim for loss of
2  consortium. *Id.*

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

## III. EVIDENTIARY OBJECTIONS

Plaintiffs separately filed objections to evidence submitted by Defendant in support of its motion for summary judgment. *See* Dkt. No. 494. Under Civil Local Rule 7-3(a), "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." *See* Civil L.R. 7-3(a). The Court therefore **DENIES** these objections for failing to comply with Civil Local Rule 7-3.

## IV. DISCUSSION

As an initial matter, Plaintiffs do not oppose Defendant's motion for summary judgment as to their conspiracy to defraud and failure to warn claim. *See* Dkt. No. 493 at 1, 15. The Court therefore **GRANTS** the motion as to this claim. Plaintiffs, however, contend that there are triable issues of fact regarding whether Mr. Toy was exposed to asbestos-containing products for which Defendant is liable. *See id.* at 10–15. They also argue that Defendant has misstated the law regarding the loss of consortium claim. *See id.* at 15–17.

**A. Causation**

The parties agree that California state law applies to Plaintiffs' causes of action against Defendant. *See* Dkt. No. 446 at 7; Dkt. No. 493 at 2, 10–11. Under California law, Plaintiffs must establish that (1) Mr. Toy was exposed to asbestos from Defendant's products; and (2) this exposure was a substantial factor in causing Mr. Toy's injury and death. *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968–69 (Cal. 1997), *as modified on denial of reh'g* (Oct. 22, 1997).

Defendant argues that because Mr. Toy did not work on the internal components of any Armstrong brand steam trap, Plaintiffs cannot establish that Mr. Toy was exposed to any asbestos from Defendant's products. *See* Dkt. No. 446. Defendant also argues that it cannot be held liable for any component parts that it did not manufacture, supply, or specify. *Id.* (citing *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 347–65 (Cal. 2012)). In response, Plaintiffs appear to concede that Mr. Toy did not work on the internal components of Armstrong steam traps. *See generally* Dkt. No. 493. Nevertheless, Plaintiffs allege that Defendant is liable for Mr. Toy's work with flange gaskets and insulation "associated with" Armstrong traps. *See id.* at 1–8, 10–15. Plaintiffs thus urge that Defendant is responsible for Mr. Toy's exposure to Defendant's own products and for Mr. Toy's exposure to third-party products that were used in combination with Armstrong steam traps. *Id.*

**i. Exposure to Armstrong Products**

Plaintiffs have proffered evidence that Mr. Toy worked exclusively on Armstrong steam traps, and that he removed and replaced them with new steam traps almost daily during the approximately six years he worked at Treasure Island. *See* Dkt. No. 493-2, Ex. 1 at 87:4–7; *see also* Dkt. No. 446-1, Ex. E at 745:20–22; Dkt. No. 493-3, Ex. 2 at 764:3–765:14; Dkt. No. 493-4, Ex. 3 at 109:19–110:16. Some of these steam traps were connected to pipes with two flanges bolted together, and between the flanges were flange gaskets.[1] *See* Dkt. No. 493-2, Ex. 1 at 46:3–11, 89:16–19; *see also* Dkt. No. 493-3, Ex. 2 at 747:23–748:4. Therefore, to remove and replace

---

[1] Mr. Toy testified that some of the steam traps were screwed into pipes and did not require flanges or flange gaskets. *See* Dkt. No. 446-1, Ex. E at 760:19–761:7.

4

these steam traps, Mr. Toy had to unbolt the flanges. *See* Dkt. No. 446-1, Ex. E at 760:19–761:7; *see also id.* at 745:23–746:9. Mr. Toy also testified that flange gasket material would stick to the flanges, and it was important to have clean flanges to ensure a proper seal. *See* Dkt. No. 493-2, Ex. 1 at 46:22–48:22. So Mr. Toy would also remove the flange gasket material with a scraper and a mechanical wire brush before installing a new flange gasket and reconnecting the flanges. *See* Dkt. No. 493-2, Ex. 1 at 89:20–25; *see also* Dkt. No. 493-3, Ex. 2 at 767:21–768:14; Dkt. No. 493-4, Ex. 3 at 124:5–14. Plaintiffs do not, however, have direct evidence of who manufactured or supplied the flange gaskets that Mr. Toy removed or the new flange gaskets that he would install. Mr. Toy testified that he did not know who manufactured the flange gaskets. *See* Dkt. No. 446-1, Ex. E at 766:2–14, 771:14–774:2.

Instead, Plaintiffs point to a deposition in another case in which Defendant's 30(b)(6) witness explained that Defendant sold some steam traps that contained asbestos-containing gaskets, and that Defendant sold asbestos-containing replacement gaskets from 1954 to 1988. *See* Dkt. No. 493-8, Ex. 7 (2017 Scare Depo.) at 20:9–22:2, 23:10–13, 24:4–25:14, 34:11–21. Plaintiffs also point to several of Defendant's catalogs and handbooks, which include compressed asbestos gaskets in the "list of materials" for the steam traps. *See* Dkt. No. 493-9, Ex. 8 at 10, 13, 14; Dkt. No. 493-10, Ex. 9 at 2; Dkt. No. 493-12, Ex. 11 at 2; Dkt. No. 493-11, Ex. 10 at 8; *see also* Dkt. No. 493-12, Ex. 11 at 38:8–16.

These materials do not, however, state that Defendant sold or supplied external flange gaskets. To the contrary, in the excerpt of the 2017 Scare deposition that Plaintiffs identify, Defendant's 30(b)(6) witness explained that when he said that Defendant sold steam traps with asbestos-containing gaskets he was referring to a single internal gasket between the cap and the body of the steam trap. *See* Dkt. No. 493-8, Ex. 7 (2017 Scare Depo.) at 19:10–20:17, 21:13–22:2; *see also* Dkt. No. 493-12, Ex. 11 (2008 Grubka Depo.) at 33:22–34:23. They do not discuss the sale of external gaskets. *Cf.* Dkt. No. 493-8, Ex. 7 (2017 Scare Depo.) at 55:18–57:17 (describing importance of removing old internal gasket material between cap and body of steam trap). But as noted above, Mr. Toy did not testify that he worked on any internal components of the steam traps, and so would not have been exposed to this internal gasket. *See* Dkt. No. 446-1,

5

Ex. E at 757:3–8, 757:23–24, 777:17–20.

Although one catalog noted that the "[t]raps can be furnished with any type of flanged connection," the catalog did not list or even reference flange gaskets for sale. *See* Dkt. No. 493-9, Ex. 8 at 10. The only reference to Armstrong flange gaskets is from Mr. Toy's deposition testimony. He stated that "[t]he steam traps came with gaskets, I think," though he did not specify whether these were internal gaskets or flange gaskets. *See* Dkt. No. 493-4, Ex. 3 at 121:7–16. Mr. Toy also confirmed, in response to a question from counsel, that he would remove "the original gasketing material that had come with the Armstrong steam traps":

> Q. For the same traps at Treasure Island, can you tell us whether or not you ever had to remove the original gasketing material that had come with the Armstrong steam traps when they were new?
>
> DEFENSE ATTORNEY: Objection. That's leading, it lacks foundation, misstates prior testimony, and is compound.
>
> THE WITNESS: Yeah, if we took the steam trap off. Each time the steam trap was removed, you had to renew the gasket.

*See id.* at 124:5–14. But Mr. Toy's answer simply confirms that he replaced the flange gaskets between the flanges that connected the steam traps to pipes when he replaced steam traps. *See* Dkt. No. 493-4, Ex. 3 at 124:5–14; *see also* Dkt. No. 493-3, Ex. 2 at 767:21–768:3. And elsewhere Mr. Toy clarified that he did not know who manufactured the flange gaskets that he removed or the new gaskets that he installed. *See* Dkt. No. 446-1, Ex. E at 766:2–14, 768:23–769:4, 771:6–774:2. Mr. Toy even explained that sometimes he would make the gaskets for use with the steam traps himself from sheet gasket material. *See id.* at 773:4–11. Consistent with this testimony, Defendant also provides its own affirmative evidence: a declaration from its person most knowledgeable that "Armstrong International, Inc. never sold sheet gasket material or flange gaskets."[2] *See* Dkt. No. 446-1, Ex. I at ¶ 9.

---

[2] Although Plaintiffs suggest that Mr. Scare lacks foundation for this assertion, he explains in his declaration that has worked at Armstrong since 1993. *See* Dkt. No. 446-1, Ex. I at ¶ 4. During his time there, he held various positions, including Vice President of Sales and Global Director of Product Configuration. *Id.* He also explained that to prepare as the person most knowledgeable, he reviewed documents, including over 800 pages of product information. *See id.* at ¶ 6. Notably, Plaintiffs cite to Mr. Scare's prior deposition testimony in their own evidence. *See* Dkt. No. 493-

In the alternative, Plaintiffs appear to suggest that customers could have used the Armstrong internal gaskets as replacement flange gaskets. *See* Dkt. No. 493 at 13. However, there is simply no evidence in the record to support this assertion. Even viewing the evidence in the light most favorable to Plaintiffs, the Court finds that there is insufficient evidence that Defendant manufactured or supplied asbestos-containing flange gaskets, let alone that Mr. Toy was exposed to such products. It would thus be unreasonable for a jury to infer from this evidence that Mr. Toy was exposed to asbestos-containing products manufactured or supplied by Defendant.

### ii. Exposure to Third-Party Components

Plaintiffs also contend that Defendant is liable for third-party components as well—in particular, third-party gaskets and insulation. Plaintiffs urge that Defendant understood the need to remove gasket material when replacing steam traps and the benefit of insulating its steam traps, and should be held responsible for their use. *See* Dkt. No. 493 at 12–15.

The California Supreme Court has clarified that "the reach of strict liability is not limitless." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 348 (Cal. 2012). A plaintiff must have "proof that [he] suffered injury caused by a defect in the *defendant's own product*." *Id.* (emphasis added). Thus, a "product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product. *Id.* Similarly, "California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." *Id.* at 361. As relevant here, the California Supreme Court has recognized a limited exception where the defendant bears some direct responsibility for the harm, either because "the defendant's own product contributed substantially to the harm" or "the defendant participated substantially in creating a harmful combined use of the products." *Id.* at 362.

The California Supreme Court did not explain what circumstances could fall within these narrow exceptions. But the facts in *O'Neil* are instructive. The plaintiffs sued valve and pump

---

8, Ex. 7. The Court finds that this evidence is relevant and admissible to prove that Defendant did not supply replacement flange gaskets.

7

manufacturers for a wrongful death allegedly caused by asbestos from insulation, gaskets, and packing that were made by third parties and added to the valves and pumps post-sale and aboard Navy ships. *Id.* Once onboard the ships, the valves were connected to other components with asbestos-containing flange gaskets, and all metal components were covered in asbestos insulation. *See id.* at 344. It was undisputed that the defendant did not manufacture or sell the asbestos-containing gaskets or insulation. *See id.* at 342. There was no evidence that external insulation was necessary for the valves and pumps to function. *See id.* at 344. And the defendants also did not "mandate or advise" that asbestos-containing insulation be used with their products. *See id.* at 349.

In remanding the case for entry of judgment of nonsuit in favor of the defendants, the California Supreme Court noted that the products' "mere compatibility for use with [asbestos-containing] components is not enough to render them defective" or impose a duty of care on the manufacturers. *Id.* at 350, 364–66. The court thus rejected the plaintiffs' attempt to hold manufacturers liable "when it is foreseeable that their products will be used in conjunction with defective products or replacement parts made or sold by someone else." *Id.* at 362; *see also id.* ("[T]he foreseeability of harm, standing alone, is not a sufficient basis for imposing strict liability on the manufacturer of a non-defective product, or one whose arguably defective product does not actually cause harm."). The court reasoned that it was unreasonable to "require manufacturers to investigate the potential risks of all other products and replacement parts that might foreseeably be used with their own product and warn about all of these risks." *Id.* at 363. The *O'Neil* court explained that the actual danger posed to the decedent "resulted entirely from work performed on asbestos products that defendants did not manufacture, sell, or supply," and thus "[t]he connection between defendants' conduct and [the decedent's] injury is extremely remote . . . ." *Id.* at 361, 365.

Here too, the actual danger that Plaintiffs allege is not from Defendant's steam traps, but rather from the asbestos-containing flange gaskets and external insulation manufactured and supplied by third-parties. Plaintiffs assert that Defendant "specified" or "recommended" the use of asbestos-containing flange gaskets and insulation. *See* Dkt. No. 493 at 11. Plaintiffs argue that

8

Defendant touted the benefits of asbestos-containing gaskets and used them in their own steam traps because they were "the best material to retain the pressure and integrity" of the traps. *See, e.g.*, Dkt. No. 493-12, Ex. 11 at 58:14–59:17; Dkt. No. 493-8, Ex. 7 at 30:25–34:21. Yet as discussed at length above, these deponents discussed internal gaskets, not flange gaskets. Plaintiffs also argue that Defendant knew it was important to completely remove old flange gasket material before installing a new gasket. *See* Dkt. No. 493 at 13. Plaintiffs point to a 1988 Armstrong instructional video that depicts someone cleaning "the gasket seating surface," including flanges. *See* Dkt. No. 493-13, Ex. 12 at 91:1–93:23, 95:18–24; Dkt. No. 493-13, Ex. 7 at 57:4–17; *see also* Dkt. No. 493-13, Ex. 7 at 57:4–17. The mere foreseeability that someone would have to remove old flange gasket material is not a sufficient basis for imposing liability on the manufacturer of a product that did not directly cause the decedent harm. *See O'Neil*, 53 Cal. 4th at 362.

Similarly, the Court finds the fact that some of Defendant's steam traps were later insulated with asbestos insufficient to hold Defendant liable for asbestos that it did not manufacture or supply. Mr. Toy testified that without insulation, the steam inside the trap would turn to water as it cooled and there would be water in the lines. *See* Dkt. No. 493-2, Ex. 1 at 88:3–12. A 1965 Armstrong catalog explained that "[s]team distribution pipes are insulated to minimize" this issue. *See* Dkt. No. 493-16, Ex. 15. Another catalog in 1972 explained that a specific type of steam trap "may be completely insulated without affecting trap operation." *See* Dkt. No. 493-17, Ex. 16. Plaintiffs also point out that in a deposition from an earlier case, one of Defendant's representatives stated that it was "possible" a customer could insulate a steam trap. *See* Dkt. No. 493-19, Ex. 18 at 120:23–124:6; *see also* Dkt. No. 493-18, Ex. 17 at 26:5–17. At best, Plaintiffs have proffered evidence that it was foreseeable that some of Defendant's steam traps would later be insulated. But as in *O'Neil*, Plaintiffs have not identified any evidence that insulation generally—let alone asbestos-containing insulation—was necessary for the steam traps to function properly. *See O'Neil*, 53 Cal. 4th at 344.

Plaintiffs' reliance on *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1122–23 (S.D. Cal. 2014), is misplaced. There, the plaintiff had provided evidence that the decedent was

exposed to asbestos in the original gaskets supplied by the defendant and that the defendant had specified and/or supplied asbestos-containing replacement gaskets. *See id.* In contrast, Plaintiffs' evidence, even when viewed in the light most favorable to them, does not support the inference that Defendant "mandate[d] or advise[d] that [asbestos-containing insulation or flange gaskets] be used with [its] products." *O'Neil*, 53 Cal. 4th at 349. In short, the Court finds that Plaintiffs have not raised a genuine dispute of material fact as to Defendant's liability for third-party components either.[3]

### B. Loss of Consortium

Defendant also argues that Plaintiffs may not bring a cause of action for loss of consortium because (1) Plaintiffs have not provided adequate causation evidence to establish that Defendant caused Mr. Toy's injuries; and (2) the loss of consortium claim is "subsumed" by the wrongful death claim. *See* Dkt. No. 446 at 12–13. Nevertheless, as explained in Section IV.A above, the Court finds that Plaintiffs have not proffered sufficient evidence to raise a genuine dispute of material fact regarding whether Mr. Toy was exposed to asbestos-containing products for which Defendant is responsible. The Court therefore does not reach this issue.

//
//
//
//
//
//
//
//

---

[3] The Court understands that Defendant Warren Pumps, LLC raised similar issues in its motion for summary judgment. *See* Dkt. No. 454. As the Court acknowledged in its order denying that motion, the evidence Plaintiffs amassed against Warren was not particularly strong. *See id.* at Dkt. No. 557 at 8. Nevertheless, the Court found that the evidence against Warren was somewhat more substantial, and thus adequate to defeat summary judgment. The Court also found that maritime law applied to the claims against Warren, and the Supreme Court has applied a different standard for holding a manufacturer liable for third-party components under maritime law. *See Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 995 (2019).

## V. CONCLUSION

Accordingly, the Court finds that Defendant is entitled to summary judgment on each of Plaintiffs' claims, and the Court **GRANTS** the motion in its entirety. The Clerk is directed to enter judgment in favor of Defendant Armstrong International, Inc. The Court's scheduling order remains in effect as to the remaining Defendants.

**IT IS SO ORDERED.**

Dated: 5/20/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge